# EXHIBIT 6

[*Crest of the Federative Republic of Brazil*]     Federal Regional Court, 5th Circuit
PJe - Electronic Judicial Proceedings
Procedural Inquiry

05/26/2021

Number: **0803836-61.2019.4.05.8000**

Entity: PUBLIC CIVIL ACTION

| Parties | |
|---|---|
| **Type** | **Name** |
| COUNSEL | **ALBERTO NONO DE CARVALHO LIMA FILHO** |
| COUNSEL | **FILIPE GOMES GALVÃO** |
| COUNSEL | **KELLYANE CELESTINO DOS SANTOS** |
| COUNSEL | **MARIANA DE PAIVA TEIXEIRA BARROS** |
| COUNSEL | **VALQUIRIA DE MOURA CASTRO FERREIRA MORAIS** |
| COUNSEL | **VANINE DE MOURA CASTRO FERREIRA** |
| COUNSEL | **WILLIAN TEIXEIRA PAULINO** |
| COUNSEL | **ADILSON VIEIRA MACABU FILHO** |
| COUNSEL | **TELMO BARROS CALHEIROS JUNIOR** |
| CUSTOS LEGIS (Law Inspector) | **FEDERAL PUBLIC PROSECUTOR'S OFFICE** |
| PLAINTIFF | **PUBLIC PROSECUTORS' OFFICE OF THE STATE OF ALAGOAS** |
| INTERESTED THIRD PARTY | **FEDERAL PUBLIC DEFENDER'S OFFICE** |
| PLAINTIFF | **GENERAL PUBLIC DEFENDER'S OFFICE OF THE STATE OF ALAGOAS** |
| DEFENDANT | **BRASKEM S/A** |
| COUNSEL | **JEFFERSON DE OLIVEIRA SOUZA** |
| COUNSEL | **CAETANO FALCAO DE BERENGUER CESAR** |

| Documents | | | |
|---|---|---|---|
| ID | Date/Time | Document | Type |
| 4058000.5666597 | 01/03/2020 09:34 a.m. | Petition | Evidentiary Document |
| 4058000.5666602 | 01/03/2020 09:34 a.m. | TCP signed - part 1 | Evidentiary Document |
| 4058000.5666603 | 01/03/2020 09:34 a.m. | TCP signed - part 2 | Evidentiary Document |
| 4058000.5666604 | 01/03/2020 09:34 a.m. | TCP signed - part 3 | Evidentiary Document |
| 4058000.5666605 | 01/03/2020 09:34 a.m. | TCP signed - part 4 | Evidentiary Document |

SERGIO BERMUDES

ADVOGADOS

HONORABLE FEDERAL JUDGE OF THE 3rd FEDERAL COURT OF THE JUDICIAL SECTION OF ALAGOAS

**URGENT**

Proceedings 0803836-61.2019.4.05.8000

BRASKEM S.A., previously identified in the records of the public civil action referred to above, filed by the PUBLIC PROSECUTORS' OFFICE OF THE STATE OF ALAGOAS and the PUBLIC DEFENDER'S OFFICE OF THE STATE OF ALAGOAS, hereby comes, through its undersigned counsels, to request the attachment of the Agreement for Support in Vacating Risk Areas ("Agreement"), entered into by the parties on the date hereof, in order to be ratified by this Court and, consequently, the following measures will be adopted:

(i)  pursuant to Clause 24 of the Agreement, to release the financial assets blocked in these records, upon transfer of one billion and seven hundred million reais (R$1,700,000,000.00) to a new account opened exclusively for the adoption of the measures provided for in the Agreement and for vacating Safety Zone, which will be audited under the terms of Clauses 36 and 37 of the Agreement. The account information is as follows:

Banco Santander (033)
Branch 4827
Checking Account: 13059763-7
Holder: BRASKEM S/A
CNPJ 42.150.391/0001-70

(ii)  pursuant to Clause 25 of the Agreement, to release in favor of BRASKEM S/A the remaining amount, upon transfer to the following bank account held by BRASKEM:

Banco Santander (033)
Branch 4827
Checking Account: 13001542-5

Holder: BRASKEM S/A
CNPJ 42.150.391/0001-70

(iii)      pursuant to Clause 26 of the Agreement, to authorize the replacement of the guarantee insurance policies currently existing in the records within forty-five (45) days; and

(iv)      pursuant to Clause 31 of the Agreement, to determine the partial extinction of this demand, in relation to payments for moral and material damages to individuals involved in the Agreement.

It should be noted that the measures to release the blocked funds agreed by the parties, under the terms of items (i) and (ii) above, are **urgent**, as they are necessary and essential funds for the implementation of the measures provided for in the Agreement for Support in Vacating Risk Areas.

On which terms,
granting is requested.
Maceió, January 3, 2020.

[*signature*]
Sergio Bermudes
Brazilian Bar Association – Rio de
Janeiro Chapter (OAB/RJ) No. 17.587
[*signature*]
Fabiano Robalinho Cavalcanti
OAB/RJ No. 95.237
[*signature*]
Adilson Vieira Macabu Filho
OAB/RJ No. 135.678
[*signature*]
Sérgio Nascimento
Brazilian Bar Association – São Paulo
Chapter (OAB/SP) No. 305.211
[*signature*]
Telmo Barros Calheiros Jr.
Brazilian Bar Association – Alagoas
Chapter (OAB/AL) No. 5.418

[*signature*]
Marcio Vieira Souto Costa Ferreira
OAB/RJ No. 59.384

[*signature*]
Wilson Pimentel
OAB/RJ No. 122.685
[*signature*]
Caetano Berenguer
OAB/RJ No. 135.124
[*signature*]
Fernando Novis
OAB/RJ No. 172.155

[*signature*]
Filipe Gomes Galvão
OAB/AL No. 8.851

Proceedings: **0803836-61.2019.4.05.8000**
Electronically signed by:
**ADILSON VIEIRA MACABU FILHO - Counsel**
**Execution date and time:** 01/03/2020 09:34:31
**Identifier:** 4058000.5666597
**The document's authenticity may be verified at:**
https://pje.jfal.jus.br/pje/Processo/ConsultaDocumento/listView.seam

[*bar code*]
20010309175065200000005698048

<u>AGREEMENT SIGNED BY THE PARTIES</u>

The STATE PUBLIC PROSECUTOR'S OFFICE ("MPE"), represented by its undersigned State Attorney General and Prosecutors, hereinafter referred to as "STATE PUBLIC PROSECUTOR'S OFFICE" or "MPE";

The PUBLIC DEFENDER'S OFFICE OF THE STATE OF ALAGOAS ("DPE"), represented by the undersigned Public Defenders, hereinafter referred to as "STATE PUBLIC DEFENDER'S OFFICE" or "DPE";

The FEDERAL PUBLIC PROSECUTORS' OFFICE ("MPF"), represented by the undersigned Federal Attorneys General, hereinafter referred to as "FEDERAL PUBLIC PROSECUTORS' OFFICE" or "MPF";

The FEDERAL PUBLIC DEFENDER'S OFFICE ("DPU"), represented by the undersigned Public Defenders, hereinafter referred to as "FEDERAL PUBLIC DEFENDER'S OFFICE" or "DPU";

BRASKEM S.A., a private legal entity and publicly-held corporation, enrolled with the National Register of Legal Entities (CNPJ) under No. 42.150.391/0001-70, with its principal place of business located at Rua Eteno, nº 1561, Polo Petroquímico de Camaçari, Camaçari – Bahia (BA) ("BRASKEM"),

hereinafter jointly referred to as "Parties",

NOW, THEREFORE, the Parties have decided to sign this <u>AGREEMENT FOR SUPPORT IN VACATING RISK AREAS</u> ("Agreement"), in proceeding No. 0803836-61.2019.4.05.8000 and No. 0806577-74.2019.4.05.8000, being judged by the 3rd Federal Court of the Judicial Section of Alagoas, and submit it to judicial ratification on the terms of article 487, III, b, of the Code of Civil Procedure (CPC) and article 5, paragraph 6, of Federal Law 7,347, of July 24, 1985:

CHAPTER I

| OBJECT |
| --- |

CLAUSE ONE. Braskem, preventively and as instructed by the relevant public bodies, hereby undertakes to apply the criteria set forth in the Financial Compensation and Relocation Support Program for the population in the SAFETY ZONE, according to the attached presentation (Exhibit III), for the RISK AREAS defined herein.

Paragraph One - The RISK AREAS object hereof, as per Exhibit I, agreed upon herein, are: all areas defined in the Damage Division and Priority Lines Map issued by the Civil Defense in June 2019 as having critical level 00 of Sectors 00, 01 and 02, Mutange Slope (sector 01 critical level 00) and part of Bom Parto.

Paragraph Two - BRASKEM shall use its best efforts and provide the means established in this AGREEMENT, of which the Financial Compensation and

Relocation Support Program is an integral part, to support vacating and relocating the residents of the RISK AREAS defined above.

Paragraph Three - The areas added to the safety zone initially defined, based on the extension of the radius of the mines identified, through the sonars, with anomalies (buffer 3x)1, are also object of this Agreement, as instructed by the technical bodies to the undersigned institutions.

Paragraph Four - For the Mutange Slope, in addition to the measures set out in the Financial Compensation and Relocation Support Program (Exhibit III), a special alternative shall be offered, as detailed in Clause 16 below.

Paragraph Five - In relation to the properties of the Bom Parto district, the 62 properties identified by the Municipal Civil Defense in the map attached hereto (Exhibit II) will enter the Financial Compensation and Relocation Support Program referred to in the main section.

CLAUSE TWO. The object of this AGREEMENT is the regulation of cooperative actions to vacate RISK AREAS, with the completion of the actions being set for two (2) years, and the prioritization of these actions must be defined by the signatories hereof based on risk criteria.

Paragraph One - The schedule shall be established, out of mutual agreement between the Parties, considering the prioritization of risk areas identified by the technical bodies and, within the prioritized risk areas, the following criterion: the longest time elapsed since the property was vacated by the public bodies, respecting legal priorities.

Paragraph Two - From the expiration of the social rent paid by the Federal Government onwards, the rent aid set out herein shall be offered by Braskem to residents, for them to qualify for the receipt of the rent aid, so that there is no discontinuity in receiving these amounts.

CLAUSE THREE. The delimitation of the perimeter of RISK AREAS referred to herein, as well as the properties located therein, covers a certain area of the districts of Pinheiro, Mutange, Bebedouro and Bom Parto, as well as the properties that irregularly occupy Encosta do Mutange, being specified in the map in Exhibit I hereto, as defined in Clause One, excluding those that are already included in the Instrument of Commitment to Vacate the Safety Zone.

CLAUSE FOUR. In addition to the perimeter established as RISK AREAS, marked out in Exhibit I, in accordance with the clauses above, real properties located within the areas defined as criticality 01 in the Map for Sectorization of Damage and Action Lines issued by the Civil Defense in June 2019, in which a serious structural damage is identified, resulting from PBM IMPACTS compromising the housing's safety, in the districts of Pinheiro, Mutange, Bebedouro and Bom Parto, shall be included. PBM IMPACTS means the occurrence of damage such as fissures, chinks and cracks in buildings in the districts of Pinheiro, Mutange, Bebedouro and Bom Parto, resulting from geological events that have been occurring in that region.

Paragraph One: real properties at serious structural risk will be considered to be those that, after being marked by the Civil Defense, are recognized as such by the Technical Board, which is composed of the Municipal Civil Defense, the Federal Civil Defense and an expert appointed by BRASKEM.

Paragraph Two: a Protocol shall be presented and approved by consensus by the Technical Board, within thirty (30) days, as from the execution hereof, containing the technical standards that will guide the recognition of the level of risk to the safety of the real properties, and such Protocol must be an integral part hereof this AGREEMENT.

Paragraph Three: The recognition of risk levels will be carried out based on the protocol referred to in paragraph Two by the majority of the Technical Board, in a substantiated report.

Paragraph Four: the DPE, DPU, MPE and MPF reserve the right to appoint professionals and public bodies and entities with expertise to follow up on the works to be developed pursuant to this clause.

Paragraph Five: if the Map for Division of Damage and Priority Action Lines, issued by the Civil Defense in June 2019, is updated with the expansion of the perimeter object hereof, the Parties shall meet to discuss the possible measures to be adopted by mutual agreement, upon a possible amendment hereto.

CHAPTER II

VACATING THE RISK AREAS

CLAUSE FIVE. This AGREEMENT governs the provision of technical and material support, set out in Chapter VI below, in addition to the payment of amounts as compensation to the owners and residents of the RISK AREAS identified in Exhibit I, according to the Financial Compensation and Relocation Support Program that is an integral part hereof (Exhibit III).

Paragraph One: The properties in which economic activities are developed shall also be vacated, based on the provisions hereof.

Paragraph Two: The provisions of this Agreement do not apply to large pieces of equipment, which are considered to be properties or facilities that require special measures to be vacated, such as Healthcare Facilities (such as hospitals, clinics, health units), Education Facilities (such as daycare centers, schools and universities), Independent Agencies and Public Bodies, Public Service Concessionaires and Equipment, as well as larger private legal entities.

Paragraph Three: Vacating covers all movable and moving assets that furnish the properties to be vacated, considering that the eviction will occur in a definitive manner, with no possibility of the residents or owners returning to the properties located in RISK AREAS.

Paragraph Four: After joining the Compensation and Relocation After joining the Compensation and Relocation Support Program, if there is a disagreement on the part of those affected as to the amounts offered by BRASKEM, any of the Parties shall have the option to file a judicial measure, in which Braskem undertakes to deposit the amount stated in the judicial appraisal report of the property, prepared by a court-appointed expert and approved by the 3rd Federal Court or by the court with jurisdiction thereon.

Paragraph Five: The expert examination costs shall be borne by BRASKEM.

Paragraph Six: The amount deposited pursuant to paragraph five can only be withdrawn upon the settlement of the amounts related to the acquisition of the property or ownership of the real property and transfer of possession or ownership rights to Braskem.

Paragraph Seven: Braskem will submit a monthly report on the vacating actions carried out, as well as the number of families assisted.

CLAUSE SIX. After the ratification of this AGREEMENT, the public bodies and entities and authorities shall be informed of the contents hereof for them to adopt, respecting their attributions, the necessary measures to vacate the properties still inhabited in the RISK AREAS, in the shortest possible time, compatible with the risks and degree of social, logistical and operational difficulties that the case requires.

Paragraph One: The parties will monitor and adopt, as appropriate, immediately after the approval hereof, the necessary measures with the bodies with jurisdiction to vacate the properties still inhabited in the RISK AREAS, in the shortest possible time, compatible with the risks and degree of social, logistical and operational difficulties that the case requires.

Paragraph Two: The parties are aware that the vacating depends on the collaboration of the residents and, eventually, on the measures to be adopted by the authorities with jurisdiction and public bodies/entities.

Paragraph Three: The communication of the deadlines and the vacancy program will be made in coordination with the authorities, according to the jointly established schedule, considering the existing risks and the criteria mentioned in clause two, paragraph One.

Paragraph Four: BRASKEM shall arrange for private surveillance in the vacated areas, without prejudice to the measures to be adopted by the public bodies responsible for public security.

CLAUSE SEVEN. The Parties will request the Municipality of Maceió to officially communicate to residents of the RISK AREA about the need to vacate it.

CLAUSE EIGHT. In the event of non-compliance with the orders from the Civil Defense or other bodies and authorities regarding the affected people vacating the area, the 3rd Federal Court shall be notified to adopt the measures it considers appropriate, aiming at the safety and protection of the affected people.

CLAUSE NINE. After taking possession of the properties to be vacated and those that are already vacant pursuant hereto, BRASKEM will adopt, in these properties, the measures recommended by the authorities with jurisdiction to control and prevent the proliferation of synanthropic species and vectors of diseases transmissible to people and animals, without prejudice to the measures to be adopted by the Public Authorities with jurisdiction.

Sole Paragraph: The activity described above will be performed by itself, or by a specialized company to be engaged, with expenses to be borne by BRASKEM, with funds other than those now pledged as a guarantee of this AGREEMENT.

CLAUSE TEN. BRASKEM will pay the residents of the properties to be vacated a single installment of vacancy aid, at the amount of five thousand reais (R$5,000.00), as well as a monthly rent aid of one thousand reais (R$1,000.00), owed six (6) months, or for up to two (2) months after the offer made by BRASKEM to the residents to pay the amounts set forth in Clause 13 hereof, whichever occurs last.

Paragraph One: In the event of disagreement as to the amounts offered, referred to in Clause 13, the rent aid will be successively extended up to a maximum term of two years or until the date of filing of the property appraisal, as defined in Clause Five, paragraph four, whichever occurs first.

Paragraph Two: The amounts mentioned in the main section shall not be deducted, under any circumstances, from the amounts provided for in Clause 13.

Paragraph Three: The single installment of vacancy aid will be due upon the actual vacancy and upon signature of an instrument through which BRASKEM receives ownership of the property.

CLAUSE ELEVEN. The amounts pertaining to the vacancy aid and monthly rent aid shall be given directly to the person responsible for the family unit, according to what is agreed upon in the commitment instrument to be signed with each family.

Sole Paragraph: If there is no consensus on the appointment of the person responsible for the family unit, the criteria provided for in Article 35 of Law No. 11.977, of December 7, 2009, in force on the date of approval hereof, shall be used.

CLAUSE TWELVE. BRASKEM, as an advance on the amounts referred to in Clause 13 hereof, will pay temporary aid those who carry out economic activities in properties located in the RISK AREAS, in a single installment, for the interruption of activities, at the amount of ten thousand reais (R$10,000.00).

CHAPTER IV

| PAYMENT FOR THE VACATED PROPERTIES AND INTERRUPTION OF ECONOMIC ACTIVITY |
| --- |

CLAUSE THIRTEEN. Subject to the clauses under Chapter X  of this Agreement regarding the absence, for the time being, of liability in Braskem and the absence of any

acknowledgement of liability by Braskem, with a view to making it possible to vacate [risk areas] as contemplated in this Agreement, Braskem undertakes to pay amounts equivalent to the moral and material damage suffered by (i) owners and residents of the vacated buildings in the Risk Areas; (ii) individuals who engaged in economic activity in the Risk Areas ("Beneficiaries"), in accordance with individual agreements made between the beneficiaries and Braskem, which will be ratified by the 3rd Federal Court of the Judicial Section of Alagoas, on the same criteria adopted in the Financial Compensation and Relocation Support Program for the population located in the Safety Zone.

Paragraph One: the sum to be offered at amounts equivalent to material damages must include, in addition to the value of the property of the land or its regular possession, the value of the existing constructions and improvements, and must be accompanied by a sufficiently clear proposal, which will be formulated exclusively for the purposes of agreement and will not bind any possible and future judicial appraisal of the properties, in the event of non-acceptance.

Paragraph Two: The amount will be paid within 5 business days from the judicial ratification of the settlement to be signed with each BENEFICIARY.

Paragraph Three: In the absence of agreement regarding the amount of payments set out in the main section, an option is given to request enforcement in court of any rights deemed appropriate, ensuring the adversary proceedings and full defense, on the terms of Clause Five, Paragraphs Four, Five, Six, Seven and Eight.

CLAUSE FOURTEEN. Payments for land and buildings presuppose the transfer of the property rights to BRASKEM, when transferable.

CLAUSE FIFTEEN. The Public Prosecutor's Office will necessarily act as *custos legis* in the judicial ratifications of the agreements when they involve minors or legally incompetent people.

CHAPTER V

| MUTANGE SLOPE |
| --- |

CLAUSE SIXTEEN. Subject to the provisions of Chapter X regarding the absence of BRASKEM's liability, for the properties of Mutange Slope, in the area specified in the map in Exhibit I, BRASKEM undertakes to offer, as an alternative to the set of payments provided for in Clause 13 above, a lump sum of eighty-one thousand and five hundred reais (R$81,500.00) ("Lump Sum") per property.

Paragraph One: The amount set in the main section of this Clause 16 (R$81,500.00), if the property to be compensated is the object of a lease, will be divided as follows: (i) sixty-one thousand and five hundred reais (R$61,500.00) will be paid in full to the respective owner, as set forth in the main section of clause 13; (ii) twenty thousand reais (R$20,000.00) will be paid to the tenant of the property.

Paragraph Two: The tenant of the property will also be entitled to a single installment of vacancy aid of five thousand reais (R$5,000.00), as well as a monthly rent aid of one thousand reais (R$1,000.00) for six (6) months, not extendable.

Paragraph Three: within 5 business days from the judicial ratification of the individual agreement to be entered into with respect to each vacant property, BRASKEM will pay the above amounts to the owner or family unit, as appropriate.

CLAUSE SEVENTEEN. If the residents, the owner or the holder of the possessory rights over the property choose to receive the Lump Sum, this amount will be considered the full payment for all losses suffered by these owners and residents, including moral and material damages, and there will be no payment of any other amount in any way.

## CHAPTER VI

### SUPPORT AND TECHNICAL ASSISTANCE SERVICES

CLAUSE EIGHTEEN. BRASKEM will bear the cost of the changes related to the properties to be vacated in the RISK AREAS, which will be carried out by the company chosen by it. The person responsible for the family unit must directly engage the respective removal company appointed by BRASKEM.

CLAUSE NINETEEN. BRASKEM will provide luggage storage, as well as pet care services for residents during the moving period.

CLAUSE TWENTY. BRASKEM shall directly hire and aid through a multidisciplinary team, necessarily formed by psychologists and social workers, to those affected who need to vacate the RISK AREAS object hereof, during the period of vacating and relocation.

CLAUSE TWENTY-ONE. BRASKEM will make available to residents of RISK AREAS real estate consultancy support to identify a new property for lease and acquisition.

## CHAPTER VII

### COMMUNICATIONS AND SERVICES

CLAUSE TWENTY-TWO. BRASKEM will continue with the implementation of a communication plan, aimed at providing information to those affected about the measures to be adopted due to the execution hereof, considering, above all, the person affected.

CLAUSE TWENTY-THREE. BRASKEM shall provide the necessary infrastructure and channels to assist the relocated population, through the Residents' Central (*Central do Morador*) and Advanced Service Points.

## CHAPTER VIII

### GUARANTEES

CLAUSE TWENTY-FOUR. The parties agree that, of the total amount of funds in cash deposited at the disposal of the Court in public civil action No. 0803836-61.2019.4.05.8000 (Request for Measure No. 0800137-14.2019.8.02.9002 of the Alagoas State Court, the current number of which, due to the remittance of the suit to the Federal Court, is now 0811775- 36.2019.4.05.0000), R$1.7 billion will be transferred to a new bank account, held by BRASKEM, which will be used exclusively for the adoption and implementation of the measures set forth herein, as well as in the Commitment Instrument for Support in the Vacancy of the Safety Zone, and in the related documents, specifically aimed at funding the actions for vacating the RISK AREAS and SAFETY ZONE.

Paragraph One: the bank account set forth in the main section shall be audited by an independent external audit company chosen by common agreement between the parties from among the four largest audit companies in the market (big four), which will have the primary task of verifying that the funds deposited therein will be used for the purposes set out herein, in the Commitment Instrument for Support in the Vacancy of the Safety Zone and related documents.

Paragraph Two: until the end of the measures set forth herein and in the related documents, a minimum amount of R$100 million will be kept in this account, and BRASKEM must deposit this minimum amount in case of insufficient funds for the execution of this object.

Paragraph Three: If there is a need to partially use the minimum cash amount provided for in paragraph two, BRASKEM will be asked to make the complementary deposit in five (5) business days. If the deadline is exceeded without justification, the court will be required to block the amounts through the BACENJUD system, to complement the minimum amount of R$ 100 million, to which BRASKEM hereby agrees.

Paragraph Four: the amount deposited in the bank account set forth in the main section will not be used for the payment of the independent external audit firm referred to in the first paragraph.

Paragraph Five: the income from the investment of the amount deposited in the account referred to in the main section shall be kept / reinvested in the same account and used for the same purpose stated in the main section.

Paragraph Six: the amount initially deposited in the referred bank account is equivalent to the financial starting point, and cannot, under any circumstances, be considered as a cap for the payment of the obligations set out herein.

Paragraph Seven. In the event of supervening and exceptional situations of extreme seriousness arising from the PBM Impacts, not provided for herein and which require emergency action, BRASKEM shall be formally notified to contribute, within five (5) business days, into the account referred to in the main section, an additional sum in cash sufficient to cover the expenses arising therefrom, at the risk of failing to comply with this AGREEMENT.

CLAUSE TWENTY-FIVE. After opening the account referred to in the main section of Clause 24, the Parties agree to the release, in favor of BRASKEM, of the remaining

balance deposited in the judicial account of public civil action no. 0803836-61.2019.4.05.8000 (Request for Measure No. 0800137-14.2019.8.02.9002 of the Alagoas State Court, the current number of which, due to the remittance of the suit to the Federal Court, is now 0811775- 36.2019.4.05.0000).

CLAUSE TWENTY-SIX. The Parties agree to issue a new guarantee insurance policy, in the amount of R$2 billion, within 45 days, replacing the guarantees provided under the terms of the judicial decisions of the Superior Court of Justice (SLS 2529), consisting of surety bonds in the amount of R$6.4 billion, presented in public civil action 0803836-61.2019.4.05.8000, to secure the remaining and controverted object of said class action.

Paragraph One: the execution hereof will be communicated to the Federal Regional Court, 5th Circuit, as a supervening loss of object of the appeal, in the records of interlocutory appeals no. 0811704-34.2019.4.05.000 and 0811775-36.2019.4.05.0000.

Paragraph Two: the execution hereof will be communicated to the Superior Court of Justice as a supervening loss of the request for suspension of injunction, records of SLS 2529.

CLAUSE TWENTY-SEVEN. To secure a part of the object of ACP 0806577-74.2019.4.05.8000, filed by the MPF, and the implementation of environmental measures to be carried out in accordance with the recommendations of the National Mining Agency (ANM), BRASKEM undertakes to obtain a new guarantee insurance policy, in the amount of R$1 billion, within 45 days, to be provided in the records of ACP 0806577-74.2019.4.05.8000.

Sole paragraph - The commitment instrument regarding the emergency measures requested in ACP No. 0806577-74.2019.4.05.8000 will be outlined afterwards, so that the guarantee now provided can be reinforced based on the discussion of those terms.

CLAUSE TWENTY-EIGHT. Considering that the guarantee insurance set forth in Clause 26 aims at guaranteeing the still controverted point of ACP 0803836-61.2019.4.05.8000, in case of non-compliance with this AGREEMENT, such guarantee cannot be activated to ensure the implementation of the measures proposed herein.

Sole Paragraph. In case of non-compliance with this agreement, the court will be required to freeze amounts through the Bacenjud system necessary to fulfill any obligation that may have been breached, without prejudice to other enforcement measures.

CLAUSE TWENTY-NINE. Considering the guarantees provided and the fact that new amounts frozen by the court in the company's accounts and the unavailability of the company's assets may compromise the adoption and implementation of the measures proposed herein, in the Commitment Instrument for Support in the Vacancy of the Safety Zone and in related documents, there will be no requirement for freezing of amounts by the court in the accounts or unavailability of BRASKEM's assets in the records of proceedings 0803836-61.2019.4.05.8000 and 0806577-74.2019.4.05.8000, with any request made for these purposes being suspended.

CLAUSE THIRTY. Due to the principle of good faith and prohibition against surprise decisions, a new freezing of sums cannot be requested, except in case of failure to comply herewith, pursuant to Clause 28.

## CHAPTER IX

| EXTINCTION IN PART |
|---|

CLAUSE THIRTY-ONE. The Parties agree that the execution of this AGREEMENT results in the extinction in part of civil public action no. 0803836-61.2019.4.05.8000 with respect to the payment of reparation for material and moral damage caused to the residents by the PBM IMPACTS contemplated in this AGREEMENT and in the documents related hereto, and all applications for, and appreciation of, urgent relief now pending or made in future with respect to the subject matter of the abovementioned proceeding are suspended, except in the event of violation of this AGREEMENT, as provided for in Clauses 24, 28 and 30

## CHAPTER X

| NO LIABILITY |
|---|

CLAUSE THIRTY-TWO. The obligations assumed by the Parties in this Agreement do not constitute an acknowledgement of liability by Braskem for vacating the Risk Areas or for the PBM Impacts, and may not be interpreted as such..

CLAUSE THIRTY-THREE. BRASKEM reserves, if it is acknowledged that it is not responsible for the PBM IMPACTS, the right to claim, in or out of court, from the parties responsible that may be identified, the reimbursement of payments made based hereon or as a result of the instruments related hereto.

CLAUSE THIRTY-FOUR. BRASKEM undertakes not to exercise the right set forth in the previous clause against the owners and residents who are beneficiaries of payments made based hereon or as a result of the instruments related hereto.

CLAUSE THIRTY-FIVE. If BRASKEM's liability for losses resulting from the PRM IMPACTS is demonstrated, payments made to residents and other persons based on this AGREEMENT or as a result of the instruments related hereto shall be considered as full release for all material and moral damages suffered by these owners and residents, which will not be affected by a possible and future sentence accepting the indemnity claims made in ACP No. 0803836-61.2019.4.05.8000.

## CHAPTER XI

| INDEPENDENT EXTERNAL AUDIT AND ACCOUNTABILITY |
|---|

CLAUSE THIRTY-SIX. The independent external audit will verify, in an accounting and financial manner, the investment of the funds deposited into the account referred to in clause 24 and publicize the information obtained in the reports produced.

CLAUSE THIRTY-SEVEN. The funds to be deposited into the bank account referred to in clause 24 must be kept in a single bank account for the exclusive management of the project's actions. Payments and receipts must be made by means that allow the identification of the origin and use of the amounts.

Paragraph One: The monthly rendering of accounts related to the funds mentioned in the main section must encompass the execution schedule provided for in clause two, paragraph one, and the financial measures carried out and to be carried out in the project.

Paragraph Two: The financial goal must objectively comprise the amount and the objects of expenditure of the project in order to allow the identification of the recipient of the funds, whether an individual or a legal entity.

Paragraph Three: The financial accountability must be prepared in the form of an accounting report that contains the accounts in an analytical way, in order to enable the accounting audit thereof.

Paragraph Four: The monthly physical accountability must allow the identification of the actions performed and to be performed, and the number of families assisted, in order to allow the assessment of the effectiveness of the application of the unfrozen funds.

Paragraph Five: The external audit company must present in court, after a judicial commitment has been made, in a bimonthly frequency, the consolidated report that complies with all the elements mentioned in this clause, without prejudice to the annual report of achievement of the physical and financial goals (actions).

Paragraph Six - The company hired to audit the amounts deposited in an account intended for the compensation set out herein shall undertake to disclose, on a weekly basis and in a website kept thereby, all financial transactions carried out, reserving the right to inform the nature and the amount of income and expenses, without prejudice to the rendering of accounts in accordance with this Clause.

CHAPTER XII

NON-COMPLIANCE

CLAUSE THIRTY-EIGHT. The fulfillment of the obligations set forth herein in a manner different from what has been agreed shall entail the noncompliance herewith, except when arising from an amendment or instruction from a technical public body and/or entity with expertise on the matter.

Paragraph One: If Braskem fails to comply with this AGREEMENT it may, within five (5) business days, comply with said obligations or justifiably ask the Parties to extend the period for it to entirely fulfill said obligations.

Paragraph Two: After the defined period or extension has elapsed, without proof of the entire fulfillment of the obligations, BRASKEM shall be required to pay a fine per item it has failed to comply with, at the amount of one hundred thousand reais

(R$100,000.00), without prejudice to freezing of amounts, pursuant to Clauses 24, 28 and 30.

Paragraph Three: The total amount of the fine shall not exceed the value of the defaulted obligation, without prejudice to the entire fulfillment of the obligation.

Paragraph Four: The amount of the fine provided for in this Clause will be reverted to the specific account for the possible and future indemnity of the controverted part of the Public Civil Actions referred to herein, if Braskem's liability is definitively acknowledged.

Paragraph Five: Any delay in the schedule established in Clause Two will not be qualified as noncompliance herewith, considering that it is an estimate and that its execution depends on external factors beyond BRASKEM's control. Provided Braskem's absence of guilt is duly proven.

CLAUSE THIRTY-NINE. The fines referred to in this chapter will be levied only after formal notification is sent to BRASKEM, accurately stating that an obligation has been breached and observing the deadline set in paragraph one of Clause 38, so that BRASKEM can justify the failure to comply and request additional time for compliance.

Sole Paragraph: The aforementioned fines will be levied per calendar days beginning on the first business day following notification by the parties.

## CHAPTER XIII

| REPLACEMENT OF THE COMPANIES ENGAGED |
| --- |

CLAUSE FORTY. In the event of dissatisfaction with the technical assistance provided to those affected, the Parties may justifiably request the replacement of the companies engaged by BRASKEM to carry out the activities set out herein.

Paragraph One: In the case set forth in this Clause, the institutions Parties hereto shall notify BRASKEM about the need for replacement, giving a period of ten (10) business days for it to provide a statement. The replacement of the companies engaged will follow a jointly established deadline.

Paragraph Two: In case there is a need to replace the company engaged, the period necessary for this purpose will not be considered a non-compliance with this AGREEMENT.

## CHAPTER XIV

| FINAL PROVISIONS |
| --- |

CLAUSE FORTY-ONE. At the risk of receiving the same sum twice, the owners and residents indemnified as a result and in the manner provided for in this AGREEMENT will not be affected by a possible and future sentence accepting the indemnity requests made in public civil action No. 0803836-61.2019.4.05.8000, considering the amounts

received based hereon or as a result of the instruments related hereto as full release for all losses suffered by these residents.

Sole Paragraph: The eligibility for payments referred to herein is contingent upon the submission, by individuals and/or legal entities located in the RISK AREAS, of proper and accurate documentation that demonstrates the uncontested right to the payment of the amounts as material and moral damages.

CLAUSE FORTY-TWO. The Parties undertake to act collaboratively and in accordance with the dictates of good faith, with due regard to technical recommendations, in order to seek the effective and safe evacuation of people from the RISK AREAS.

CLAUSE FORTY-THREE. The execution of this AGREEMENT does not release the public bodies from their legal duties, in the implementation of security measures and evacuation of people.

CLAUSE FORTY-FOUR. This AGREEMENT is signed without prejudice to the adhesion by other authorities, provided that it is expressly agreed by the signatories hereof.

CLAUSE FORTY-FIVE. The parties will request the ratification of this AGREEMENT in public civil actions No. 0803836-61.2019.4.05.8000 and No. 0806577-74.2019.4.05.8000, with the consequent partial dismissal of public civil action No. 0803836-61.2019.4.05.8000, pursuant to Clause 31 above.

Sole paragraph: the MPF shall notify the CCR/PFDC (a body of the MPF) of the contents of this AGREEMENT, in order to supervise the enforcement hereof and the respective rendering of account.

CLAUSE FORTY-SIX. Any disagreement between the parties in the performance of this AGREEMENT, if not resolved by consensus, will be submitted to the 3rd Lower Federal Court of Alagoas, which will be responsible for deciding on the matter.

CLAUSE FORTY-SEVEN. The obligations set forth herein do not limit or replace the prerogatives legally attributed to the public bodies or authorities and the bodies and entities with jurisdiction.

CLAUSE FORTY-EIGHT. The parties expressly acknowledge that this AGREEMENT does not apply to other actions proposed or to be proposed by the signatories, neither harming their development nor interfering with judicial measures granted in other proceedings.

CLAUSE FORTY-NINE. This AGREEMENT does not affect non-signatory parties or ACP No. 0803662-52.2019.4.05.8000.

CLAUSE FIFTY. The amounts spent on support and technical assistance services to those affected, set out in Chapter VI of this AGREEMENT, shall not be deducted from the amount to be paid to those affected as compensation.

CLAUSE FIFTY-ONE. The DPE, DPU, MPE and MPF reserve the right to appoint professionals with expertise to monitor all phases of the program that this AGREEMENT involves.

CLAUSE FIFTY-TWO. In view of the need to expand the support and technical assistance services to those affected, set out in Chapter VI hereof, the Parties will meet to discuss the implementation of any additional measures.

CLAUSE FIFTY-THREE. All obligations included in this AGREEMENT shall be considered to be of relevant public interest, for all legal purposes, and BRASKEM shall provide the interested public bodies with all documents and information necessary for the proper achievement of the purpose for which they are intended, and may not make claims of confidentiality, except in the cases provided for by law or regulation.

CLAUSE FIFTY-FOUR. Braskem must conduct their activities in compliance with the anti-corruption laws and must also refrain from performing any act contrary to the Brazilian Anti-corruption Law (Federal Law No. 12,846/2013), the parties undertake to comply with such law and all other laws and rules with similar purposes and effects, including those applicable to the Government, and all other rules, laws, standards and legislation related to corruption, bribery, conflict of interest, money laundering, fraud or administrative misconduct.

CLAUSE FIFTY-FIVE. This AGREEMENT does not bind or create obligations for citizens who do not agree with the proposals made by BRASKEM, being free to adopt the measures they deem appropriate.

Maceió, December 30, 2019.

[*signature*]
Ricardo Antunes Melro
General Public Defender

[*signature*]
Carlos Eduardo de Paula Monteiro
Public Defender

[*blank*]
Fernando Rebouças
Public Defender

[*blank*]
Fabricio Leão Souto
Public Defender

[*signature*]
Diego Bruno Martins Alves
Federal Public Defender

[*signature*]
Alfredo Gaspar de Mendonça Neto
State Attorney General

[*blank*]
Cinara Bueno Santos Pricladnitzky
Federal Attorney General

[*signature*]
José Antônio Malta Marques
Prosecutor

[*signature*]
Niedja Gorete de Almeida Rocha Kaspary
Federal Attorney General

[*signature*]
Max Martins de Oliveira e Silva
Prosecutor

[*signature*]
Raquel de Melo Teixeira
Federal Attorney General

[*signature*]
Jorge José Tavares Dória
Prosecutor

[*signature*]
Roberta Lima Barbosa Bomfim
Federal Attorney General

[*signature*]
Jomar Amorim de Moraes
Prosecutor

[*signature*]
Vicente Jose Cavalcante Porciúncula
Prosecutor

[*signature*]
BRASKEM S.A.
By its legal representative
Fernando Mota dos Santos
OAB/BA No. 28.305
Signed on January 3, 2020, by BRASKEM.

---

**EXHIBIT I**

**(Map for Division of Damage and Action Lines issued by the Civil Defense in June 2019)**



**EXHIBIT II**

**(MAP OF THE MUNICIPAL CIVIL DEFENSE IDENTIFYING 62
PROPERTIES OF BOM PARTO)**

The following picture already considers the new areas that will be included in Sector 2, critical level 00, as well as the number of affected residences.



Legend
LEGENDA:                    LEGEND:
Residências                 Residences
SETORES                     SECTORS
SETOR                       SECTOR

Figure 16: Affected area and number of affected residences.

The number of residences affected by the 240° direction feature is 51 units.

The number of residences that showed serious structural damage with a risk of collapse is 1 unit.

The number of residences affected by the subsidence area is 10 units.

The total number of residences included in sector 0, critical level 00, is **62 units**.

It is noteworthy that monitoring must be constant for the rest of the area, where there is the possibility of progression of features already identified or of emergence of new features.

**EXHIBIT III**

**(FINANCIAL COMPENSATION AND RELOCATION SUPPORT PROGRAM)**

Legend:

| | |
|---|---|
| Plano de Fechamento de Poços: Áreas de Resguardo | Well Closing Plan: Safety Zone |
| Jornada do Morador | Resident's Journey |
| Programa de Compensação | Compensation Program |
| Comunicado sobre processo de realocação (diálogos sociais, mídias etc) | Communication on the relocation process (social dialogs, media etc.) |
| Recebe profissionais para coleta de dados | Professionals are received for data collection |
| Selagem | Sealing |
| Pesquisa censitária | Census Survey |
| Visita Central do Morador e faz reunião informativa individual | Visits to Residents' Central (Central do Morador) and individual informative meetings |
| Realiza reuniões acompanhado de Defensor Público ou advogado e fornece documentação | Meetings held with the presence of the Public Defender or counsel, with provision of documentation |
| Recebe e analisa a proposta | Reception and analysis of proposal |
| Assina acordo e submete a homologação judicial | Execution of agreement and submission for judicial ratification |
| Recebe compensação | Reception of compensation |
| Realiza mudança definitiva | Definitive moving |
| Receber acompanhamento de assistente social | Social assistant's follow-up |
| Receber orientação quanto ao processo e auxílios disponíveis | Guidance on the process and available aids |
| Submete documentação necessária | Submission of necessary documentation |
| Assina termo de compromisso | Execution of commitment instrument |
| Procura moradia provisória | Survey of provisional residence |
| Realiza mudança, assina termo de desocupação e recebe auxílio financeiro | Moving, execution of the vacancy instrument and reception of financial aid |
| Recebe demais 6 parcelas de auxílio aluguel | Reception of the other 6 installments of the rent aid |
| Receber acompanhamento de assistente social | Social assistant's follow-up |
| Programa de Apoio à Realocação | Relocation Support Program |

Proceedings: **0803836-61.2019.4.05.8000**
Electronically signed by:
**ADILSON VIEIRA MACABU FILHO - Counsel**
**Execution date and time:** 01/03/2020 09:34:31

**Identifier:** 4058000.5666605
**The document's authenticity may be verified at:**
https://pje.jfal.jus.br/pje/Processo/ConsultaDocumento/listView.seam

[*Bar code*]
20010309330096300000005698056

## *AFFIDAVIT - TRANSLATION*

I, Aline Tidori, hereby certify that the included document Audio: *2020 01 03 - CPA 3rd Jan. Agreement - Federal and State Prosecu, 2019* is to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

Translated by:

Aline Tidori

São Paulo, June 24th, 2021

 Tribunal Regional Federal da 5ª Região
PJe - Processo Judicial Eletrônico
Consulta Processual

26/05/2021

## Número: **0803836-61.2019.4.05.8000**

### Classe: **AÇÃO CIVIL PÚBLICA**

| Partes | |
|---|---|
| **Tipo** | **Nome** |
| ADVOGADO | **ALBERTO NONO DE CARVALHO LIMA FILHO** |
| ADVOGADO | **FILIPE GOMES GALVÃO** |
| ADVOGADO | **KELLYANE CELESTINO DOS SANTOS** |
| ADVOGADO | **MARIANA DE PAIVA TEIXEIRA BARROS** |
| ADVOGADO | **VALQUIRIA DE MOURA CASTRO FERREIRA MORAIS** |
| ADVOGADO | **VANINE DE MOURA CASTRO FERREIRA** |
| ADVOGADO | **WILLIAN TEIXEIRA PAULINO** |
| ADVOGADO | **ADILSON VIEIRA MACABU FILHO** |
| ADVOGADO | **TELMO BARROS CALHEIROS JUNIOR** |
| CUSTOS LEGIS | **MINISTÉRIO PÚBLICO FEDERAL** |
| AUTOR | **MINISTÉRIO PÚBLICO DO ESTADO DE ALAGOAS** |
| TERCEIRO INTERESSADO | **DEFENSORIA PÚBLICA DA UNIÃO** |
| AUTOR | **DEFENSORIA PUBLICA GERAL DO ESTADO DE ALAGOAS** |
| RÉU | **BRASKEM S/A** |
| ADVOGADO | **JEFFERSON DE OLIVEIRA SOUZA** |
| ADVOGADO | **CAETANO FALCAO DE BERENGUER CESAR** |

| Documentos | | | |
|---|---|---|---|
| Id. | Data/Hora | Documento | Tipo |
| 4058000.5666597 | 03/01/2020 09:34 | Petição | Documento de Comprovação |
| 4058000.5666602 | 03/01/2020 09:34 | TCP Assinado- parte 1 | Documento de Comprovação |
| 4058000.5666603 | 03/01/2020 09:34 | TCP Assinado- parte 2 | Documento de Comprovação |
| 4058000.5666604 | 03/01/2020 09:34 | TCP Assinado- parte 3 | Documento de Comprovação |
| 4058000.5666605 | 03/01/2020 09:34 | TCP Assinado- parte 4 | Documento de Comprovação |

# SERGIO BERMUDES
## ADVOGADOS

SERGIO BERMUDES
MARCIO VIEIRA SOUTO COSTA FERREIRA
MARCELO FONTES
ALEXANDRE SIGMARINGA SEIXAS
GUILHERME VALDETARO MATHIAS
ROBERTO SARDINHA JUNIOR
MARCELO LAMEGO CARPENTER
ANTONIO CARLOS VELLOSO FILHO
FABIANO ROBALINHO CAVALCANTI
MARIA AZEVEDO SALGADO (1973-2017)
MARCO AURÉLIO DE ALMEIDA ALVES
ERIC CERANTE PESTRE
VÍTOR FERREIRA ALVES DE BRITO
ANDRÉ SILVEIRA
RODRIGO TANNURI
FREDERICO FERREIRA
ANTONELLA MARQUES CONSENTINO
MARCELO GONÇALVES
RICARDO SILVA MACHADO
CAROLINA CARDOSO FRANCISCO
ANDRÉ CHATEAUBRIAND MARTINS
PHILIP FLETCHER CHAGAS
LUÍS FELIPE FREIRE LISBÔA
WILSON PIMENTEL
RICARDO LORETTI HENRICI
JAIME HENRIQUE PORCHAT SECCO
GRISSIA RIBEIRO VENÂNCIO
MARCELO BORJA VEIGA
ADILSON VIEIRA MACABU FILHO
CAETANO BERENGUER

ANA PAULA DE PAULA
ALEXANDRE FONSECA
PEDRO HENRIQUE CARVALHO
RAFAELA FUCCI
RENATO RESENDE BENEDUZI
ALESSANDRA MARTINI
PEDRO HENRIQUE NUNES
GABRIEL PRISCO PARAISO
GUIOMAR FEITOSA LIMA MENDES
FLÁVIO JARDIM
GUILHERME COELHO
LÍVIA IKEDA
ALLAN BARCELLOS L. DE OLIVEIRA
PAULO BONATO
RENATO CALDEIRA GRAVA BRAZIL
VICTOR NADER BUJAN LAMAS
GUILHERME REGUEIRA PITTA
JOÃO ZACHARIAS DE SÁ
SÉRGIO NASCIMENTO
GIOVANNA MARSSARI
OLAVO RIBAS
MATHEUS PINTO DE ALMEIDA
FERNANDO NOVIS
LUIS TOMÁS ALVES DE ANDRADE
MARCOS MARES GUIA
ROBERTA RASCIO SAITO
ANTONIA DE ARAUJO LIMA
GUSTAVO FIGUEIREDO GSCHWEND
ANA LUÍSA BARRETO SALOMÃO
PAULA MELLO

RAFAEL MOCARZEL
CONRADO RAUNHEITTI
THAÍS VASCONCELLOS DE SÁ
BRUNO TABERA
FÁBIO MANTUANO PRINCIPE
MATHEUS SOUBHIA SANCHES
MARCELO SOBRAL PINTO
JOÃO PEDRO BION
THIAGO RAVELL
ISABEL SARAIVA BRAGA
GABRIEL ARAUJO
JOÃO LUCAS PASCOAL BEVILACQUA
MARIA ADRIANNA LOBO LEÃO DE MATTOS
EDUARDA SIMONIS
CAROLINA SIMONI
JESSICA BAQUI
GUILHERME PIZZOTTI
MATHEUS NEVES
MATEUS ROCHA TOMAZ
GABRIEL TEIXEIRA ALVES
THIAGO CEREJA DE MELLO
GABRIEL FRANCISCO DE LIMA
ANA JULIA G. MONIZ DE ARAGÃO
FRANCISCO DEL NERO TODESCAN
FELIPE GUTLERNER
EMANUELLA BARROS
IAN VON NIEMEYER
ANA LUIZA PAES
JULIANA TONINI
BERNARDO BARBOZA

PAOLA PRADO
ANDRÉ PORTELLA
GIOVANNA CASARIN
LUIZ FELIPE SOUZA
ANA VICTORIA PELLICCIONE DA CUNHA
VINÍCIUS CONCEIÇÃO
LEANDRO PORTO
LUCAS REIS LIMA
ANA CAROLINA MUSA
RENATA AULER MONTEIRO
ANA GABRIELA LEITE RIBEIRO
BEATRIZ LOPES MARINHO
JULIA SPADONI MAHFUZ
GABRIEL SPUCH
PAOLA HANNAE TAKAYANAGI
DIEGO BORGHETTI DE QUEIROZ CAMPOS
ANA CLARA MARCONDES O. COELHO
LEONARDO PRÓSPERO ORTIZ
BEATRIZ MARIA MARQUES HOLANDA COSTA

CONSULTORES
AMARO MARTINS DE ALMEIDA (1914-1998)
HELIO CAMPISTA GOMES (1925-2004)
JORGE FERNANDO LORETTI (1924-2016)
SALVADOR CÍCERO VELLOSO PINTO
ELENA LANDAU
CAIO LUIZ DE ALMEIDA VIEIRA DE MELLO
PEDRO MARINHO NUNES
MARCUS FAVER
JOSÉ REYNALDO PEIXOTO DE SOUZA

EXMO. SR. DR. JUIZ FEDERAL DA 3ª VARA FEDERAL DA SEÇÃO JUDICIÁRIA DE ALAGOAS

**URGENTE**

Processo 0803836-61.2019.4.05.8000

BRASKEM S.A., já qualificada nos autos da ação civil pública em epígrafe, proposta pelo MINISTÉRIO PÚBLICO DO ESTADO DE ALAGOAS e DEFENSORIA PÚBLICA DO ESTADO DE ALAGOAS, vem, por seus advogados abaixo assinados, requerer a juntada do incluso Termo de Acordo para Apoio da Desocupação das Áreas de Risco ("Termo de Acordo"), firmado entre as partes na data de hoje, para que seja homologado por esse MM. Juízo e, consequentemente, sejam adotadas as seguintes medidas:

RIO DE JANEIRO
Praça XV de Novembro, 20 - 7º e 8º andares
CEP 20010-010 | Centro | Rio de Janeiro - RJ
Tel 21 3221-9000

SÃO PAULO
Rua Prof. Atílio Innocenti, 165 - 9º andar
CEP 04538-000 | São Paulo - SP
Tel 11 3549-6900

BRASÍLIA
SHIS QL 14, Conjunto 05 casa 01
CEP 71640-055 | Brasília - DF
Tel 61 3212-1200

BELO HORIZONTE
Rua Antônio de Albuquerque 194, sl 1601
CEP 30112-010 | Savassi | Belo Horizonte - MG
Tel 31 3029-7750

www.bermudes.com.br

1/3

2

(i)     conforme Cláusula 24 do Termo de Acordo, a liberação dos ativos financeiros bloqueados nos presentes autos, com a transferência de R$ 1.700.000.000,00 (um bilhão e setecentos milhões de reais) para nova conta aberta exclusivamente para a finalidade de adoção das medidas previstas no Termo de Acordo e também para desocupação da Área de Resguardo, a qual será auditada nos termos das Cláusula 36 e 37 do Termo de Acordo, cujos dados são:

Banco Santander (033)
Agência 4827
Conta Corrente: 13059763-7
Titular: BRASKEM S/A
CNPJ 42.150.391/0001-70

(ii)    conforme Cláusula 25 do Termo de Acordo, a liberação em favor da BRASKEM S/A da quantia remanescente, mediante a transferência para seguinte conta bancária de sua titularidade:

Banco Santander (033)
Agência 4827
Conta Corrente: 13001542-5
Titular: BRASKEM S/A
CNPJ 42.150.391/0001-70

(iii)   conforme Cláusula 26 do Termo de Acordo, seja autorizada a substituição das apólices de seguro garantia atualmente existentes nos autos, no prazo de 45 (quarenta e cinco) dias; e

(iv)    conforme Cláusula 31 do Termo de Acordo, seja determinada a extinção parcial da presente demanda, em relação aos pagamentos por danos morais e materiais às pessoas alcançadas pelo Termo.

3

Cumpre ressaltar que as medidas de liberação dos recursos bloqueados acordadas entre as partes, nos termos dos itens (i) e (ii) acima, são **urgentes**, pois trata-se de recursos necessários e imprescindíveis para a implementação das medidas previstas no Termo de Acordo para Apoio da Desocupação das Áreas de Risco e também para desocupação da Área de Resguardo.

Nestes termos,
P.deferimento.
Maceió, 03 de janeiro de 2020.

Sergio Bermudes
OAB/RJ 17.587

Marcio Vieira Souto Costa Ferreira
OAB/RJ 59.384

Fabiano Robalinho Cavalcanti
OAB/RJ 95.237

Wilson Pimentel
OAB/RJ 122.685

Adilson Vieira Macabu Filho
OAB/RJ 135.678

Caetano Berenguer
OAB/RJ 135.124

Sérgio Nascimento
OAB/SP 305.211

Fernando Novis
OAB/RJ 172.155

Telmo Barros Calheiros Jr.
OAB/AL 5.418

Filipe Gomes Galvão
OAB/AL 8.851

Processo: **0803836-61.2019.4.05.8000**
Assinado eletronicamente por:
**ADILSON VIEIRA MACABU FILHO - Advogado**
**Data e hora da assinatura:** 03/01/2020 09:34:31
**Identificador:** 4058000.5666597
**Para conferência da autenticidade do documento:** https://pje.jfal.jus.br/pje/Processo/ConsultaDocumento/listView.seam

2001030917506520000005698048

TERMO DE ACORDO QUE CELEBRAM AS PARTES

O MINISTÉRIO PÚBLICO ESTADUAL ("MPE"), representado por seu Procurador-Geralde Justiça e Promotoresabaixo assinados, doravante denominado "Ministério Público Estadual" ou "MPE";

A DEFENSORIA PÚBLICA DO ESTADO DE ALAGOAS ("DPE"), representada pelos Defensores Públicos abaixo assinados, doravante denominada "Defensoria Pública Estadual" ou "DPE";

O MINISTÉRIO PÚBLICO FEDERAL ("MPF"), representado pelos Procuradores da República abaixo assinados, doravante denominado "Ministério Público Federal" ou "MPF";

A DEFENSORIA PÚBLICA DA UNIÃO ("DPU"), representada pelos Defensores Públicos abaixo assinados, doravante denominada "Defensoria Pública da União" ou "DPU";

A BRASKEM S.A.,pessoa jurídica de direito privado, sociedade anônima aberta, inscrita no CNPJ 42.150.391/0001-70, com matriz localizada na Rua Eteno, nº 1561, Polo Petroquímico de Camaçari, Camaçari – BA ("Braskem"),

Em conjunto, denominadas doravante "Partes",

RESOLVEM celebrar o presente TERMO DE ACORDO PARA APOIO NADESOCUPAÇÃO DAS ÁREAS DE RISCO("Termo"), nos autos dos processos nº 0803836-61.2019.4.05.8000e nº0806577-74.2019.4.05.8000, em trâmite perante a 3ª Vara Federal da Seção Judiciária de Alagoas, e submetê-lo à homologação judicial nos termos do art. 487, III, *b*, do CPC e do art. 5º, §6º da Lei Federal 7.347, de 24 de julho de 1985:

## CAPÍTULO I

| Objeto |
| --- |

CLÁUSULA PRIMEIRA. A Braskem, preventivamente e sob a orientação dos órgãos públicos competentes, a partir deste instrumento compromete-se a aplicar os critérios previstos no Programa de Compensação Financeira e Apoio à Realocação da população situadana Área de Resguardo,conforme apresentação anexa (Anexo III), para as Áreas de Risco definidas neste Termo.

Parágrafo primeiro – As Áreas de Riscoobjeto deste Termo, conforme Anexo I, sob as quais ora se convenciona são: todas as áreas definidas no Mapa de Setorização de Danos e Linhas Prioritárias emitido pela Defesa Civil em Junho de 2019como sendo de criticidade 00 dos Setores 00, 01 e 02, a Encosta do Mutange (setor 01 criticidade 00) e parte do Bom Parto.

Parágrafo segundo– a Braskem envidará seus melhores esforços e proverá os meios estabelecidos no presente Termo, cujo Programa de Compensação Financeira e Apoio à Realocação é parte integrante, para apoiar na desocupação e realocação dos moradores dasÁreas de Riscoacima definidas.

Parágrafo terceiro – São também objeto do presente termo, as áreas acrescidas à área de resguardo inicialmente delimitada a partir da ampliação do raio das minas identificadas,

1/4

através dos sonares, com anomalias (buffer 3x)1 , consoante orientação dos órgãos técnicos repassadas às instituições que ora subscrevem.

Parágrafo quarto– para a Encosta do Mutange, além das medidas previstas no Programa de Compensação Financeira e Apoio à Realocação (Anexo III), será ofertada alternativa diferenciada, conforme detalhado na Cláusula 16ª adiante.

Parágrafo quinto– Em relação aos imóveis do bairro do Bom Parto, ingressarão no Programa de Compensação Financeira e Apoio à Realocação referido no *caput* aqueles 62 imóveis i-dentificados pela Defesa Civil do Município no mapa anexo (Anexo II).

CLÁUSULA SEGUNDA. O presente TERMO tem como objeto a regulamentação de ações cooperativas para a desocupação das ÁREAS DE RISCO, com estimativa de que as ações sejam concluídas em até 2 (dois) anos, devendo a priorização dessas ações ser definida pelos signatários deste TERMO com base em critérios de risco.

Parágrafo primeiro – o cronograma será estabelecido, em comum acordo entre as partes, considerando a priorização de áreas de risco identificadas pelos órgãos técnicos e, dentro das áreas de risco priorizadas, o seguinte critério: o maior tempo já transcorrido desde a efe-tiva desocupação do imóvel pelos órgãos públicos, respeitando as prioridades legais.

Parágrafo segundo – a partir de quando expirar o aluguel social pago pela União,o auxílioa-luguel previsto no presente Termoserá ofertado pela Braskem aos moradores para que se habilitempara fins de recebimento do auxilio aluguel, a fim de não haver descontinuidade do recebimento desses valores.

CLÁUSULA TERCEIRA. A delimitação do perímetro das ÁREAS DE RISCO a que se refere o presente TERMO, bem como dos imóveis nela situados, abrange determinada área dos bairros do Pinheiro, Mutange, Bebedouro e Bom Parto, bem como os imóveis que irregularmente ocupam a Encosta do Mutange, encontrando-se especificada no mapa do Anexo I deste TERMO, conforme definido na Cláusula Primeira, excluindo-se aqueles que já estejam contemplados no Termo de Compromisso para a Desocupação da Área de Resguardo.

CLÁUSULA QUARTA.Além do perímetro estabelecido como ÁREAS DE RISCO, delimitado no Anexo I de acordo com as cláusulas acima, passarão a ser incluídos nasÁREAS DE RISCOos imóveis situados dentro da área definida como criticidade 01 do Mapa de Setorização de Danos e Linhas de Ação emitido pela Defesa Civil em Junho de 2019, em que for identificado risco estrutural grave, decorrente dos IMPACTOS PBM, que comprometam a segurança da habitação, nos bairros do Pinheiro, Mutange, Bebedouro e Bom Parto.IMPACTOS PBM significa a ocorrência de danos como fissuras, trincas e rachaduras em edificações nas regiões dos bairros do Pinheiro, Mutange, Bebedouro e Bom Parto, decorrentes dos eventos geológicos que vêm ocorrendonaquela região.

Parágrafo primeiro: serão considerados imóveis em risco estrutural grave aqueles que, após indicação pela Defesa Civil, assim forem reconhecidos por Junta Técnica, composta por Defesa Civil Municipal, Defesa Civil Nacional e um perito indicado pela BRASKEM.

Parágrafo segundo:será apresentado e aprovado em consenso pela Junta Técnica um Protocolo, no prazo de 30 (trinta) dias, a contar da assinatura deste Termo, com as normas técnicas que nortearão o reconhecimento do nível de risco à segurança dos imóveis, devendo este Protocolo fazer parte integrante do presente TERMO.

Parágrafo terceiro:- o reconhecimento dos níveis de risco será realizado com base no protocolo referido no parágrafo segundo por maioria pela Junta Técnica, em relatório fundamentado.

Parágrafo quarto— a DPE, a DPU, o MPE e o MPF se reservam o direito de indicar profissionais e órgãos e entidades públicas com expertise para acompanhar os trabalhos a serem desenvolvidos nesta cláusula.

Parágrafo quinto – Havendo atualizações do Mapa de Setorização de Danos e Linhas de Ações Prioritárias,emitido pela Defesa Civil em Junho de 2019,com ampliação do perímetro objeto do presente TERMO, as partes se reunirão para discutir as possíveis medidas a serem adotadas de comum acordo, mediante eventual termo aditivo ao presente.

CAPÍTULO II

DESOCUPAÇÃO DAS ÁREAS DE RISCO

CLÁUSULA QUINTA.Este TERMO disciplina a disponibilização dos suportes técnicos e materiais, previstosno Capítulo VI abaixo, além de pagamento de valores a título de compensaçãoaos proprietários e moradores das ÁREAS DE RISCO identificadas no Anexo I, conforme Programa de Compensação Financeira e Apoio à Realocaçãoque integra o presente (Anexo III).

Parágrafo primeiro: Também serão desocupados, a partir do que preconizado neste TERMO, os imóveis em que sejam desenvolvidas atividades econômicas.

Parágrafo segundo:Não se aplica o disposto neste Termo aos grandes equipamentos, assim consideradosos imóveis ou instalações que pressupõem providências especiais para sua desocupação, tais como as Instalações de Saúde (como hospitais, clínicas, unidades de saúde), as Instalações de Educação (como creches, escolas e universidades), as Autarquias e Órgãos Públicos, as Concessionárias e Equipamentos de Serviços Públicos, bem como as Pessoas Jurídicas de direito privado de maior porte.

Parágrafo terceiro:A desocupação abarca todos os bens móveis e semoventes que guarnecem os imóveis a serem desocupados, considerando que a desocupação ocorrerá de forma definitiva, sem possibilidade de retorno dos moradores ou proprietários aos imóveis localizados nas ÁREAS DE RISCO.

Parágrafo quarto:Após ingressar no Programa de Compensação e Apoio à Realocação, em havendo discordância por parte de atingidos quanto aos valores ofertados pela BRASKEM, fica facultada a propositura de medida judicial por qualquer das Partes, na qual a Braskem se obriga ao depósito do valor do laudo judicial de avaliação do imóvel, elaborado mediante perícia judicial e homologado pelo Juízo da 3ª Vara Federal ou pelo juízo competente.

Parágrafo quinto: os custos da perícia serão arcados pela BRASKEM.

Parágrafo sexto: o valor depositado nos termos do parágrafo quinto somente poderá ser levantado mediante quitação dos montantes relativos à aquisição da propriedade ou do domínio do imóvel e transferência da propriedade ou dos direitos de domínio à Braskem.

3/4

Parágrafo sétimo: A Braskem apresentará mensalmente relatório das ações de desocupação realizadas, bem como a quantidade de famílias atendidas.

CLÁUSULA SEXTA.Após a homologação do presente TERMO, os órgãos e entidades públicas e as autoridades serão cientificadas do teor *deste TERMO*para que adotem, respeitadas suas atribuições, as medidas necessárias para a desocupação dos imóveis ainda habitados nas ÁREAS DE RISCO, no menor tempo possível, compatível com os riscos e grau de dificuldade social, logístico e operacional que o caso demanda.

Parágrafo primeiro:As partes acompanharão e adotarão, no que couber, imediatamente após a homologação do presente TERMO, as medidas necessárias junto aos órgãos competentes para a desocupação dos imóveis ainda habitados nas ÁREAS DE RISCO, no menor tempo possível, compatível com os riscos e grau de dificuldade social, logístico e operacional que o caso demandar.

Parágrafo segundo: As partes têm ciência de que a desocupação depende da colaboração dos moradores e, eventualmente, das medidas a serem adotadas pelas autoridades e órgãos/entidades públicos competentes.

Parágrafo terceiro: A comunicação dos prazos e programa de desocupação será feita em coordenação com as autoridades, consoante cronograma estabelecido em conjunto, considerando os riscos existentes e os critérios mencionados na cláusula segunda, parágrafo primeiro.

Parágrafo quarto: A BRASKEM providenciará vigilância privada nas áreas desocupadas, sem prejuízo das medidas a serem adotadas pelos órgãos públicos responsáveis pela segurança pública.

CLÁUSULA SÉTIMA. As Partes solicitarão ao Município de Maceió que comunique oficialmente aos moradores da ÁREA DE RISCO sobre a necessidade de desocupação.

CLÁUSULA OITAVA. Na hipótese de não atendimento das determinações da Defesa Civil ou demais órgãos e autoridades quanto à desocupação por parte dos atingidos, será informado ao Juízo da 3ª Vara Federal para adoção das medidas que entender cabíveis visando a segurança e proteção das pessoas atingidas.

CLÁUSULA NONA.Após assumir a posse dos imóveis a serem desocupados e dos que já estão desocupados, na forma deste Termo, aBRASKEM adotará, nesses imóveis, as medidas recomendadas pelas autoridades competentes para controle e para impedir a proliferação de espécies sinantrópicas e vetores de doenças transmissíveis às pessoas e aos animais, sem prejuízo das medidas a serem adotadas pelo Poder Público competente.

Parágrafo único : A atividade acima descrita será realizada por si, ou por empresa especializada a ser contratada, com despesas a serem custeadas pela BRASKEM, com recursos diversos dos ora postos como garantia do presente TERMO.

CLÁUSULA DÉCIMA. A BRASKEM pagará aos moradores dos imóveis a serem desocupados uma parcela única de auxílio desocupação no valor de R$ 5.000,00 (cinco mil reais), bem como um auxílio aluguel mensal de R$ 1.000,00 (mil reais), devido pelo prazo de 06 (seis) meses, ou por até 02 (dois) meses após a oferta feita pela BRASKEM ao morador para o pagamento dos valores previstos na Cláusula 13ª deste TERMO, o que ocorrer por último.

Processo: 0803836-61.2019.4.05.8000
Assinado eletronicamente por:
**ADILSON VIEIRA MACABU FILHO - Advogado**
**Data e hora da assinatura:**03/01/2020 09:34:31
**Identificador:** 4058000.5666602
**Para conferência da autenticidade do documento:** https://pje.jfal.jus.br/pje/Processo/ConsultaDocumento/listView.seam

2001030933009630000000005698053

4/4

Parágrafo primeiro: Em havendo discordância quanto aos valores ofertados referidos na Cláusula 13ª, o auxílio aluguel será prorrogado sucessivamente até o prazo máximo de dois anos ou até a data do depósito da avaliação do imóvel, conforme definido na Cláusula Quinta, parágrafo quarto, o que ocorrer primeiro.

Parágrafo segundo: Os valores mencionados no *caput* não serão deduzidos, em hipótese alguma, dos valores previstos na Cláusula 13ª.

Parágrafo terceiro: A parcela única de auxílio desocupação será devida quando da efetiva desocupação e mediante assinatura de termo por meio do qual a Braskem receba a posse do imóvel.

CLÁUSULA 11ª. Os valores referentes a auxílio desocupação e auxílio aluguel mensal serão entregues diretamente ao responsável pelo núcleo familiar, conforme o que for ajustado em termo de compromisso a ser firmado com cada família.

Parágrafo único: Em não havendo consenso na indicação do responsável pelo núcleo familiar, serão utilizados os critérios previstos no artigo 35da Lei n° 11.977, de 07 de dezembro de 2009, vigente na data da homologação deste Termo.

CLÁUSULA 12ª. A Braskem, a título de adiantamento dos valores de que trata a Cláusula 13ª deste Termo, pagará a aqueles que desenvolvam atividades econômicas em imóveis localizados nasÁreas de Risco auxílio temporário, em parcela única, pela interrupção das atividades, no valor de R$ 10.000,00 (dez mil reais).

## CAPÍTULO IV

### Do Pagamento Pelos Imóveis Desocupados e Pela Interrupção de Atividade Econômica

CLÁUSULA 13ª. Observadas as cláusulas do Capítulo X deste Termo sobre a inexistência, por ora, de responsabilidade da Braskem e não reconhecimento de responsabilidade por parte dela, para viabilizar a desocupação prevista no presente Termo, a Braskem compromete-se a pagar valores equivalentes aos danos morais e materiais*(i)* dos proprietários e moradores dos imóveis desocupados nas Áreas de Risco; *(ii)* dos indivíduos que exerciam atividade econômica nas Áreas de Risco ("Beneficiários"), conforme acordos individuais entre os Beneficiários e a Braskem, que serão homologados pelo Juízo da 3ª Vara Federal da Seção Judiciária de Alagoas, nos mesmos critérios adotados no Programa de Compensação Financeira e Apoio à Realocação da população situada na Área de Resguardo.

Parágrafo primeiro: o montante a ser ofertado em valores equivalentes a danos materiais deverá contemplar, além do valor da propriedade do terreno ou da posse regular dele,o valor das construções edas benfeitorias existentes, devendo ser acompanhado de proposta suficientemente clara, que será formulada exclusivamente para fins de acordo e não vinculará eventual e futura avaliação judicial dos imóveis, na hipótese de não aceitação.

Parágrafo segundo: O valor será pago no prazo de até 5 dias úteis a partir da homologação judicial da transação a ser celebrada com cada Beneficiário.

1/4

Parágrafo terceiro: Em não havendo acordo quanto ao valor dos pagamentos previstos no *caput*, ficafacultado pleitear em juízo os eventuais direitos que se entender devidos, assegurados o contraditório e a ampla defesa, nos termos da Cláusula Quinta, Parágrafos Quarto, Quinto, Sexto, Sétimo e Oitavo.

CLÁUSULA 14ª. Os pagamentos referentes aos terrenos e edificações pressupõem a transferência do direito sobre o bem à BRASKEM, quando transferível.

CLÁUSULA 15ª. O Ministério Público atuará necessariamente, como *custos legis*, nas homologações judiciais dos acordos quando envolverem menores ou incapazes.

CAPÍTULO V

| ENCOSTA DO MUTANGE |
| --- |

CLÁUSULA 16ª. Observadas as cláusulas do Capítulo X sobre a inexistência de responsabilidade da BRASKEM, por ora, para os imóveis da Encosta do Mutange, na área especificada no mapa do Anexo I, a BRASKEM se compromete a oferecer, como alternativa ao conjunto de pagamentos previstos na Cláusula 13ª acima, um valor único e fechado de R$ 81.500,00 (oitenta e um mil e quinhentos reais) ("Valor Único") por imóvel.

Parágrafo primeiro: O valor fixado no *caput* desta Cláusula 16ª  (R$ 81.500,00), em sendo o imóvel a ser compensadoobjeto de contrato de locação, será dividido da seguinte forma: (i) R$ 61.500,00 (sessenta e um mil e quinhentos reais) serão pagos integralmente ao respectivo proprietário, conforme previsto no *caput* da cláusula 13ª; (ii) R$ 20.000,00 (vinte mil reais) será pago ao inquilino do imóvel.

Parágrafo segundo:Fará jus o inquilino do imóvel, ainda, a uma parcela única de auxílio desocupação no valor de R$ 5.000,00 (cinco mil reais), bem como um auxílio aluguel mensal de R$ 1.000,00 (hum mil reais) pelo prazo de 6 (seis) meses, não prorrogáveis.

Parágrafo terceiro: no prazo de até 5 dias úteis a partir da homologação judicial do termo de acordo individual a ser celebrado a respeito de cada imóvel desocupado, a BRASKEM pagará os valores acima ao proprietário ou núcleo familiar, conforme o caso.

CLÁUSULA 17ª. Se os moradores, o proprietário ou o titular dos direitos de domínio sobre o imóvel optarem pelo recebimento do Valor Único, esse montante será considerado o pagamento integral por todos os prejuízos sofridos por esses proprietários e moradores, inclusive danos morais e materiais, e não haverá o pagamento de qualquer outro valor, seja a que título for.

CAPÍTULO VI

| SERVIÇOS DE APOIO E DE ASSISTÊNCIA TÉCNICA |
| --- |

CLÁUSULA 18ª. A BRASKEM arcará com o custeio das mudanças referentes aos imóveis a serem desocupados nas ÁREAS DE RISCO, que serão realizadas por empresa selecionada por ela. O responsável pelo núcleo familiar deverá contratar diretamente com a respectiva empresa de mudanças indicada pela BRASKEM.

CLÁUSULA 19ª. A BRASKEM providenciará guarda-volumes, bem como serviços de guarda de animais domésticos para os moradores durante o período de mudança.

2/4

CLÁUSULA 20ª.A BRASKEM contratará diretamente e providenciará assistência por equipe multidisciplinar, composta necessariamente por psicólogos e assistentes sociais, aos atingidos que precisem desocupar asÁREAS DE RISCOora objeto do presente TERMO, durante o período da desocupação e realocação..

CLÁUSULA 21ª. A BRASKEM colocará à disposição dos moradores das ÁREAS DE RISCOapoio de consultoria imobiliária para identificação de um novo imóvel para locação e aquisição.

## CAPÍTULO VII

| COMUNICAÇÕES E ATENDIMENTOS |
| --- |

CLÁUSULA 22ª.A BRASKEM seguirá com a implementação de plano de comunicação, voltado a prestar informações aos atingidos sobre as medidas a serem adotadas em razão da celebração deste TERMO, considerando, sobretudo, a pessoa do atingido.

CLÁUSULA 23ª. A BRASKEM disponibilizará a infraestrutura e canais necessários para atendimento da população realocada, por meio da Central do Morador e Postos de Atendimento Avançados.

## CAPÍTULO VIII

| GARANTIAS |
| --- |

CLÁUSULA 24ª. As partes acordam que, do valor total de recursos em espécie depositados à disposição do Juízo no processo da ação civil pública n. 0803836-61.2019.4.05.8000(incidente de Pedido de Providência n° 0800137-14.2019.8.02.9002da Justiça Estadual de Alagoas, cujo número atual, por força da remessa do feito à Justiça Federal, passou a ser 0811775- 36.2019.4.05.0000), R$ 1,7 bilhão será transferido para uma nova conta bancária, de titularidade da BRASKEM, que será utilizada exclusivamente para a adoção e implementação das providências previstas neste TERMO, bem como no Termo de Compromisso para Apoio na Desocupação da Área de Resguardo, e nos documentos a eles correlatos, voltadas especificamente ao custeio das ações de desocupação das ÁREAS DE RISCOe ÁREA DE RESGUARDO.

Parágrafo primeiro: a conta bancária prevista no *caput* será auditada por uma empresa de auditoria externa independente escolhida de comum acordo pelas partes entre as quatro maiores empresas de auditoria do mercado (big four), que terá a incumbência precípua de verificar que os recursos ali depositados se destinarão ao implemento das finalidades previstas neste TERMO, no Termo de Compromisso para Apoio na Desocupação da ÁREA DE RESGUARDO e nos documentos a eles correlatos.

Parágrafo segundo: até o encerramento das medidas previstas neste TERMOe nos documentos a eles correlatos, será mantido um valor mínimo de R$ 100 milhões nessa conta, devendo a BRASKEM depositar essa quantia mínima em caso de insuficiência de fundos para execução do presente objeto.

Parágrafo terceiro: Caso haja necessidade de utilização parcial do valor mínimo em dinheiro previsto no parágrafo segundo, aBRASKEM será intimada a efetuar o depósito complementar em 5 (cinco) dias úteis. Ultrapassado o prazo, injustificadamente, será requerido ao juízo o

bloqueio de valores pelo sistema Bacenjud para o complemento do valor mínimo de R$ 100 milhões, com o que desde já a BRASKEM concorda.

Parágrafo quarto: o valor depositado na conta bancária prevista no *caput* não será utilizado para o pagamento da empresa de auditoria externa independente referida no parágrafo primeiro.

Parágrafo quinto: os rendimentos oriundos da aplicação do valor depositado na conta referida no *caput* serão mantidos/reaplicados na mesma conta e utilizados na mesma finalidade disposta no *caput*.

Parágrafo sexto: o valor depositado inicialmente na referida conta bancária equivale ao ponto de partida financeiro, não podendo, em hipótese alguma, ser considerado como teto para pagamento das obrigações do presente TERMO.

Parágrafo sétimo. Na hipótese de ocorrência de situações supervenientes e excepcionais de extrema gravidadedecorrentes dos Impactos PBM, não previstas no presente TERMO e que requeiram atuação emergencial,a BRASKEMserá intimada formalmente para aportar, no prazo de 05 (cinco) dias úteis, na conta de que trata o *caput*, valor adicional em dinheiro suficiente para fazer frente às despesas delas decorrentes, sob pena de descumprimento do presente TERMO.

CLÁUSULA 25ª.Após a abertura da conta referida no *caput* da cláusula 24ª, as Partes concordam com a liberação, em favor da BRASKEM, do saldo remanescente depositado na conta judicial daação civil pública n. 0803836-61.2019.4.05.8000 (incidente de Pedido de Providência n° 0800137-14.2019.8.02.9002da Justiça Estadual de Alagoas, cujo número atual, por força da remessa do feito à Justiça Federal, passou a ser 0811775- 36.2019.4.05.0000).

CLÁUSULA 26ª. As Partes acordam na emissão de uma nova apólice de seguro-garantia, no valor de R$ 2 bilhões, no prazo de 45 dias, em substituição das garantias prestadas nos termos das decisões judiciais do Superior Tribunal de Justiça (SLS 2529), consistentes nos seguros-garantia no valor de R$ 6,4 bilhões, apresentados na ação civil pública 0803836-61.2019.4.05.8000, para garantia do objeto remanescente e controvertido na referida ação coletiva.

Parágrafo primeiro: a celebração do presente TERMO será comunicada ao Tribunal Regional Federal da 5ª. Região, como perda superveniente de objeto do recurso, nos autos dosagravos de instrumento nos. 0811704-34.2019.4.05.000 e 0811775-36.2019.4.05.0000.

Parágrafo segundo: a celebração do presente TERMO será comunicada ao Superior Tribunal de Justiça como perda superveniente do pedido de suspensão de liminar, autos da SLS 2529.

CLÁUSULA 27ª Para garantir parte do objeto da ACP 0806577-74.2019.4.05.8000, ajuizada pelo MPF, e o implemento das medidas ambientais a serem executadas de acordo com as recomendações da Agência Nacional de Mineração (ANM), aBRASKEM se compromete a obter uma nova apólice de seguro-garantia, no valor de R$ 1 bilhão, no prazo de 45 dias, a ser prestada nos autos da ACP 0806577-74.2019.4.05.8000.

Parágrafo único – Os termos de compromisso quanto às medidas emergenciais pleiteadas na ACP n° 0806577-74.2019.4.05.8000, serão delimitados em momento a seguir, de forma que a garantia ora prestada poderá ser reforçada a partir da discussão daqueles termos.

Processo: **0803836-61.2019.4.05.8000**
Assinado eletronicamente por:
**ADILSON VIEIRA MACABU FILHO - Advogado**
**Data e hora da assinatura:**03/01/2020 09:34:31
**Identificador:** 4058000.5666603
**Para conferência da autenticidade do documento:** https://pje.jfal.jus.br/pje/Processo/ConsultaDocumento/listView.seam

20010309330096300000005698054

4/4

CLÁUSULA 28ª.Considerando que o seguro-garantia previsto na Cláusula 26ª visa à garantia do ponto ainda controvertido da ACP 0803836-61.2019.4.05.8000, em caso de descumprimento deste TERMO, tal garantia não pode ser acionada para assegurar o implemento das medidas propostas neste TERMO.

Parágrafo único. Em caso de descumprimento do presenteacordo, será requerido ao juízo o bloqueio de valores pelo sistema Bacenjud necessários ao cumprimento da obrigação eventualmente descumprida, sem prejuízo de outras medidas executórias.

CLÁUSULA 29ª. Considerando as garantias prestadas e o fato de que novos bloqueios judiciais nas contas da empresa e a indisponibilidade de ativos da companhia podem comprometer a adoção e implementação das medidas propostas neste TERMO, no Termo de Compromisso para Apoio na Desocupação da ÁREA DE RESGUARDOe nos documentos a eles correlatos, não haverá requerimento de bloqueios judiciais, nas contas ou indisponibilidade de bens da BRASKEM nos autos dos processos 0803836-61.2019.4.05.8000 e 0806577-74.2019.4.05.8000, ficando suspenso qualquer pedido formulado para esses fins.

CLÁUSULA 30ª. Em razão do princípio da boa-fé e vedação da decisão surpresa, novos bloqueios não poderão ser pleiteados, exceto em caso de descumprimento do presente TERMO, nos termos dasCláusula 28ª.

## CAPÍTULO IX

### EXTINÇÃO PARCIAL

CLÁUSULA 31ª. As Partes acordam que a celebração do presente TERMO implica a extinção parcial da ação civil pública n. 0803836-61.2019.4.05.8000 em relação aos pagamentos por danos materiais e morais aos moradores pelos IMPACTOS PBM alcançados por este TERMO e nos documentos a ele correlatos, ficando suspenso, ainda, o requerimento ou a apreciação de quaisquer medidas de urgência pedidas ou a serem postuladas relativamente ao objeto versado no referido processo, exceto em caso de descumprimento do presente TERMO, conforme Cláusulas 24ª, 28ª e 30ª.

## CAPÍTULO X

### INEXISTÊNCIA DE RESPONSABILIDADE

CLÁUSULA 32ª. Todas as obrigações assumidas pelas Partes neste TERMOnão importam em reconhecimento de responsabilidade da BRASKEM pela desocupação das pessoas das ÁREAS DE RISCO oupelos IMPACTOS PBM e não poderão ser interpretadas neste sentido.

CLÁUSULA 33ª. A BRASKEM se reserva, caso se reconheça não ser ela a responsável pelos IMPACTOS PBM, o direito de pleitear, em juízo ou fora dele, dos responsáveis que vierem a ser identificados o ressarcimento dos pagamentos feitos com fundamento neste TERMO, ou em decorrência dos instrumentos a ele correlatos.

CLÁUSULA 34ª. A BRASKEM se compromete a não exercer o direito previsto na cláusula anterior contra os proprietários e moradores beneficiários dos pagamentos feitos com fundamento neste TERMO, ou em decorrência dos instrumentos a ele correlatos.

CLÁUSULA 35ª. Na hipótese de restar demonstrada a responsabilidade da BRASKEM pelos prejuízos decorrentes dos IMPACTOS PBM, os pagamentos feitos aos moradores e demais pessoas com

1/4

fundamento neste TERMOou em decorrência dos instrumentos a ele correlatos serão considerados como quitação integral por todos os prejuízos materiais e morais sofridos por esses proprietários e moradores, que não serão alcançados por eventual e futura sentença de procedência dos pedidos indenizatórios formulados na ACP no 0803836-61.2019.4.05.8000.

CAPÍTULO XI

AUDITORIA EXTERNA INDEPENDENTE E PRESTAÇÃO DE CONTAS

CLÁUSULA 36ª. A auditoria externa independente verificará, de forma contábil e financeira, a aplicação dos recursos depositados na conta referida na cláusula 24ªe dará publicidade às informações obtidas nos relatórios produzidos.

CLÁUSULA 37ª. O recurso financeiro a ser depositado na conta bancária referida na cláusula 24 deverá ser mantida em uma única conta bancária para manejo exclusivo das ações do projeto. Os pagamentos e recebimentos devem ser efetuados por meios que permitam a identificação da origem e aplicação dos valores.

Parágrafo primeiro: A prestação de contas mensal relativa ao recurso financeiro mencionado no caput deve compreender o cronograma de execução prevista na cláusula segunda, parágrafo primeiro, e financeiras executadas e a executar do projeto.

Parágrafo segundo: A meta financeira deve compreender objetivamente o valor e os objetos de gastos do projeto de modo a permitir a identificação do recebedor do recurso, seja pessoa física ou jurídica.

Parágrafo terceiro: A prestação de contas financeira deverá ser elaborada em forma de relatório contábil que contenha as contas de forma analítica, de modo a permitir a auditoria contábil dessas.

Parágrafo quarto: A prestação de contas física mensal deve permitir a identificação das ações realizadas e a realizar e a quantidade de famílias atendidas, de modo a permitir a aferição da efetividade da aplicação do recurso desbloqueado.

Parágrafo quinto: A empresa de auditoria externa deverá apresentar em juízo, após prestação de compromisso judicial, com frequência bimestral, o relatório consolidado que atenda a todos elementos mencionados na presente cláusula, sem prejuízo do relatório de execução anual das metas (ações) físicas e financeiras.

Parágrafo sexto – A empresa contratada para auditoria dos valores depositados em conta destinada à compensação versada neste Termo, obrigar-se-á a divulgar, semanalmente e em sítio eletrônico por ela fomentado, todas as movimentações financeiras realizadas, reservando-se a informar a natureza e o valor das receitas e despesas, sem prejuízo da prestação de contas na forma da Cláusula.

CAPÍTULO XII

> DESCUMPRIMENTO

CLÁUSULA 38ª. O cumprimento das obrigações previstas neste TERMO de modo distinto do que pactuado implica no seu descumprimento, salvo quando decorrente de termo aditivo ou de orientação de órgão e/ou entidade pública técnico com *expertise* no tema.

Parágrafo primeiro:Em caso de descumprimento do presente TERMO pela Braskem, no prazo de 5 (cinco) dias úteis, a BRASKEM poderá cumprir a obrigação indicada ou, justificadamente, solicitar às Partes a dilação do prazo para cumprir integralmente as obrigações indicadas.

Parágrafo segundo: Decorrido o prazo definido, ou a dilação eventualmente deferida, sem que reste comprovado o cumprimento integral das obrigações indicadas, a BRASKEMficará obrigada ao pagamento de multa por item descumprido, no valor de R$ 100.000,00 (cemmil reais), sem prejuízo do bloqueio, conforme os termos dasCláusulas nos. 24, 28 e 30.

Parágrafo terceiro: O valor total da multa não excederá o valor da obrigação descumprida, sem prejuízo de cumprimento integral da obrigação.

Parágrafo quarto: O valor da multa prevista nesta Cláusula será revertido para a conta específica destinada a eventual e futura indenização da parte controversa das Ações Civis Públicas referidas no presente TERMO, se definitivamente reconhecida a responsabilidade da BRASKEM.

Parágrafo quinto: Eventual atraso no cronograma estabelecido na Cláusula Segunda não será qualificado como descumprimento do presente TERMO, considerando que se trata de uma estimativa e que a sua execução depende de fatores externos alheios à vontade da BRASKEM. Desde que devidamente comprovada a ausência de culpa da Braskem.

CLÁUSULA 39ª. As multas referidas neste capítulo serão aplicadas somente após a notificação formal da BRASKEM, indicando precisamente a obrigação descumprida e observado o prazo do parágrafo primeiro da Cláusula 38ª para que a BRASKEM possa justificar o descumprimento e solicitar prazo adicional para o seu cumprimento.

Parágrafo único: As multas acima referidas serão aplicadas por dias corridos tendo seu início no primeiro dia útil seguinte a notificação pelas partes.

CAPÍTULO XIII

> DA SUBSTITUIÇÃO DAS EMPRESAS CONTRATADAS

CLÁUSULA 40ª. Em caso de insatisfação com a assistência técnica prestada aos atingidos, as Partes, justificadamente, poderão solicitar a substituição das empresas contratadas pela BRASKEM para execução das atividades previstas neste TERMO.

Parágrafo primeiro: Na hipótese prevista nesta Cláusula, as instituições que ora são partes notificarão a BRASKEM sobre a necessidade de substituição, dando prazo de 10 (dez) dias úteis para manifestação. A substituição das empresas contratadas seguirão prazo estabelecido em conjunto.

3/4

Parágrafo segundo: Em havendo a necessidade de substituição da empresa contratada, o período necessário para tanto não será considerado descumprimento do presente TERMO.

## CAPÍTULO XIV

### DISPOSIÇÕES FINAIS

CLÁUSULA 41ª. Sob pena de recebimento em duplicidade, os proprietários e moradores indenizados em decorrência e na forma prevista neste TERMO não serão alcançados por eventual e futura sentença de procedência dos pedidos indenizatórios formulados na ação civil pública n°0803836-61.2019.4.05.8000, considerando-se os valores recebidos com fundamento neste TERMO ou em decorrência dos instrumentos a ele correlatos como quitação integral por todos os prejuízos sofridos por esses moradores.

Parágrafo único: A elegibilidade aos pagamentos de que tratam este TERMO está condicionada à apresentação, por parte das pessoas físicas e/ou jurídicas situadas nas ÁREAS DE RISCO, de documentação hábil e idônea que demonstre o direito inconteste aos pagamentos dos valores a título de danos materiais e morais.

CLÁUSULA 42ª. As Partes se comprometem a agir de forma colaborativa e de acordo com os ditames da boa-fé, em atenção às recomendações técnicas, a fim de buscar a eficaz e segura desocupação das pessoas das ÁREAS DE RISCO.

CLÁUSULA 43ª. A celebração deste TERMO não retira dos órgãos públicos suas atribuições legais, na implementação de medidas de segurança e desocupação de pessoas.

CLÁUSULA 44ª. Este TERMO é celebrado sem prejuízo da adesão de outras autoridades, desde que expressamente convencionado pelas partes signatárias deste TERMO.

CLÁUSULA 45ª. As partes requererão a homologação deste TERMO, nos autos das ações civis públicas n. 0803836-61.2019.4.05.8000 e 0806577-74.2019.4.05.8000,com a consequente extinção parcial da ação civil pública n. 0803836-61.2019.4.05.8000, nos termos da Cláusula 31ª acima.

Parágrafo único: o teor do presente TERMO será cientificado pelo MPF à CCR/PFDC (órgão do MPF), visando à supervisão da execução do presente TERMO e da respectiva prestação de contas.

CLÁUSULA 46ª. Eventuais divergências entre as partes no cumprimento deste TERMO, caso não solucionadas de forma consensual, serão apresentadas ao Juízo da 3ª Vara Federal de Alagoas, a quem caberá decidir a questão.

CLÁUSULA 47ª.As obrigações previstas neste TERMO não limitam ou substituem as prerrogativas legalmente atribuídas aos órgãos ou entidades do poder público e aos órgãos e entidades competentes.

CLÁUSULA 48ª.As Partes reconhecem expressamente que o presente TERMO não se aplica às demais ações propostas ou que venham a ser propostas pelas instituições signatárias não prejudicando seu desenvolvimento nem interferindo em medidas judiciais deferidas em outros autos.

CLÁUSULA 49ª.O presente TERMO não atinge partes não signatárias e tampouco a ACP n° 0803662-52.2018.4.05.8000.

Processo: 0803836-61.2019.4.05.8000
Assinado eletronicamente por:
**ADILSON VIEIRA MACABU FILHO - Advogado**
Data e hora da assinatura: 03/01/2020 09:34:31
Identificador: 4058000.5666604
Para conferência da autenticidade do documento: https://pje.jfal.jus.br/pje/Processo/ConsultaDocumento/listView.seam


2001030933009630000005698055

4/4

CLÁUSULA 50ª.Os valores despendidos com os serviços de apoio e assistência técnica aos atingidos previstos no Capítulo VI do presente Termonão serão abatidos do montante a ser pago aos atingidos a título de compensação.

CLÁUSULA 51ª.A DPE, a DPU, o MPE e o MPF se reservam o direito de indicar profissionais com expertise para acompanhar todas as fases do programa que o presente Termo envolve.

CLÁUSULA 52ª.Em constatada a necessidade de ampliação dos serviços de apoio e assistência técnica aos atingidos previstos no Capítulo VI do presente Termo, as Partes se reunirão para discutir a implementação de eventuais medidas adicionais.

CLÁUSULA 53ª.Todas as obrigações inseridas no presente Termo serão consideradas de relevante interesse público, para todos os fins de direito, devendo a Braskem fornecer aos órgãos públicos interessados todos os documentos e informações necessários ao regular cumprimento da finalidade a que se destina, não podendo opor alegação de sigilo, exceto nas hipóteses previstas em lei ou regulamento.

CLÁUSULA 54ª. A Braskem deverá realizar suas atividades em conformidade com as leis anticorrupção, devendo, ainda, se abster de praticar quaisquer atos contrários à Lei Anticorrupção brasileira (Lei Federal nº 12.846/2013), comprometendo-se a observá-la, bem como responsabilizando-se pelo cumprimento de todas as outras leis e normas que tenham finalidade e efeitos semelhantes, inclusive aquelas aplicáveis para a Administração Pública, bem como todos os regulamentos, leis, normas e legislações relacionadas a corrupção, suborno, conflito de interesse, lavagem de dinheiro, fraude ou improbidade administrativa.

CLÁUSULA 55ª. O presente Termo não vincula e não gera obrigações para os cidadãos que não concordarem com as propostas da Braskem, ficando livres para adotar as medidas que entenderem cabíveis.

Maceió, 30 de dezembro de 2019.

Ricardo Antunes Melro
Defensor Público-Geral

Carlos Eduardo de Paula Monteiro
Defensor Público

Fernando Rebouças
Defensor Público

Fabricio Leão Souto
Defensor Público

Diego Bruno Martins Alves
Defensor Público Federal

1/8

Alfredo Gaspar de Mendonça Neto

Procurador Geral de Justiça

José Antônio Malta Marques

Promotor de Justiça

Max Martins de Oliveira e Silva

Promotor de Justiça

Jorge José Tavares Dória

Promotor de Justiça

Jomar Amórim de Moraes

Promotor de Justiça

Vicente José Cavalcante Porciúncula

Promotor de Justiça

Cinara Bueno Santos Pricladnitzky

Procuradora da República

Niedja Gorete de Almeida Rocha Kaspary

Procuradora da República

Raquel de Melo Teixeira

Procuradora da República

Roberta Lima Barbosa Bomfim

Procuradora da República

BRASKEM S.A.

Por seu representante legal

FELNANDO MOTA DOS SANTOS

OAB/BA 28.305

Assinado em 03 de Janeiro de 2020, pela Braskem.

ANEXO 1

(Mapa de Setorização de Danos e Linhas de Ação emitido pela Defesa Civil em Junho de 2019)



## ANEXO 2

(MAPA DA DEFESA CIVIL MUNICIPAL IDENTIFICANDO OS 62 IMÓVEIS DO BOM PARTO)

A figura a seguir já considera as novas áreas que serão inseridas no Setor 2, criticidade 00, assim como o quantitativo de residências afetadas pelos fenômenos.



Figura 16: Área afetada pelos fômenos e quantidade de residências afetadas.

A quantidade de residências afetada pela feição de direção 240° são de 51 unidades.

A quantidade de residências que apresentaram graves danos estruturais com risco de colapso é de 1 unidade.

A quantidade de residências afetada pela área de subsidência são de 10 unidades.

A quantidade de residências incuídas no setor 0, criticidade 00, em sua totalidade são de **62 unidades**.

Vale ressaltar que para o restante da área, o monitoramento deve ser constante, onde existe a possibilidade da progressão das feições já identificadas ou do surgimento de novas feições.

ANEXO 3

(PROGRAMA DE COMPENSAÇÃO FINANCEIRA E APOIO NA REALOCAÇÃO)



Processo: 0800836-61.2019.4.05.8000
Assinado eletronicamente por:
ADILSON PEREIRA MACABU FILHO - Advogado
Data/hora da assinatura: 03/01/2020 09:34:31
Identificador: 4058000.5666605
Para conferência da autenticidade do documento: https://pje.jfal.jus.br/pje/Processo/ConsultaDocumento/listView.seam

Plano de Fechamento de Poços: Área de Resguardo

# Jornada do Morador



## Programa de Compensação



Comunicado sobre processo de realocação (diálogos sociais, mídia etc)



Recebe profissionais para coleta de dados
• Selagem
• Pesquisa censitária

Visita Central do Morador e faz reunião informativa individual



Realiza reuniões acompanhado de Defensor Público ou advogado e fornece documentação



Recebe e analisa a proposta



Assina acordo e submete a homologação judicial



Recebe compensação



Realiza mudança definitiva



Recebe acompanhamento de assistente social



Submete documentação necessária



Assina termo de compromisso



Recebe orientação quanto ao processo e auxílios disponíveis

Procura moradia provisória



Realiza mudança, assina termo de desocupação e recebe auxílio financeiro



Recebe demais 6 parcelas de auxílio aluguel

Recebe acompanhamento de assistente social

## Programa de Apoio à Realocação

2001030933009630000000005698056

8/8

1