**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATSUKAWA CO., LLC (n/k/a MATSUKAWA CO., LTD), individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BRASKEM S.A., ROBERTO LOPES PONTES SIMÕES, FERNANDO MUSA, and PEDRO VAN LANGENDONCK TEIXEIRA DE FREITAS, <br><br> Defendants. | Case No. 2:20-cv-11366-CCC-ESK <br><br> Hon. Claire C. Cecchi, U.S.D.J. <br> Hon. Edward S. Kiel, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE OF SETTLEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND .................................................................................................2

        A.      Procedural History................................................................................2

        B.      Settlement Negotiations........................................................................3

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT...............4

        A.      Standards for Preliminary Approval......................................................4

        B.      Plaintiff and Lead Counsel Have Adequately Represented the Settlement
                Class……… ……………………………………………………………….6

        C.      The Settlement Was Negotiated at Arm's Length Between Experienced Counsel
                ……………………………………………………………………………….6

        D.      The Relief Provided to the Settlement Class is Adequate .......................7

                1.      The *Girsh* Factors Support Preliminary Approval ......................7

                2.      The Proposed Method of Distributing Relief is Effective..........10

                3.      Lead Counsel Will Seek Reasonable Attorneys' Fees,
                        Reimbursement of Expenses, and a Reimbursement Award to
                        Plaintiff.................................................................................10

                4.      The Parties Have Agreed to a Standard Side Agreement Regarding
                        Opt- Outs ..............................................................................11

        E.      There Was No Preferential Treatment; The Plan Treats Settlement Class
                Members Equally..................................................................................11

IV.     THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT
        CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS
        MEMBERS.......................................................................................................12

        A.      Numerosity .........................................................................................12

        B.      Commonality .......................................................................................13

        C.      Typicality............................................................................................14

        D.      Adequacy.............................................................................................15

                1.      Adequacy of the Proposed Class Representative .......................15

ii

        2.      Adequacy of the Proposed Class Counsel ...................................................15

    E.    Predominance and Superiority..............................................................................16

V.    THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS SATISFIES RULE 23(c)(2)(B) ..........................................................................................................18

VI.    PROPOSED SCHEDULE OF EVENTS ...........................................................................20

VII.    CONCLUSION ....................................................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Allen v. PixarBio Corp., et al.*,
  Case No. 2:17-cv-00496 (D.N.J. 2019) .................................................................20

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..........................................................................................12, 17

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ...................................................................................13

*Baker v. SeaWorld Ent., Inc.*,
  No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) .......................20

*Clark v. Bally's Park Place, Inc.*,
  298 F.R.D. 188 (D.N.J. 2014) ............................................................................17

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...............................................................................4

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ...............................................................................7

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...............................11

*Hoxworth v. Blinder, Robinson & Co.*,
  980 F.2d 912 (3d Cir. 1992) ...............................................................................14

*Hull v. Glob. Dig. Sols., Inc., et al*,
  Case No. 3:16-cv-05153 (D.N.J. 2019).................................................................20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................20

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) ............................................................................14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...............................................................................9

*In re Charter Commc'ns, Inc., Sec. Litig.*,
  No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ..........................10

*In re China Sunergy Sec. Litig.*,
No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................9

*In re Cigna Corp Sec. Litig.*,
No. CIV.A. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .....................................13

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013)........................................................................................11

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D.Pa.2008). ....................................................................................13, 14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ..........................................................................................6, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................9

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ....................................................................................7, 14

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004)......................................................................................8

*In re Nat. Football League Players Concussion Inj. Litig.*,
775 F.3d 570 (3d Cir. 2014). ...................................................................................... 5, 12

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)....................................4, 8, 9

*In re Ocean Power Techs., Inc., Sec. Litig.*,
No. 14-3799 (FLW) (LHG), 2016 WL 7638464 (D.N.J. June 7, 2016) ..............................11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)..............................................................................10

*In re Par Pharm. Sec. Litig.*,
No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013)...................................10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014)................................................................................10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998). ....................................................................................15, 20

*In re Prudential Insurance Co. of Am. Sales Practices Litig.*,

962 F. Supp. 450 (D.N.J. 1997) ................................................................................ 9, 13

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    No. CIV.A. 04-374 JAP, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ...................................7

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ................................................................................13

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    233 F.R.D. 421 (E.D. Pa. 2006) ............................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .................................................................................4

*Jones v. Com. Bancorp, Inc.*,
    No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) ..........................................5, 6

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .........................................................................................20

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ...............................................................................14

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
    No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) ..........................................10

*Pepe v. Cocrystal Pharma, Inc., et al.*,
    Case No. 2:18-cv-14901 (D.N.J.) ..........................................................................20

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .........................................................................................18

*Shapiro v. All. MMA, Inc.*,
    No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) ...................15,16

*Singleton v. First Student Mgmt. LLC*,
    No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ...................................7

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ............................................................................17, 18

*Smith v. Suprema Specialties, Inc.*,
    No. CIV. 02-168 (WHW), 2007 WL 1217980 (D.N.J. Apr. 23, 2007) ......................3, 17, 18

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ...............................................................................13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................................14

*Trief v. Dun & Bradstreet Corp.*,
  840 F. Supp. 277 (S.D.N.Y. 1993) ...............................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................................14

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002) .....................................................................................17

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016). .............8, 16

<u>**Statutes**</u>

  15 U.S.C. § 78u-4(a) ........................................................................................ 11, 19, 20

<u>**Rules**</u>

  Fed. R. Civ. P. 23............................................................................................... passim

<u>**Other Authorities**</u>

7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) .......................4

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986) .. 17

Manual for Complex Litigation § 21.632 (4th ed. 2004)...............................................................5

Lead Plaintiff Matsukawa Co. Ltd. ("Plaintiff") respectfully submits this memorandum in support of its unopposed Motion For Entry of Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement.[1]  Plaintiff also requests that the Court schedule a final approval hearing ("Settlement Fairness Hearing"), where it will rule on the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds ("Plan"), and the request for attorneys' fees, reimbursement of expenses, and Award to Plaintiff.

## I.   INTRODUCTION

The Parties have reached a settlement to resolve this putative securities class action for $3 million ("Settlement"). Plaintiff now seeks preliminary approval of the Settlement.  A copy of the Stipulation and Agreement of Settlement and associated documents is being contemporaneously filed as **Exhibit 1** (the "Stipulation").  Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Rather, the Court need only determine whether the Settlement is *approvable* - in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiff will provide notice to the Settlement Class, soliciting claims on, objections to, and exclusions from the Settlement. With the Settlement Class Members' reactions in hand, the Court will determine at the Settlement Fairness Hearing whether to grant final approval of the Settlement.

This is a particularly risky case, as there were substantial questions concerning whether the alleged misrepresentations are actionable and whether Defendants acted with scienter. Nevertheless, Plaintiff and Lead Counsel vigorously prosecuted this Action and obtained this $3

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation of Settlement dated December 15, 2022, filed concurrently herewith ("Stipulation").

1

million Settlement following extensive and hard-fought negotiations with Defendants. The Settlement recovers approximately 16% of the $17.7 million in *maximum* damages *potentially* available in this case. However, that was Plaintiff's best-case scenario. The recovery is well within the range of recoveries that courts have found to be fair, reasonable, and adequate.

The Court must also preliminarily certify a settlement class to allow for notice to be distributed to the Settlement Class. Securities class actions are particularly well-suited for class treatment, and this case is no outlier. The Court should make a preliminary determination that class treatment is appropriate, which will allow for the dissemination of notice to the Settlement Class. The Court need not decide at this stage whether to finally certify a settlement class.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the specific proposed documents that Plaintiff will use to communicate notice – the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice"), and the Postcard Notice (together with the Long Notice and Summary Notice, "Notice"). Proposed versions of the various forms of the Notice are attached respectively as Exhibits A-1, A-3, and A-4 to the Stipulation.[2] The Notice Plan and the Notice each closely track the forms and methods routinely used to communicate notice in securities class actions, and each satisfy Fed. R. Civ. P. 23, including its recent amendments. For these reasons, the Court should approve the Notice Plan and Notice.

---

[2] Exhibit A-2 to the Stipulation is the Proof of Claim and Release Form ("Claim Form").

## II.    BACKGROUND

### A.    Procedural History

This Action began on August 25, 2020, when Claudio Coutinho filed a putative securities fraud class action complaint in this Court against Braskem S.A. ("Braskem" or the "Company"), Roberto Lopes, Pontes Simões, Fernando Musa, and Pedro Van Langendonck Teixeira De Freitas alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Dkt. No. 1.

On October 26, 2020, lead plaintiff motions were filed by (1) Matsukawa Co. LLC ("Matsukawa") (Dkt. No. 13); (2) Rogerio Basso ("Basso") (Dkt. No. 14); (3) Rainer Senn ("Senn") (Dkt. No. 15); and (4) Claudio Coutinho (Dkt. No. 16). Basso and Coutinho filed notices of non-oppositions to the competing lead plaintiff motions on November 13, 2020 (Dkt. No. 17) and November 20, 2020 (Dkt. No. 19), respectively.

On January 15, 2021, the Court issued an order appointing Senn and Matsukawa as Co-Lead Plaintiffs, Bernstein Liebhard LLP ("Bernstein Liebhard") and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Co-Lead Counsel for the proposed Class, and Schnader Harrison Segal & Lewis LLP ("Schnader Harrison") as Local Counsel for the proposed Class. Dkt. No. 22.[3]

On April 28, 2021, Plaintiff filed the Amended Class Action Complaint ("Complaint"). Dkt. No. 39. The Complaint alleged claims under Section 10(b) and 20(a) of the Exchange Act against Braskem, Roberto Lopes, Pontes Simões, Fernando Musa, and Pedro Van Langendonck Teixeira De Freitas (collectively, "Defendants").

---

[3] Matsukawa Co. Ltd. was formerly Matsukawa Co. LLC. Rainer Senn was not included in the Amended Complaint because he purchased Braskem ADRs before the Class Period.

On June 28, 2021, Defendants filed a motion to dismiss. Dkt. No. 41. On August 27, 2021, Plaintiff filed its opposition to the motion to dismiss. Dkt. No. 46.

### B.    Settlement Negotiations

On March 31, 2022, the Parties requested an adjournment of the oral argument on Defendants' motion to dismiss, which was previously scheduled for April 7, 2022, in order to facilitate settlement discussions. By order dated March 31, 2022, the Court granted the application and adjourned the scheduled oral argument. Dkt. No. 49. The settlement negotiations continued until August 9, 2022, when the Parties reached an agreement in principle, which the Parties memorialized in a Memorandum of Understanding ("MOU").

On August 9, 2022, following settlement negotiations, the Parties agreed, in principle, to settle the Action for $3 million, subject to the negotiation of a mutually acceptable written settlement agreement and Court approval.

On August 16, 2022, counsel for Defendants, David A. Luttinger Jr., submitted a letter to the Court informing the Court that the Parties had reached a settlement and requesting that the Court continue to refrain from scheduling oral argument on the Defendants' motion to dismiss. Dkt. No. 53.

## III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    Standards for Preliminary Approval

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594. This is particularly true for class actions involving complex litigation and securities matters. 7 Conte & Newberg, *Newberg*

4

*on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more"); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at \*28 (D.N.J. Nov. 15, 2016) (citing *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("Securities class action litigation is 'notably difficult and notoriously uncertain'")).[4]

Settlement of this putative class action requires the Court's approval. Fed. R. Civ. P. 23(e). Courts typically conduct a preliminary assessment of the settlement before directing notice, a practice endorsed by the Third Circuit. *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570 (3d Cir. 2014) ("*NFL Players*") (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)); *see also* 4 H. Newberg & A. Conte, *Newberg on Class Action* (4th ed. 2002), at ¶ 11.25, 38. "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Com. Bancorp, Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at \*2 (D.N.J. July 16, 2007).

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;

---

[4] Internal citations and quotations are omitted and emphasis is added unless otherwise indicated.

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

**B.    Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class**

Plaintiff has diligently prosecuted this Action on the Settlement Class's behalf. Plaintiff thoroughly investigated the facts to draft a detailed amended complaint, which required Plaintiff to, among other things, retain a Brazilian private investigator, translate documents from Portuguese, and hire an economics expert to assess and analyze damages.

Plaintiff then engaged in hard-fought settlement discussions with Defendants, who were zealously represented by experienced practitioners from the law firm of Covington & Burling LLP ("Covington"). The negotiations continued for over four months before the Parties reached their agreement in principle.

**C.    The Settlement Was Negotiated at Arm's Length Between Experienced Counsel**

Courts apply an initial presumption of fairness if the proposed settlement was reached through arm's length negotiation. *Jones*, 2007 WL 2085357, at *2 (quoting Manual for Complex Litigation, Third Ed., § 30.42 (1995)). Here, the settlement was negotiated at arm's length over a

6

four-month period by the Parties' respective counsel, each of whom has extensive experience litigating securities class actions. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 796 (3d Cir. 1995) (presumption of fairness if settlement negotiations conducted at arm's length by experienced counsel).

> **D.    The Relief Provided to the Settlement Class is Adequate**

> **1.    The *Girsh* Factors Support Preliminary Approval**

In determining whether to grant final approval of class action settlements, courts in the Third Circuit consider the *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). The *Girsh* final approval factors also help guide a court's preliminary assessments of class action settlements. *Id.*

The first Girsh factor, the complexity, expense and likely duration of the litigation, supports approval of the Settlement. "Large class actions alleging securities fraud" are "inherently complicated." In re Ikon Off. Sols., Inc., Sec. Litig., 194 F.R.D. 166, 179 (E.D. Pa. 2000); In re Royal Dutch/Shell Transp. Sec. Litig., No. CIV.A. 04-374 JAP, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008) ("Federal securities class actions by definition involve complicated issues of law and fact."). This case is no exception. This litigation involved allegations that Defendants misrepresented the role Braskem played in the collapse of a Brazilian mine and in

the exposure of Braskem to the resulting damages.  Securities class actions such as this one are notoriously complex and expensive to litigate as they require extensive investigations, discovery, and the retention of experts to opine on several topics such as on market efficiency, loss causation, and damages.

The third factor, the stage of the proceedings, also supports approval.[5] While discovery was stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "[c]ourts in this Circuit frequently approve class action settlement despite the absence of formal discovery." *Ocean Power,* 2016 WL 6778218, at \*17 (citing cases); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at \*13 (D.N.J. Nov. 10, 2016) (same).

At the time of settlement, Plaintiff was very knowledgeable about the strengths and weaknesses of its case as it conducted an extensive investigation prior to filing the amended complaint, including among other things, a review of Braskem's public filings, conference calls and announcements made by Braskem, documents from Brazilian governmental agencies, Braskem's wire and press releases, analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Additionally, Plaintiff consulted with an economics expert regarding the range of provable damages. After these steps, Plaintiff had a clear and realistic understanding of the merits of the case as it entered settlement negotiations.

The fourth, fifth, and sixth *Girsh* factors – the risks of establishing liability, establishing damages, and maintaining the class action through the trial – also support approval. At the time that the Settlement was reached, Defendants had already filed their motion to dismiss. While Plaintiff believes its claims to be meritorious, Plaintiff recognizes that Defendants have compelling arguments concerning liability, including strong arguments against scienter and Safe

---

[5] Before notice of a settlement is disseminated, it is not possible to gauge the reaction of the class (the second *Girsh* factor). Plaintiff, however, supports the Settlement.

8

Harbor. There is no guarantee that Plaintiff would be able to defeat Defendants' motion to dismiss, let alone prevail at summary judgment and trial. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (proving liability, particularly scienter, "would have been very difficult" and based on risks and contingencies, settlement is reasonable in light of risks involved in establishing liability); *Ocean Power,* 2016 WL 6778218, at *19-20 (recognizing the difficulty of establishing liability in securities class actions and the additional risk of establishing damages); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *8 (S.D.N.Y. Dec. 19, 2014) ("Securities class actions present hurdles to proving liability that are difficult for Plaintiff to meet."). The Settlement provides a favorable and immediate result for the Settlement Class while avoiding significant risks of establishing liability.

The seventh, eighth, and ninth *Girsh* factors – the ability of the defendants to withstand a greater judgment and the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation – also support approval. While Defendants are believed to be solvent, Defendants' ability to pay is irrelevant if Plaintiff cannot survive a motion to dismiss or summary judgment. Here, the $3 million Settlement confers an immediate and guaranteed benefit on Settlement Class Members, recovering 16% of damages, which compares favorably to settlements in similar cases. *See* Cornerstone Report at 6, filed contemporaneously as **Exhibit B**. *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) ("average 5.5% – 6.2% of

9

estimated losses recovered in securities fraud class [action] settlements since 1995"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *2 (D.N.J. July 29, 2013) (approving settlement recovering 7% of damages); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017) (approving settlement recovery 10% of damages).

### 2.    The Proposed Method of Distributing Relief is Effective

As demonstrated below in Section V, the proposed form and method of notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how the Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiff's damages consultant.

### 3.    Lead Counsel Will Seek Reasonable Attorneys' Fees, Reimbursement of Expenses, and a Reimbursement Award to Plaintiff

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As outlined in the proposed Notice, Lead Counsel intends to seek an award of attorneys' fees of no more than one third of the Settlement Amount and recover litigation expenses in an amount not to exceed $55,000. This fee request is in line with other settlements approved in recent cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). Further, as explained in the proposed Notice, Plaintiff intends to request an amount not to exceed $5,000 in total pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with its representation of the Settlement Class.

10

**4.    The Parties Have Agreed to a Standard Side Agreement Regarding Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement that provides Defendants with the option to terminate the Settlement if the number of opt-outs reaches a certain confidential threshold. Stipulation ¶ 2.12. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

**E.    There Was No Preferential Treatment; The Plan Treats Settlement Class Members Equally**

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Plaintiff or any other Settlement Class Member preferentially. *See In re Ocean Power Techs., Inc., Sec. Litig.*, No. 14-3799 (FLW) (LHG), 2016 WL 7638464, at *1 (D.N.J. June 7, 2016). The Long Notice sets out the Plan, which explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan provides that each Settlement Class Member will receive the same per-share amount based on when they purchased or sold their Braskem ADRs. Plaintiff and all other Settlement Class Members will receive their payments pursuant to the same formula.

11

**IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS MEMBERS**

This Court should preliminarily certify the proposed Settlement Class for the purposes of the Settlement. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Fed. R. Civ. P. 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *NFL Players*, 775 F.3d at 574. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.* at 586.

Rule 23 of the Federal Rules of Civil Procedure governs class certification, and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority"). The Action meets each of these requirements.

**A.   Numerosity**

The numerosity requirement is satisfied where a class is so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "To meet the numerosity requirement, class

12

representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *Prudential,* 962 F. Supp. at 510. Indeed, numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Although the exact number of class members is not precisely known, courts generally presume that the numerosity requirement has been satisfied "when a class action involves a nationally traded security." *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (quoting *Sinay et al. v. Lepore & Assocs. et al.,* No. 99-2231, slip op., at 8 (D.N.J. Feb. 14, 2001)); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 200 (E.D. Pa. 2008) (same); *Smith v. Suprema Specialties, Inc.*, No. CIV. 02-168 (WHW), 2007 WL 1217980, at *4 (D.N.J. Apr. 23, 2007) (in "a securities action, a court may infer that the numerosity requirement is met from allegations of the number of transactions during the relevant period, even if the number of class members is not precisely known.").

Here, Braskem's ADRs were publicly traded on the New York Stock Exchange and the OTC market with millions of shares outstanding at the end of the Class Period. The numerosity requirement is easily satisfied here.

**B.      Commonality**

Commonality does not require that all class members must make identical claims and arguments, but only that "named Plaintiff share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n.10 (3d Cir. 2009) (noting that "only one question of law or fact in common is necessary"). The common issue "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

13

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Commonality is satisfied where the plaintiff alleges a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in Defendants' public filings and statements. *Sullivan*, 667 F.3d at 336; *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002); *Ikon*, 194 F.R.D. at 176; *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 426 (E.D. Pa. 2006). Securities class actions are particularly well suited to class treatment. *DVI*, 249 F.R.D. at 201 ("Courts in this Circuit also have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock."). This Action asserts a common course of misconduct by Defendants, thus commonality is satisfied.

### C.    Typicality

If "the claims of the named Plaintiff and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).

Here, Plaintiff's claims are typical of those of the Settlement Class. Plaintiff alleges that it purchased Braskem's ADRs at prices that were artificially inflated by Defendants' false and misleading statements, and they were harmed when the truth emerged and the artificial inflation dissipated. Plaintiff's claims stand or fall with those of the Settlement Class. Thus, they are typical.

14

**D.    Adequacy**

The adequacy requirement has traditionally entailed a two-pronged inquiry: the plaintiff's interests must be sufficiently aligned with the interests of the absentee class members and the plaintiff's counsel must be qualified to represent the class. *Gen. Motors*, 55 F.3d at 800. Both prongs of the adequacy requirement are satisfied here.

### 1.    Adequacy of the Proposed Class Representative

A proposed class representative is "adequate" if their interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998); *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *5 (D.N.J. June 28, 2018). Plaintiff, who is the proposed class representative, has no interests that are antagonistic to those of the proposed Settlement Class, and it is subject to no unique defenses. Plaintiff has remained engaged throughout the litigation and settlement process, communicating regularly with counsel, and has dutifully represented the Settlement Class. Accordingly, Plaintiff is an adequate Class Representative.

### 2.    Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to independently assess the adequacy of proposed class counsel. Fed. R. Civ. P. 23(g). To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Shapiro*, 2018 WL 3158812, at *5.

Lead Counsel, Bernstein Liebhard and Wolf Haldenstein, have extensive experience prosecuting class actions and have successfully prosecuted securities class actions in courts

15

throughout the country, including many in the District of New Jersey. *See* Dkt. No. 15-6 (Bernstein Liebhard firm résumé); Dkt. No. 13-6 (Wolf Haldenstein firm résumé).

The Settlement was reached only after Lead Counsel conducted a comprehensive investigation that resulted in the filing of the detailed amended complaint. During the course of the investigation, Lead Counsel worked with a private investigator to identify and interview witnesses, and engaged an economics expert to assess the range of damages under different scenarios. Lead Counsel also thoroughly reviewed Defendants' public filings, conference calls and announcements made by Defendants, documents from Brazilian governmental agencies, Defendants' wire and press releases, analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Even after settlement discussions commenced, an agreement was not reached until over four months of hard-fought and frank negotiations. Lead Counsel drew on their extensive experience litigating similar types of securities class actions to evaluate the strengths and weaknesses of the claims at issue and assess the value of the Settlement. Accordingly, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### E. Predominance and Superiority

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Here, Plaintiff seeks to certify a class under Rule 23(b)(3). *Id.* To certify a class under Rule 23(b)(3), the Court must find that: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Plaintiff satisfies both the predominance and superiority criteria of Rule 23(b)(3).

"The focus of the predominance inquiry is on liability, not damages." *Smith,* 2007 WL 1217980, at *9 (citing cases); *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 200–01 (D.N.J.

16

2014) (the amount of damages may vary among the class members, but these calculations are "straightforward").

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Fed. R. Civ. P. 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd,* 84 F. App'x 257 (3d Cir. 2004) ("The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification[.]"). Here, common questions predominate in that Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members. Additionally, damages will be calculated on a class-wide basis. Thus, as in many securities fraud class actions, the predominance requirement is "readily met." *Amchem Products, Inc.*, 521 U.S. at 625.

Factors relevant to a finding of superiority include:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D)    the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. There are presumably hundreds, if not thousands, of investors in Braskem's ADRs located within the U.S.. Plaintiff foresees no difficulties in managing this Settlement Class for the purposes of settlement.

Class actions are vastly superior to individual actions with respect to securities fraud claims. Without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the Plaintiff would have no realistic day in court if a class action were not available"); *Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of ... groups of people whose individual claims would be too small to warrant litigation."). Moreover, "class actions are favored in the securities litigation context because they are necessary to meaningfully enforce the securities laws." *Smith*, 2007 WL 1217980, at *20.

Thus, a class action is the superior method of adjudication. Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). The Court should preliminarily determine that class treatment is appropriate to permit notice to the Settlement Class.

## V.    THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a claim; (e) a description

of the Plan; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information to examine Court records. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in a "street name." The proposed Notice closely tracks a model notice published by the Federal Judicial Center.[6]

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Judgment. Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7).

The proposed Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by mailing the Postcard Notice by first class mail to Settlement Class Members who can be identified with reasonable effort. Also, after the Preliminary Approval Order is entered, the Stipulation and its exhibits, the Preliminary Approval Order, and the Long Notice and Claim Form will be posted on the Claims Administrator's

---

[6] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*, available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf (last accessed: Sept. 15, 2022).

website. Additionally, Summary Notice will be published electronically once over a national newswire.

The proposed Notice and Notice Plan are thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website); *Allen v. PixarBio Corp., et al.*, Case No. 2:17-cv- 00496 (D.N.J. 2019) (Cecchi, J.) (Dkt. No. 135) (same); *Pepe v. Cocrystal Pharma, Inc., et al.*, Case No. 2:18-cv-14901 (D.N.J. 2021) (Dkt. No. 76) (same); *Hull v. Glob. Dig. Sols., Inc., et al.*, Case No. 3:16-cv-05153 (D.N.J. 2019) (Dkt. No. 65) (same).

The form and manner of providing Notice to the Settlement Class Members here satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice "provide[s] all of the required information concerning the class members' right[s] and obligations under the settlement." *Prudential Ins.*, 148 F.3d at 328.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiff proposes the following schedule of events leading to the Settlement Hearing as set forth in the proposed Preliminary Approval Order filed herewith:

20

| Event | Deadline for Compliance |
|---|---|
| Mailing Postcard Notice; Creating website with Stipulation, Long Notice, and Claim Form | No later than 21 calendar days after the entry of the Preliminary Approval Order (¶8a) |
| Publication of the Summary Notice | No later than 21 calendar days after entry of the Preliminary Approval Order    (¶8b) |
| Date for Plaintiff to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 28 calendar days prior to the Settlement Hearing. (¶10) |
| Submission deadline for requests for exclusion | No later than 30 calendar days prior to the Settlement Hearing (¶20) |
| Submission deadline for objections | No later than 14 calendar days prior to the Settlement Hearing (¶14) |
| Submission deadline for Claim Forms | No later than 14 calendar days prior to the Settlement Hearing (¶18) |
| Date for Plaintiff to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | 7 calendar days prior to the Settlement Hearing (¶13) |
| Dated for the Settlement Fairness Hearing | No earlier than 100 days after entry of the Preliminary Approval Order |

The Court should schedule the Settlement Fairness Hearing for a date that is approximately 100 calendar days after entering the Preliminary Approval Order, which will allow enough time for Lead Counsel to: (i) email the Summary Notice and/or mail the Postcard Notice; (ii) post the Stipulation, Preliminary Approval Order, Notice and Claim Form on the Claims Administrator's website; (iii) publish the Summary Notice; (iv) file a motion in support of final approval of the Settlement and the Plan; (v) file a motion for attorneys' fees, reimbursement of expenses, and a reimbursement award to Plaintiff; and (vi) file a reply in support of final approval. Additionally, holding the Settlement Hearing at least 120 days after entry of the Preliminary Approval Order will allow Settlement Class Members enough time to submit their Claim Forms, exclude themselves, or submit objections to the Settlement.

## VII.   CONCLUSION

The Court need not determine at this stage whether the Settlement is fair, reasonable, and adequate, or whether class treatment is appropriate. Those determinations are for the final approval hearing. Rather, this motion asks the Court to commence the settlement process.

This Settlement is a good result after extensive arm's length negotiation. Given the considerable risks of lesser or no recovery for Settlement Class Members if the litigation were to continue, the Settlement is a fair, reasonable, and adequate result. The Court should grant preliminary approval. The Court should also make a preliminary determination that class treatment is appropriate for the Action, approve the form and manner of notice, and set a date for the Settlement Fairness Hearing.

Dated: December 20, 2022                     Respectfully submitted,

                                             **SCHNADER HARRISON**
                                             **SEGAL & LEWIS, LLP**
                                             By: /s/ Lisa J. Rodriguez

                                             _____/s/ Lisa J. Rodriguez_____
                                             Lisa J. Rodriguez
                                             Woodland Falls Corporate Park
                                             220 Lake Drive East, Suite 200
                                             Telephone: (856) 482-5222
                                             Email: lrodriguez@schnader.com

                                             *Local Counsel for Plaintiff and the*
                                             *Proposed Class*

                                             **BERNSTEIN LIEBHARD LLP**
                                             Michael S. Bigin (pro hac vice)
                                             Joseph R. Seidman, Jr.
                                             10 East 40th Street
                                             New York, New York 10016
                                             Tel.: (212) 779-1414
                                             Fax: (212) 779-3218

22

bigin@bernlieb.com
seidman@bernlieb.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Matthew M. Guiney (pro hac vice)
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com

*Co-Lead Counsel for Plaintiff and the
Proposed Class*

23

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Lisa J. Rodriguez

00716129:V1