# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MATSUKAWA CO., LLC (n/k/a MATSUKAWA CO., LTD), individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>BRASKEM S.A., ROBERTO LOPES PONTES SIMÕES, FERNANDO MUSA, and PEDRO VAN LANGENDONCK TEIXEIRA DE FREITAS,<br><br>   Defendants. | Case No. 2:20-cv-11366-CCC-ESK<br><br>Hon. Claire C. Cecchi, U.S.D.J.<br>Hon. Edward S. Kiel, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF EXPENSES, AND
<u>REIMBURSEMENT OF TIME FOR LEAD PLAINTIFF</u>**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

I.    LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND
      EXPENSES IS REASONABLE ............................................................... 3

      A.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF
            ATTORNEYS' FEES AND EXPENSES FROM THE COMMON
            FUND THEY OBTAINED ............................................................. 3

      B.    LEAD COUNSEL'S FEES SHOULD BE BASED UPON A
            PERCENTAGE OF THE COMMON FUND ................................... 5

      C.    CONSIDERATION OF THE THIRD CIRCUIT'S *GUNTER*
            FACTORS CONFIRMS THE REASONABLENESS OF THE
            REQUESTED FEE ....................................................................... 6

            1.    The Settlement is a Very Good Result and Confers an
                  Immediate Benefit Upon the Class ........................................ 7

            2.    Lead Counsel Prosecuted this Action with Skill and Efficiency
                  10

            3.    The Complexity, Expense, and Likely Duration of Litigation
                  Weigh in Favor of the Fee Request ....................................... 11

            4.    Lead Counsel Undertook the Risk of Non-Payment ................ 14

            5.    Lead Counsel Spent Significant Time Investigating and
                  Litigating the Case .............................................................. 16

            6.    The Requested Fee Is Consistent With Awards in
                  Similar Cases ...................................................................... 18

            7.    The *Prudential* Factors ....................................................... 20

      D.    LEAD COUNSEL'S ATTORNEYS' FEES WERE AGREED
            UPON BY LEAD PLAINTIFF AT THE OUTSET OF THE
            LITIGATION ............................................................................. 21

      E.    A LODESTAR CROSS-CHECK CONFIRMS THAT THE FEE
            REQUEST IS REASONABLE ...................................................... 22

F.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY FOR THE PROSECUTION OF THIS ACTION .................................................................25

G.    LEAD PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF HIS TIME SPENT REPRESENTING THE CLASS UNDER 15 U.S.C. § 78U-4(A)(4).......................................................27

CONCLUSION .................................................................................28

# TABLE OF AUTHORITIES

**CASES**                                                                           **Page(s)**

*In re Aetna Inc.*,
   No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................22

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
   No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ....................................9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) .........................................................................................4

*Andavarapu v. iBio, Inc. et al.*,
   No. 14-cv-1434-RGA, slip op. (D. Del. Apr. 21, 2016) .......................................28

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   No. 07-md-01871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012) ...........................4

*In re AT&T Corp.* ("*AT&T Corp.*"),
   455 F.3d 160 (3d Cir. 2006) ....................................................................*passim*

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) .........................................................................................4

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................25

*Bodnar v. Bank of Am., N.A.*,
   No. 14-3224, 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ............................19, 24

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ......................................................................................3, 4

*Blum v. Stenson*,
   465 U.S. 886 (1984) ....................................................................................5, 20

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) ..............................................................15

*In re Cendant Corp., Derivative Action Litig.*,
    232 F. Supp. 2d 327 (D.N.J. 2002) ..........................................................26

*In re Cendant Corp. Litig.*,
    404 F.3d 173 (3d Cir. 2005)............................................................6, 22

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000),
    *aff'd*, 264 F.3d 201 (3d Cir. 2001)................................................9, 21

*In re Citigroup Inc. Sec. Litig.*,
    No. 09 Civ. 7359 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ..............9

*In re Corel Corp. Inc. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ..................................................11

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............11, 12

*In re Diet Drugs*,
    582 F.3d 524 (3d Cir. 2009)........................................................ 3-4, 5

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
    *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016)............ 17-18

*Fein v. Ditech Fin., LLC*,
    No. 5:16-cv-00660, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017) ......................19

*Fernandez v. Knight Cap. Grp., Inc.*,
    No. 12-cv-06760 (MCA) (LDW),
    2015 WL 13901241 (D.N.J. July 6, 2015)....................................................19, 28

*In re Gen. Motors Corp. Pick-Up Truck Fuel*
*Tank Prod. Liab. Litig. ("GMC Trucks")*,
    55 F.3d 768 (3d Cir. 1995)..............................................................12

*In re Genta Securities Litigation*,
    No. CIV.A. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008).............12

iv

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)..............................................................................*passim*

*Hall v. AT&T Mobility LLC*,
  No. CIV.A. 07-5325 (JLL),
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ...............................................10, 11, 26

*In re Hemispherx Biopharma, Inc. Sec. Litigation*,
  CA No. 09-5262, 2011 WL 13380384 (E.D. Pa. Feb. 14, 2011) .........................24

*Hensley v Eckerhart*,
  461 U.S. 424 (1983).............................................................................................7

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......... 13-14

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)..................................................................6, 14, 20

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
  2022 U.S. Dist. LEXIS 196845 (E.D. Pa. Oct. 28, 2022) ...................................18

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999). .............9

*In re Linerboard Antitrust Litig.*,
  No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004),
  *order amended by*, 2004 WL 1240775 (E.D. Pa. June 4, 2004)...........................10

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air*,
  No. 03-CV-04372 (DMC) 2009 WL 4730185 (D.N.J. Dec. 4, 2009)..................15

*Katz v. China Century Dragon Media, Inc.*,
  No. LA CV11-02769 JAK (SSx), 2013 WL 11237202
  (C.D. Cal. Oct. 10, 2013) ....................................................................................26

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................25

*Meijer, Inc. v. 3M*,
   No. CIV.A. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ....................24

*In re Merck & Co. Vytorin ERISA Litig.*,
   No. 08-CV-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) .................15, 19

*Milliron v. T-Mobile USA, Inc.*,
   No. CIV.A. 08-4149 (JLL), 2009 WL 3345762
   (D.N.J. Sept. 14, 2009), a*ff'd,* 423 F. App'x 131 (3d Cir. 2011) .........................19

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ..............................................................................................23

*Neuberger v. Shapiro*,
   110 F. Supp. 2d 373 (E.D. Pa. 2000) ....................................................................14

*In re Ocean Power Techs., Inc. Sec. Litig.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...........................7

*In re Par Pharm. Sec. Litig.*,
   No. CIV.A. 06-3226 (ES),
   2013 WL 3930091 (D.N.J. July 29, 2013) ................................................4, 12, 28

*In re Processed Egg Prod. Antitrust Litig.*,
   No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ............................20

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
   148 F.3d 283 (3d Cir. 1998).............................................................................*passim*

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
   C.A. No. 11-cv-2164,
   2017 U.S. Dist. LEXIS 97909 (D.N.J. June 26, 2017).........................................19

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005)...............19

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005)................5, 22, 23

vi

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No. CIV.A. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec. 9, 2008) .................21

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. CIV.A. 08-1432 (DMC)(JAD), 2012 WL 1964451 (D.N.J. 2012) ... 14-15, 19

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
No. CIV.A. 08-397 (DMC)(JAD), 2013 WL 5505744 (D.N.J. 2013) ...........27, 28

*Schuler v. Medicines Co.*,
No. CV 14-1149 (CCC),
2016 WL 3457218 (D.N.J. June 24, 2016) ...................................................*passim*

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-CV-06728-CM-SDA,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................23

*Steele v. Welch*,
2005 U.S. Dist. LEXIS 16577 (E.D. Pa. May 20, 2005) .....................................18

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011).....................................................................5, 22, 23

*In re Suprema Specialties, Inc. Sec. Litig.*,
No. 02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ..........................15

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
699 F. App'x 8 (2d Cir. 2017) ............................................................................23

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
No. CIV.A. 19-1227, 2022 WL 118104 (E.D. Pa. Jan. 12, 2022)........................28

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. 2020),
*Report and Recommendation adopted by* No. CIV.A. 15-7658
(MAS) (LHG), 2021 WL 358611 (D.N.J. 2021), *aff'd in part,*
*appeal dismissed in part sub nom. TIAA v. Valeant Pharm. Int'l, Inc.*,
No. 21-1218, 2021 WL 6881210 (3d Cir. 2021) ....................................12, 15, 21

*Vataj v. Johnson*,
No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021).................9

*In re ViroPharma Inc. Sec. Litig.*,
No. CIV.A. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016).........................8

*In re Wilmington Trust Sec. Litig.,*
No. 10-cv-0990-ER, 2018 WL 6046452 (D. Del. Nov. 19, 2018).......................24

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) .......7, 24

## STATUTES & RULES

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
15 U.S.C. § 78u-4(a), *et seq.*............................................................................*passim*
15 U.S.C. § 78u-4(a)(6) .................................................................................6

Lead Plaintiff Matsukawa Co. Ltd. ("Lead Plaintiff") on behalf of the Class, respectfully submits this memorandum in support of its application for: (i) an award to Co-Lead Counsel Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and Bernstein Liebhard LLP ("Bernstein Liebhard") (on behalf of all Plaintiffs' Counsel) of attorneys' fees of one-third of the Settlement Fund, or $1,000,000; (ii) reimbursement of litigation expenses in the amount of $39,434.36; and (iii) reimbursement of $5,000 to the Lead Plaintiff for the time it spent representing the Class, pursuant to the PSLRA, 15 U.S.C. Section 78u-4(a)(4).[1]

## INTRODUCTION

The Settlement, which has been preliminarily approved by the Court, provides a recovery of $3,000,000 in cash to resolve all claims in the Action.[2]  This is a very good result for the Class, particularly in light of the substantial risks and expenses of continued litigation as detailed in the Final Approval Brief (defined below), including the risk of recovering a smaller amount – or nothing at all – after potentially years of costly and protracted litigation.  Lead Counsel and additional

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated December 15, 2022 (the "Stipulation") (ECF No. 59-2, Ex. A).

[2] The Settling Parties agreed that Magistrate Judge Edward S. Kiel would have jurisdiction over Lead Plaintiff's motion for preliminary approval, as well as the instant motion for final approval.  *See* ECF Nos. 62, 65.  References to the "Court" below include Magistrate Judge Kiel.

Plaintiffs' Counsel litigated this Action on a fully contingent basis and have not received any compensation for their prosecution of the case or reimbursement of their expenses since inception.

As discussed herein, and in the Declaration of Matthew M. Guiney in Support of (I) Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Class; and (II) Motion for Attorneys' Fees and Expenses and Reimbursement of Time for Lead Plaintiff (the "Guiney Decl."), filed concurrently with this motion, it is respectfully submitted that Lead Counsel's requested fee award of one-third of the Settlement Fund is fair, reasonable, and appropriate.  The requested fee award represents a negative lodestar multiplier of 0.97 based on Plaintiffs' Counsel's lodestar and is well within the range of attorney fee awards routinely granted by courts in this Circuit.[3]

The requested expenses are also reasonable and were necessarily incurred for the successful prosecution of the Action.  Such expenses included fees for a damage expert, an investigator, translators, legal research, and court filings.

Finally, Lead Plaintiff's request to be reimbursed for the time it spent representing the Class is also reasonable and justified, and similar reimbursements are routinely made to lead plaintiffs in these types of cases.  *See* Guiney Decl. ¶ 78.

---

[3] Lead Counsel will allocate fees among other Plaintiffs' Counsel.

2

Accordingly, and for the reasons set forth herein, Lead Plaintiff, through its representative, Carlo Gemignani, respectfully requests that the Court approve the motion for attorneys' fees and reimbursement of expenses, and for a reimbursement for the time it spent successfully litigating this case.[4]

## ARGUMENT

### I.    LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

#### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund They Obtained

The Supreme Court and the Third Circuit have long recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund.[5]  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees'") (quoting *In re Diet Drugs*,

---

[4] A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Guiney Declaration and in Lead Plaintiff's Motion in Support of Final Approval of Settlement, Plan of Allocation and Certification of Class ("Final Approval Brief").

[5] Throughout this memorandum, emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

582 F.3d 524, 540 (3d Cir. 2009)); *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29, 2013).  The common fund doctrine is also designed to prevent unjust enrichment of class members who benefit from a lawsuit without paying for its costs.  *See Boeing Co.*, 444 U.S. at 478; *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-md-01871, 2012 WL 6923367, at *2 (E.D. Pa. Oct. 19, 2012).

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions[.]" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013). Thus, public policy favors granting fees to counsel in securities class actions sufficient to reward them for bringing these actions and to encourage them to keep doing so.  *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'").

Courts have also recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See*

4

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation").

Here, Lead Counsel obtained a $3 million common fund for the Class. Paying Lead Counsel's fees from that fund properly compensates counsel for bringing and pursuing the claims in this case and furthers the purpose of the securities laws.

**B.      Lead Counsel's Fees Should be Based Upon a Percentage of the Common Fund**

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . .a reasonable fee is based on a percentage of the fund bestowed on the class"). The Third Circuit also favors use of the percentage-of-recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005); *In re Diet Drugs*, 582 F.3d at 540 (percentage of recovery method "generally favored").

The percentage of recovery method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered

5

for the class.  15 U.S.C. § 78u-4(a)(6); *see also In re Cendant Corp. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable").

Finally, the alternative – the lodestar method – encourages attorneys to delay settlement and can waste a court's time in requiring the review of thousands of billing records.  *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 193 (E.D. Pa. 2000).  Accordingly, this Court should use the percentage of recovery method in determining attorneys' fees here.

### C.    Consideration of the Third Circuit's *Gunter* Factors Confirms the Reasonableness of the Requested Fee

In *Gunter*, the Third Circuit set forth seven factors that courts should consider in determining an appropriate fee award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998).

In *Prudential*, the Third Circuit identified three additional factors to consider: "(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies

6

conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement." *In re AT&T Corp.* ("*AT&T Corp.*"), 455 F.3d 160, 165 (3d Cir. 2006) (citing *Prudential*, 148 F.3d at 338-39).

These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1; *see also In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *26 (D.N.J. Nov. 15, 2016) ("The Court may give some of these factors less weight in evaluating a fee award"). As discussed below, consideration of the *Gunter* and *Prudential* factors demonstrates that Lead Counsel's requested fee is both justified and reasonable.

### 1.    The Settlement is a Very Good Result and Confers an Immediate Benefit Upon the Class

In evaluating the first *Gunter* factor, courts "consider the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *20 (D.N.J. Nov. 10, 2016) (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 (RMB/AMD), 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)). Indeed, the result achieved is one of the primary factors to be considered in assessing the propriety of an attorney fee award. *See Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of

success obtained"); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

The $3 million Settlement is approximately 16% of the $17.7 million in maximum damages potentially available in this case. *See* Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Settlement, Plan of Allocation and Certification of Class ("Settlement Memorandum") at 1. The Settlement is reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median settlement in a securities class action from 2018 to 2022 had a 3.8% damages recovery rate damages in cases analogous to this one, i.e., with under $25 million in damages and a pending motion to dismiss. Here, the $3 million Settlement comprises approximately 16% of the $17.7 million in maximum damages potentially available in this case. *See* Guiney Decl., Ex. H, p. 14 (Laarni T. Bulan & Laura E. Simons, *Securities Class Action Settlements – 2022 Review and Analysis*, Cornerstone Research).

The Settlement is within the range of approved recoveries in many other securities class action settlements, including in courts in this District and Circuit. *See*, *e.g.*, *Schuler*, 2016 WL 3457218, at *8 (approving $4.25 million settlement reflecting approximately 4.0% of the estimated recoverable damages; noting

8

percentage "falls squarely within the range of previous settlement approvals"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving $16.7 million settlement representing 2.5% of damages); *AT&T Corp.*, 455 F.3d at 169-70 (affirming settlement for 4% of total damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"), *aff'd*, 166 F.3d 581 (3d Cir. 1999); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses).[6]

The Settlement will also immediately benefit a large number of investors. To date, the Claims Administrator has mailed 5,043 Individual Notices to potential Class Members and their nominees. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.")

---

[6] *See also Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (granting final approval of $10 million settlement representing slightly more than 2% of estimated damages and stating, "2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements"); *In re Citigroup Inc. Sec. Litig.*, No. MD 2070(SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (granting final approval of $8.5 million settlement representing 2% of damages).

¶ 6 (Guiney Decl. Exhibit G).  Accordingly, a large number of Class Members will benefit from the Settlement.  *See, e.g.*, *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]"), *order amended by* No. MDL NO. 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

Accordingly, the immediate benefit and the reasonableness of the $3,000,000 Settlement supports the requested fee.

### 2.    Lead Counsel Prosecuted this Action with Skill and Efficiency

The skill and efficiency factor under *Gunter* also weighs in favor of the requested award.  Lead Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."  *Hall v. AT&T Mobility LLC*, No. CIV.A. 07-5325 (JLL), 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

Lead Counsel achieved a very good result, particularly in light of the significant obstacles attendant on further litigation, which are detailed in the Settlement Memorandum.  *See id.* at 12-18.  In addition, Lead Counsel have decades of experience in litigating securities class actions (*see* firm resumes attached to the

10

Guiney Decl., Exs. B & C-C), and they prosecuted this case efficiently and professionally.

Finally, "[t]he quality of opposing counsel is also important in evaluating the quality of counsel's work." *Hall*, 2010 WL 4053547, at *19; *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007). Defendants were represented by the law firm of Covington & Burling LLP, which presented very skilled defenses and spared no effort in representing their clients vigorously. Guiney Decl. ¶ 41, 73. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate their willingness to continue to aggressively litigate this Action through discovery, summary judgment, trial and inevitable appeals enabled Lead Counsel to achieve the Settlement for the benefit of the Class. That Lead Counsel achieved this Settlement for the Class "in the face of formidable legal opposition further evidences the quality of their work." *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003).

Accordingly, the high quality of Lead Counsel's representation of the Class in this complex and risky case further supports the requested fee.

### 3. The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of the Fee Request

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation" and also favors Lead Counsel's requested

11

fee. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (quoting *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 801 (3d Cir. 1974)). This *Gunter* factor also assesses "the complexity, expense, and likely duration of the litigation." *See AT&T Corp.*, 455 F.3d at 164-65.

Securities litigation is regularly acknowledged to be particularly complex and expensive, usually requiring expert testimony on, at the very least, questions of damages and loss causation. *See, e.g.*, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *15 (D.N.J. 2020), (approving counsel's fee request and noting that "[s]ecurities litigation is tough stuff"), *Report and Recommendation adopted by* No. CIV.A. 15-7658 (MAS) (LHG), 2021 WL 358611 (D.N.J. 2021), *aff'd in part, appeal dismissed in part sub nom. TIAA v. Valeant Pharm. Int'l, Inc.*, No. 21-1218, 2021 WL 6881210 (3d Cir. 2021); *In re Par Pharm.*, 2013 WL 3930091, at *4 ("Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate"); *In re Genta Sec. Litig.*, No. CIV.A. 04-2123 (JAG), 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive"); *Datatec*, 2007 WL 4225828, at *3 ("resolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis .... Trial on [scienter and loss

12

causation] issues would be lengthy and costly to the parties"). This case was no different.

In the absence of the Settlement, this Action would have necessitated complex, expensive, and lengthy litigation involving experts. Defendants would have continued to defend this litigation vigorously, as demonstrated by their motion to dismiss. If Lead Plaintiff survived Defendants' motion to dismiss,[7] Defendants would have inevitably opposed Lead Plaintiff's anticipated motion for class certification, filed motions for summary judgment, and ultimately appealed any judgment in Lead Plaintiff's favor. The Settling Parties also likely would have engaged in lengthy and costly expert discovery, involving expert reports, depositions, and motions to disqualify expert witnesses through complex *Daubert* motions.

This Court and the jury at trial would have had to weigh evidence pertaining to complex factual and legal issues, as well as weigh difficult issues in a battle of experts, all of which demonstrate that this case had real risks and that the Settlement is commendable. *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM,

---

[7] Notably, between 2013 and 2022, almost 61% of securities class actions were dismissed at the pleading stage and another 19% of securities class actions were at least partially dismissal. *See* Guiney Decl., Ex. I at 11 (Janeen McIntosh, Svetlana Starkyh & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Economic Consulting).

2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014) ("Over the last five years, nearly 48% of all securities class actions have been dismissed on motions prior to trial, while plaintiffs who succeeded at trial have found their judgments overturned on post-trial motions or appeal"); *see also Prudential*, 148 F.3d at 318 ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement"); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) (difficulty of presenting issues involving extensive expert testimony at trial weighs in favor of settlement); *Ikon*, 194 F.R.D. at 179 (same).

Considering the magnitude, expense, and complexity of these actions, Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in favor of the requested fee.

### 4. Lead Counsel Undertook the Risk of Non-Payment

Lead Counsel undertook this litigation on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute a risky action with no guarantee of compensation for the substantial investment of time and money the case would require, or even the recovery of expenses. Guiney Decl., ¶¶ 10, 62. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *In re Schering-*

14

*Plough Corp. Enhance ERISA Litig.*, No. CIV.A. 08-1432 (DMC)(JAD), 2012 WL 1964451, at *7 (D.N.J. 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval"); *In re Merck & Co., Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air*, No. 03-CV-04372 (DMC) 2009 WL 4730185, at *8 (same) (D.N.J. Dec. 4, 2009); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same).

The risk of non-payment is especially high in securities class actions, as they are "notably difficult and notoriously uncertain." *See Valeant Pharm.*, 2020 WL 3166456, at *13 (risk of non-payment supported fee request and "recovery was uncertain due to the difficulty of prevailing in securities cases generally"). Indeed, legal precedents are continually making it more difficult to plead securities class actions. *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading").

15

Lead Counsel has not been compensated for any time or expenses since it started litigating the case. Lead Counsel would have received no compensation or payment of its expenses had Lead Counsel not resolved the case successfully. Guiney Decl. ¶ 76. Nevertheless, Lead Counsel ensured from the outset that sufficient resources were dedicated to the Action and that funds were available to compensate staff and cover any necessary expenses. With an average time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than on defense firms that are paid on an ongoing basis. In addition to advancing all costs and litigation expenses, Lead Counsel faced the possibility that they would receive no attorneys' fees at all. Indeed, it is possible that, if not for this Settlement, the entire case would have been dismissed in response to Defendants' motion to dismiss. In light of the difficulty of undertaking such a lawsuit, Lead Counsel should be reimbursed for its time and expenses. *Id.*

Accordingly, undertaking the risk of non-payment supports Lead Counsel's fee and expense request.

### 5. Lead Counsel Spent Significant Time Investigating and Litigating the Case

The sixth *Gunter* factor looks at counsel's time devoted to the litigation. *Gunter*, 223 F.3d at 199. Lead Counsel expended substantial time and effort pursuing the Action on behalf of the Class. Since the Action commenced, Lead Counsel has devoted 1,379.3 hours to prosecuting the Class' claims. *See* Guiney

16

Decl., ¶ 65.  As detailed in the Guiney Declaration (¶ 6), Lead Counsel, among other things:

- Conducted a comprehensive investigation into the allegedly wrongful acts, which included a review and analysis of Braskem's filings with the SEC, public reports and news articles concerning Braskem, transcripts of Braskem's investor calls;

- Filed a motion for lead plaintiff on behalf of their client Matsukawa Co. Ltd.;

- Researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted the Amended Class Action Complaint (the "Amended Complaint") based on their extensive investigation, which included a lawyer fluent in Portuguese analyzing extensive Brazilian transcripts of hearings concerning Braskem in Brazil;

- Opposed Defendants' motion to dismiss the Amended Complaint;

- Negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement; and

- Engaged and consulted with a damages consultant and prepared the proposed Plan of Allocation based on an analysis estimating the amount of artificial inflation in the price of Braskem ADS during the Class Period.

Throughout the litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Guiney Decl. ¶ 65.  Additional hours and resources will necessarily be expended assisting Class Members with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries.  No additional compensation will be sought for this work.  *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9,

17

2015) ("Considering that the work in this matter is not yet concluded for Lead Counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable"), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016).

In sum, Lead Counsel devoted a significant amount of time and effort to obtain the $3 million recovery here, which further shows the fee and expense request is reasonable.

### 6. The Requested Fee Is Consistent With Awards in Similar Cases

The requested 33 1/3% fee is also well within the range of fees that have been granted in comparable securities class actions in the Third Circuit. *See*, *e.g.*, *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 U.S. Dist. LEXIS 196845, at *24-25 (E.D. Pa. Oct. 28, 2022) (one-third attorney's fee on $2.755 million Settlement Fund is reasonable); *Steele v. Welch*, 2005 U.S. Dist. LEXIS 16577, at *5 (E.D. Pa. May 20, 2005) (fee of 33% on $1.75 million settlement is reasonable); *Schuler v. Meds. Co.*, No. 14-ev-1149, 2016 U.S. Dist. LEXIS 82344, 2016 WL 3457218, at *10 (D.N.J. June 24, 2016) (approving a 33% award for attorneys' fee of $4.25 million common fund and the case settled at motion to dismiss stage); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 U.S. Dist. LEXIS

18

97909, at *40 (one-third fee on $4.5 million settlement fund is reasonable); *Fernandez v. Knight Cap. Grp., Inc.*, No. 12-cv-06760 (MCA) (LDW), 2015 WL 13901241, at *3 (July 6, 2015) (33% fee on $14 million settlement); *In re Merck*, 2010 WL 547613, at *11 ("review of 289 settlements demonstrates 'average attorney's fees percentage [of] 31.71% with a median value that turns out to be one-third'"). *See also Schuler*, 2016 WL 3457218, at *8 (awarding one-third of settlement as fees in case that settled before decision on motion to dismiss); *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *12 (E.D. Pa. Sept. 27, 2017); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 WL 4582084, at *5-6 (E.D. Pa. Aug. 4, 2016) (approving 33% fee where counsel was able to negotiate the settlement "at the early stages" of the litigation); *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A.00-CV-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (collecting cases); *Milliron v. T-Mobile USA, Inc.*, No. CIV.A. 08-4149 (JLL), 2009 WL 3345762, at *8, 24 (D.N.J. Sept. 14, 2009) (awarding 33.3% of $13.5 million settlement), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (citing *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-CV-0085 (FSH), 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005)), *judgment entered*, No. 03-CV-0085 (FSH), 2005 WL 8181042 (D.N.J. Nov. 9, 2005); *In re Schering-Plough*, 2012 WL 1964451, at *6-7 (awarding 33.3% of $12.25 million settlement).

19

Accordingly, the fee requested by Lead Counsel is consistent with fees in similar cases and should be approved.

### 7.     The *Prudential* Factors

The applicable *Prudential* Factors also weigh in favor of the requested fee. Analysis of the second *Prudential* factor supports the reasonableness of the requested fee because it is consistent with typical fee awards in non-class cases. Indeed, if this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery.  *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery"); *Schuler*, 2016 WL 3457218, at *10.  Lead Counsel's fee of one-third of the Settlement Fund comports with these private standards, which further supports their fee request.

The Third Circuit also asks district courts to consider whether the settlement contains "any innovative terms." *Prudential*, 148 F.3d at 339.  This Settlement does not have any innovative terms because Lead Counsel believes the all-cash recovery Lead Counsel secured for the Class is the best remedy for the injury suffered by the Class.  In such circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

20

### D.    Lead Counsel's Attorneys' Fees Were Agreed Upon By Lead Plaintiff At the Outset of the Litigation

Before retaining Lead Counsel's services at the very outset of the Action, Lead Plaintiff entered into a retainer agreement with Lead Counsel that stated that Lead Counsel would apply for a fee of up to 33 1/3% of the recovery, subject to court approval. *See* Declaration of Lead Plaintiff Matsukawa Co., LLC in Support of Motion for Final Approval of the Settlement, an Award of Attorneys' Fees and Litigation Expenses, and Reimbursement of Time for Lead Plaintiff ("Matsukawa Decl.") ¶ 14 (Guiney Decl. Ex. F). Such a fee agreed upon by a lead plaintiff at the outset of litigation is presumptively reasonable. *Valeant Pharm.*, 2020 WL 3166456, at *11; *Cendant*, 264 F.3d at 282 ("under the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel"); *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 (JAP), 2008 WL 9447623, at *24 (D.N.J. Dec. 9, 2008) (presumption of fairness when lead plaintiff approves fee consistent with fee agreement with lead counsel). As discussed in its declaration, Lead Plaintiff approved of and supports Lead Counsel's request for one-third of the Settlement Fund. *See* Matsukawa Decl. ¶ 14 (Guiney Decl. Ex. F).

Accordingly, Lead Plaintiff's agreement to the requested fee at the outset of this case further supports the fee request.

21

**E.     A Lodestar Cross-Check Confirms That the Fee Request Is Reasonable**

A lodestar cross-check is a tool to "ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Cendant*, 404 F.3d at 188. The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable, and to avoid a "windfall" to counsel. *See Sullivan*, 667 F.3d. at 330; *AT&T Corp.*, 455 F.3d at 164. The requested fee award here is reasonable and in line with fee requests approved in this Circuit.

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Rite Aid*, 396 F.3d at 305. "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work," *id.* at 305–06, and "to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *In re Aetna Inc.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001). To perform the cross-check, district courts must divide the proposed fee award by the lodestar calculation, which will yield a lodestar multiplier. *AT&T Corp.*, 455 F.3d at 169 n.6. This calculation "need not entail

22

neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306–07 (footnote omitted).  While the Third Circuit recommends that the percentage award be "cross-checked" against the lodestar method to ensure its reasonableness, *Sullivan*, 667 F.3d at 330, "[t]he lodestar cross-check…should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T Corp.*, 455 F.3d at 164.

Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable.  Plaintiffs' Counsel and their paraprofessionals have spent 1,413.5 hours prosecuting this case, with a total lodestar of $1,030,414.50. *See* Guiney Decl., Table A, ¶ 65.[8]  The amount of attorneys' fees requested by Lead Counsel – $1,000,000 – represents a negative multiplier of approximately 0.97 to Plaintiffs' Counsel's lodestar.[9]

---

[8] In determining whether Lead Counsel's rates are reasonable, the Court should consider the attorneys' professional reputation, experience, and status.  Plaintiffs' Counsel are experienced securities practitioners with a track record of success, and some of the most prominent securities practitioners in the country.  Plaintiffs' Counsel's hourly rates are reasonable in light of its track record and experience. *See, e.g.*, *In re Tremont Sec. Law, State Law & Ins. Litig.*, 699 F. App'x 8, 18 n.13 (2d Cir. 2017) (finding rates charged by Lead Counsel were reasonable "[g]iven the skill and experience required in this complex securities litigation").

[9] The Supreme Court and other courts have held that the use of current rates is proper to compensate for inflation and the loss of use of the funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *see also In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *16 n.3 (S.D.N.Y. July 21, 2020)

The requested 0.97 negative multiplier is well within the range of multipliers approved by courts in this Circuit.  *See In re Hemispherx Biopharma, Inc., Sec. Litig.*, CA No. 09-5262, 2011 WL 13380384, at *9 (E.D. Pa. Feb. 14, 2011) (Negative multiplier "compares favorably to settlements commonly approved where the lodestar multiplier is two or higher."); *In re Wilmington Trust Securities Litig.*, No. 10-cv-0990-ER, 2018 WL 6046452, at *10, n. 4 (D. Del. Nov. 19. 2018) (Negative multiplier in a "lodestar cross-check indicates fairness[.]"); Indeed, courts often approve multipliers of one to four in common fund cases.  *Bodnar*, 2016 WL 4582084, at *5-6 (4.69 multiplier "appropriate and reasonable"); *Prudential*, 148 F.3d at 341; *see also, e.g.*, *AT&T Corp.*, 455 F.3d at 173 ("we approved of a lodestar multiplier of 2.99 in *Cendant PRIDES,* in a case we stated 'was neither legally nor factually complex'" and that settled in 4 months); *Schuler*, 2016 WL 3457218, at *9-10 (multiplier of 3.57 resulting in fee award of 33 1/3% reasonable in case that settled, like this one, before decision on motion to dismiss); *Meijer, Inc. v. 3M*, No. CIV.A. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving lodestar multiplier of 4.77 resulting in fee award of 33.33% of settlement fund); *Yedlowski*, 2016 WL 6661336, at *18 (3.4 multiplier).

---

("The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest.").

Lead Counsel litigated this Action on a contingent-fee basis for over two years and obtained a favorable result for the Class without any certainty of payment. Lead Counsel should not be penalized for their efficiency in obtaining this result. Indeed, one of the main advantages of the percentage method is to reward early settlement. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (awarding fee of one-third of settlement fund amounting to a 6.3 multiplier because the fee award "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where [] the settlement amount is substantial"); *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 363–64, 373 (S.D.N.Y. 2002) (awarding 33.3% of $11.5 million settlement, reflecting a multiplier of 4.65, in a case that settled after one year of litigation, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system").

Accordingly, the lodestar cross-check further supports the reasonableness of the requested fee.

## F.    Lead Counsel's Expenses Were Reasonably Incurred and Necessary for the Prosecution of this Action

Lead Counsel respectfully requests reimbursement of $39,434.36 in expenses incurred by Plaintiffs' Counsel while prosecuting this Action. *See* Guiney Decl., ¶ 79. This figure is well below the $55,000 cap in the Notice. Lead Counsel incurred expenses on, among other things, a Brazilian investigator to research Braskem's Brazilian regulatory filings, a translator for certain important documents relating to

25

Braskem that were in Portuguese, electronic legal research fees relating to Lead Plaintiff's detailed opposition to Defendants' motion to dismiss, a damages consultant to calculate damages and develop the Plan of Allocation, translators, and filing fees, all of which are properly recoverable. *See* Guiney Decl. ¶ 68. "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002).

A complete breakdown by category of the expenses incurred is set forth in the exhibits to the Guiney Declaration. *See id.* at Exs. A, C-B, & D. These expenses were necessary for the successful prosecution and resolution of the Action on behalf of the Class and are of the type routinely charged to paying clients. *See Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d at 344 (consultants and computer-assisted research were valid expenses); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants"); *Katz v. China Century Dragon Media, Inc.*, No. LA CV11-02769 JAK (SSx), 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) (notice to class members and press releases). The categories of expenses for which counsel here seek payment are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

26

Accordingly, Lead Counsel respectfully submits that Plaintiffs' Counsel $39,434.36 in expenses were reasonably incurred and necessary to the prosecution of this action.

### G. Lead Plaintiff is Entitled to Reimbursement of Its Time Spent Representing the Class Under 15 U.S.C. § 78u-4(a)(4)

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Indeed, "the Third Circuit favors encouraging class representatives, by appropriate means, to create common funds and to enforce laws – including approving 'incentive awards' to class representatives." *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-397 (DMC)(JAD), 2013 WL 5505744, at *56 (D.N.J. 2013).

Carlo Gemignani, on behalf of Lead Plaintiff Matsukawa Co. Ltd., spent at least 20 hours litigating this case on behalf of the Class. Lead Plaintiff communicated regularly with Lead Counsel on issues and developments in the Action, reviewed the Amended Complaint, Defendants' motion to dismiss and Lead Plaintiff's opposition papers, consulted with Lead Counsel regarding the settlement negotiations and strategy, and ultimately approved the Settlement. Matsukawa Decl., ¶¶ 7-17 (Guiney Decl. Ex. F). As Mr. Gemignani's hourly rate is at least $250. Lead Plaintiff, thus, requests a payment in the amount of $5,000 to reimburse him for his time. *See id*. ¶ 17.

In this case, Lead Plaintiff was involved in the types of activities courts have found support reimbursement of time for those who achieved benefits for a class in a PSLRA case. *See, e.g.*, *Fernandez*, 2015 WL 13901241, at *3 (the court granted $5,000 PSLRA reimbursement for lead plaintiff); *In re Schering-Plough*, 2013 WL 5505744, at *57 (reviewing pleadings, corresponding with Lead Counsel); *In re Par Pharm.*, 2013 WL 3930091, at *11 (similar); *Schuler*, 2016 WL 3457218, at *11 (reviewed filings, conferred with lead counsel, remained apprised about the case and the company). Lead Counsel submits that the amount requested is reasonable and, indeed, modest compared to awards made to lead plaintiffs in other PSLRA cases and should be granted. *See, e.g.*, *Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, No. CIV.A. 19-1227, 2022 WL 118104, at *13 (E.D. Pa. Jan. 12, 2022) (approving $12,500 reimbursement to lead plaintiff); *In re Par Pharm.*, 2013 WL 3930091, at *11 (awarding $18,000 to lead plaintiff); *Andavarapu v. iBio, Inc. et al.*, No. 14-cv-1434-RGA, slip op. at 2 (D. Del. Apr. 21, 2016) (Dkt. 69) (awarding $10,000 to lead plaintiff in case that settled before discovery).

Accordingly, Lead Plaintiff's requested time reimbursement is reasonable and should be approved.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 33 1/3% of the Settlement Fund, plus interest, expenses in

the amount of $44,434.36, which includes a $5,000 reimbursement to Lead Plaintiff

(as permitted by the PSLRA) for its time spent on this case.

Dated: April 5, 2023

Respectfully submitted,

**SCHNADER HARRISON
SEGAL & LEWIS, LLP**


By:_____/s/ Lisa J. Rodriguez_____
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Telephone: (856) 482-5222
Email: lrodriguez@schnader.com

*Local Counsel for Plaintiff and the
Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Michael S. Bigin (pro hac vice)
Joseph R. Seidman, Jr.
10 East 40th Street
New York, New York 10016
Tel.: (212) 779-1414
Fax: (212) 779-3218
bigin@bernlieb.com
seidman@bernlieb.com

**WOLF HALDENSTEIN
ADLER FREEMAN & HERZ
LLP**
Matthew M. Guiney (pro hac vice)
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com

29

*Co-Lead Counsel for Plaintiff and the Proposed Class*

30