# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MATSUKAWA CO., LLC (n/k/a MATSUKAWA CO., LTD), individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRASKEM S.A., ROBERTO LOPES PONTES SIMÕES, FERNANDO MUSA, and PEDRO VAN LANGENDONCK TEIXEIRA DE FREITAS,<br><br>Defendants. | Case No. 2:20-cv-11366-CCC-ESK<br><br>Hon. Claire C. Cecchi, U.S.D.J.<br>Hon. Edward S. Kiel, U.S.M.J. |

**DECLARATION OF MATTHEW M. GUINEY IN SUPPORT OF (I) MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND CERTIFICATION OF CLASS; AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>REIMBURSEMENT OF TIME TO LEAD PLAINTIFF</u>**

I, Matthew M. Guiney, hereby declare as follows:

1.      I am a member of the New York Bar in good standing and am appearing in this case *pro hac vice*.  I am a partner at Wolf Haldenstein Adler Freeman & Herz ("Wolf Haldenstein").  My firm was appointed Co-Lead Counsel in this Action for Lead Plaintiff and the proposed Class ("Lead Counsel").  I have personal knowledge

1

of the matters stated herein and, if called as a witness, I could and would competently testify thereto.[1]

2.       I respectfully submit this Declaration pursuant to Rule 23 of the Federal Rules of Civil Procedure in support of Lead Plaintiff's: (1) Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Class; and (2) Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement of Time to Lead Plaintiff.

## I.       INTRODUCTION

3.       The parties to this Settlement are Lead Plaintiff Matsukawa Co., Ltd. and defendants Braskem S.A. ("Braskem" or the "Company"), Roberto Lopes Pontes Simões, Fernando Musa, and Pedro Van Langendonck Teixeira De Freitas, Mark J. Tritton, Mary A. Winston, and Robyn M. D'Elia (collectively, "Defendants").

4.       Lead Plaintiff has entered into this Settlement on behalf of himself and the other Members of the proposed Class with Defendants providing a recovery of $3 million in cash.  Magistrate Judge Edward S. Kiel preliminarily approved the Settlement on January 18, 2023 (ECF No. 63).[2]

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement filed with the Court on December 15, 2022 ("Stipulation") (ECF No. 59-2, Ex. A).

[2] The Settling Parties consented to Magistrate Judge Edward S. Kiel's jurisdiction over Lead Plaintiff's motion for preliminary approval and the instant motion for final

5.    The Settlement is a very good result for the Class in a case that posed significant hurdles.  The $3 million Settlement constitutes a conservatively estimated 16% recovery for the Class.  *See* Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Settlement, Plan of Allocation and Certification of Class ("Settlement Memorandum") at 1.  The Settlement is reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements.  Cornerstone's most recent report (issued in March 2023) reported that the median settlement in a securities class action from 2018 to 2022 recovered 3.8% of damages in analogous cases, i.e., with under $25 million in damages and a pending motion to dismiss.  *See* Exhibit H hereto (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2022 Review and Analysis*, Cornerstone Research).  Thus, the recovery here is well within the range of reasonableness for securities class action settlements.  The percentage recovery is also comparable to the percentage of damages recovered in other securities class action settlements, including in courts in this District and Circuit.  *See* Settlement Memorandum at 11, n.5.

---

approval.  *See* ECF Nos. 62, 65.  References to the "Court" below include Magistrate Judge Kiel.

3

6.    Lead Counsel diligently litigated the Action from October 2020 through the execution of the Stipulation.  Lead Counsel, *inter alia*, (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included a review and analysis of Braskem's filings with the SEC, public reports and news articles concerning Braskem, transcripts of Braskem's investor calls; (ii) filed a motion for lead plaintiff on behalf of their client Matsukawa Co. LTD; (iii) researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted the Amended Class Action Complaint (the "Amended Complaint") based on their extensive investigation, which included a lawyer fluent in Portuguese analyzing extensive Brazilian transcripts of hearings concerning Braskem in Brazil; (iv) opposed Defendants' motion to dismiss the Amended Complaint; (v) negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement; and (vi) engaged and consulted with a damages consultant and prepared the proposed Plan of Allocation based on an analysis estimating the amount of artificial inflation in the price of Braskem stock during the Class Period.

7.    At the time the Settlement was reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of the Settling Parties' positions and the risks of continuing litigation.

4

8.    In deciding to settle, Lead Plaintiff and Lead Counsel took into consideration the significant risks associated with establishing liability, as well as the duration and complexity of the legal proceedings that remained ahead.  As demonstrated by the Settling Parties' court filings, the Settlement was achieved in the face of vigorous opposition by Defendants who would have, had the Settlement not been reached, raised (and continued to raise) arguments concerning, among other things, whether the alleged misstatements were material or false, whether there was sufficient evidence of Defendants' scienter, and whether Lead Plaintiff could establish loss causation and damages (and if so, how much).

9.    The Plan of Allocation for distribution of the Settlement proceeds is fair and reasonable.  The Plan of Allocation allocates settlement monies depending on when investors bought and sold Braskem common stock during the Class Period. The Plan of Allocation also, as is customary in securities class actions, takes into account the timing of Class Members' Braskem purchases and sales in light of the three alleged corrective disclosures and the stock drops following each of them. Lead Counsel requests that the Court approve the Plan of Allocation.

10.    Lead Counsel also respectfully requests that the Court approve the proposed award of attorneys' fees in the amount of 33 1/3% of the Settlement, or $1,000,000, plus litigation expenses of $44,415.86.  Lead Counsel litigated this case to date on a wholly contingent-fee basis.  Lead Counsel believes the fee and expense

request is reasonable in light of their extensive efforts in creating this tangible and immediate benefit for the Class, and as recognition for the risks faced and overcome.

11. Lead Counsel also believes that the fee application of 33 1/3% of the total recovery is fair, reasonable and warrants Court approval. As set forth fully in the accompanying Memorandum of Law In Support of Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement of Time for Lead Plaintiff (the "Fee Brief"), the fee request is well within the range of fees typically awarded in actions of this type, was approved by Lead Plaintiff in its retainer, and is fair in light of the benefits obtained, the substantial risks undertaken, and the quality, nature and extent of the services rendered.

12. Lead Counsel also requests that the Court approve a reimbursement of $5,000 to Court-appointed Lead Plaintiff Matsukawa Co., Ltd., Carlo Gemignani, spent 20 hours representing Matsukawa the Class and achieving the proposed Settlement. *See generally* Declaration of Carlo Gemignami of Matsukawa Co., Ltd. attached as Exhibit F hereto. Per the Declaration, Mr. Gemignani's hourly rate is $250. Thus, Mr. Gemignani spent $5,000 worth of time serving as a fiduciary for the Class on this case. Lead Counsel respectfully requests that the Court approve a

$5,000 reimbursement to Matsukawa for the time spent on this case and service in achieving the Settlement for the Class. *See id*. ¶¶ 17-18.[3]

13. Pursuant to the January 18, 2023 Preliminary Approval Order (ECF No. 63), 5,043 copies of the Individual Notice were mailed or disseminated to potential Class Members and nominees. Additionally, a Summary Notice was published in *Investor's Business Daily* as well as on *PR Newswire* on February 6, 2023. *See* Exhibit G hereto (the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report On Requests For Exclusion and Objections, dated April 5, 2023 ("Bravata Decl.")), ¶¶ 9-10.

14. The notices apprised Class Members of their right to object to the Settlement, the Plan of Allocation, Lead Counsel's application for attorneys' fees of up to 33 1/3% of the Settlement Fund, plus expenses of up to $55,000, as well as the proposed $5,000 reimbursement to Lead Plaintiff. *Id.* ¶ 14.

15. The time to object to the fee and expense request expires on April 19, 2023. To date, not a single objection to the fee and expense amounts set forth in the Notice or exclusions has been received. *See also id.* ¶ 18.

---

[3] The proposed $5,000 reimbursement to Lead Plaintiff is included as part of the $44,415.86. *See* Table A, ¶ 65 below.

## II.    SUMMARY OF THE ALLEGATIONS

16.    This case concerns Defendants' misstatements and omissions of material fact concerning the Company's role in, and extent of liability for damages from, ground subsidence at Braskem's salt mine in Alagoas, Brazil, which forced many residents of adjacent areas to vacate their homes and businesses.    Second Amended Complaint ("SAC"), dated Apr. 28, 2021 (ECF No. 39), pg. 2, ¶ 2.

17.    Between June 2016 and December 2018, Braskem's mining activity caused the ground around the mine to subside by as much as 40 centimeters, making ground stability precarious. *Id.* at pg. 3, ¶ 6.    On February 15, 2018, after heavy rains, a fissure of approximately 283 meters appeared in the ground in the Pinheiro neighborhood of Maceio, Alagoas. *Id.* ¶ 7.    On March 3, 2018, there was again heavy rainfall and a small earthquake measuring 2.4 on the Richter scale, which accelerated ground subsidence and worsened cracks and fissures in streets, buildings and structures in a large portion of Pinheiro. *Id.* at pg. 4, ¶ 8.

18.    Lead Plaintiff alleged that Braskem made misrepresentations and omissions of material fact about Braskem's role in the ground subsidence at the mine, its cooperation with Brazilian authorities, and the Company's financial exposure from the ground subsidence. *Id.* at pg. 5, ¶ 12.

19.    Lead Plaintiff alleged that the truth was revealed in part on April 2, 2019 when media sources, as well as Braskem, disclosed that the Company had been

8

sued by local authorities over the extensive damage caused by the ground subsidence. Braskem stated that the lawsuits aimed to freeze R$6.7 billion in Braskem assets.

20.    On this news, Braskem's ADSs fell $1.60 per share over two trading days, or approximately 6%, to close at $25.14 per share on April 3, 2019. *Id.* at pg. 5-6, ¶¶ 13-14.

21.    On the last day of the Class Period, July 9, 2020, Braskem disclosed that it would pay much more damages in connection with the ground subsidence than it had earlier stated. Specifically, during pre-market hours, the Company announced that it would be paying ***60% more*** than the $2.7 billion it had previously disclosed. Braskem would pay an additional R$850 million in possible payments to residents and another R$750 million in expenses to "definitively" shut down Braskem's salt mining operations – or total additional costs of R$1.6 billion (approximately $325,000,000). *Id.* at pg. 7, ¶ 21.

22.    On this news, Braskem's ADS price fell from a July 8, 2020 closing of $9.52 to close on July 9, 2020 at $8.93, a drop of over 6%. *Id.* at pg. 8, ¶ 22.

## III.   PROCEDURAL HISTORY

23.    This Action began on August 25, 2020, when Claudio Coutinho filed a putative securities fraud class action complaint in this Court against Braskem, Roberto Lopes, Pontes Simões, Fernando Musa, and Pedro Van Langendonck

9

Teixeira De Freitas alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). ECF No. 1.

24.     On October 26, 2020, lead plaintiff motions were filed by (1) Matsukawa Co. LLC ("Matsukawa") (ECF No. 13); (2) Rogerio Basso ("Basso") (ECF No. 14); (3) Rainer Senn ("Senn") (ECF No. 15); and (4) Claudio Coutinho (ECF No. 16).  Basso and Coutinho filed notices of non-oppositions to the competing lead plaintiff motions on November 13, 2020 (ECF No. 17) and November 20, 2020 (ECF. No. 19), respectively.

25.     On January 15, 2021, the Court issued an order appointing Senn and Matsukawa as Co-Lead Plaintiffs, Bernstein Liebhard LLP ("Bernstein Liebhard") and Wolf Haldenstein as Co-Lead Counsel for the proposed Class, and Schnader Harrison Segal & Lewis LLP ("Schnader Harrison") as Local Counsel for the proposed Class.  ECF No. 22.[4]

26.     On April 28, 2021, Lead Plaintiff filed the Amended Class Action Complaint ("Complaint").  ECF No. 39.  The Complaint alleged claims under Section 10(b) and 20(a) of the Exchange Act against Braskem, Roberto Lopes, Pontes Simões, Fernando Musa, and Pedro Van Langendonck Teixeira De Freitas (collectively, "Defendants").

---

[4] Matsukawa Co. Ltd. was formerly Matsukawa Co. LLC. Rainer Senn was not included in the Amended Complaint because he purchased Braskem ADRs before the Class Period.

27.     On June 28, 2021, Defendants filed a motion to dismiss.  ECF No. 41. On August 27, 2021, Lead Plaintiff filed its opposition to the motion to dismiss. ECF No. 46.

## IV.     NEGOTIATION OF THE SETTLEMENT AND ITS TERMS

28.     On March 31, 2022, the Parties requested an adjournment of the oral argument on Defendants' motion to dismiss, which was previously scheduled for April 7, 2022, in order to facilitate settlement discussions.  By order dated March 31, 2022, the Court granted the application and adjourned the scheduled oral argument. ECF No. 49.  The settlement negotiations continued until August 9, 2022, when the Parties reached an agreement in principle, which the Parties memorialized in a Memorandum of Understanding ("MOU").

29.     On August 9, 2022, following settlement negotiations, the Parties agreed, in principle, to settle the Action for $3 million, subject to the negotiation of a mutually acceptable written settlement agreement and Court approval.

30.     On August 16, 2022, counsel for Defendants, David A. Luttinger Jr., submitted a letter to the Court informing the Court that the Parties had reached a settlement and requesting that the Court continue to refrain from scheduling oral argument on the Defendants' motion to dismiss.  ECF No. 53.

31.     Thereafter, the Settling Parties negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among

other things, a release of all claims asserted against Defendants in the Action and related claims, in return for a cash payment by Braskem (on behalf of all Defendants) of $3 million (the "Settlement Amount"), for the benefit of the proposed Class (ECF No. 59-2, Ex. A).

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT AND MAILING AND PUBLICATION OF NOTICE OF THE SETTLEMENT

32.    On December 29, 2021, Lead Plaintiff filed the Unopposed Motion for an Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement, along with Lead Plaintiff's supporting memorandum of law, and proposed notices to the Class Members.  ECF No. 61.

33.    Lead Plaintiff requested that the Court approve the forms of notice, which, among other things, described the terms of the Settlement, advised Class Members of their rights in connection with the Settlement, set forth the Plan of Allocation, informed Class Members of the amount of attorneys' fees and expenses that Lead Counsel and Lead Plaintiff would request, and explained the procedure and deadline for filing a Proof of Claim and Release form (the "Proof of Claim Form") in order to be eligible to receive a payment from the Net Settlement Fund. In addition, Lead Plaintiff requested that the Court certify the Class for settlement purposes.

34.    By Order dated January 18, 2023, Magistrate Judge Kiel preliminarily approved the Settlement and approved the forms of notice to the Class.  ECF No. 63. The Court also appointed Strategic Claims Services ("SCS") as Claims Administrator and instructed SCS to disseminate notice to the Class.  *See id*.  Based upon the trading information provided by claimants, SCS is determining each claimant's eligibility to participate in the Settlement and calculating each claimant's respective "Recognized Claim" based on the Plan of Allocation.

35.    The Bravata Declaration represents that the Claims Administrator has provided Notice to the Class in compliance with the Preliminary Approval Order. *See id*. ¶¶ 2-14 (Exhibit G hereto).

36.    As stated in the Bravata Declaration, in addition to mailing 5,043 Individual Notices to potential Class Members and nominees, SCS caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*.  *Id*. ¶¶ 9-10.

37.    SCS also maintains and posts information regarding the Settlement on a dedicated website established for the Action, www.strategicclaims.net/Braskem, to provide Class Members with information about the Action, as well as downloadable copies of the Notice, Claim Form and Stipulation.  *Id*. ¶ 12.

38.    Pursuant to the Preliminary Approval Order, the deadline for Class Members to submit objections to the Settlement, or the fee, expense and lead plaintiff

reimbursement application is April 19, 2023, and the deadline to request exclusion from the Class is April 3, 2023. To date, Lead Counsel and SCS have received no objections to the Settlement, fee and expense, or requested reimbursement of time to Lead Plaintiff, and no exclusions from the Class. *Id.* ¶¶ 13-14. Should any objections or additional requests for exclusion be received, Lead Counsel will address such in the reply papers.

## VI.   FACTORS TO BE CONSIDERED IN SUPPORT OF SETTLEMENT

### A.   The Settlement Was Negotiated at Arm's-Length

39. As set forth above, the terms of the Settlement were negotiated by the parties at arm's-length through adversarial good-faith negotiations. Even after a settlement in principle was reached, the Settling Parties took several months to negotiate and agree to the terms of the Settlement.

40. Lead Counsel is experienced in prosecuting securities class actions and has successfully prosecuted hundreds of similar class actions in courts throughout the country. *See* Exs. B & C-C hereto (Wolf Haldenstein and Bernstein Liebhard firm resumes, respectively). Lead Counsel leveraged its experience and resources to assess the merits and value of the case and negotiate the Settlement.

41. Defendants are represented by experienced practitioners from the law firm of Covington & Burling LLP, a capable and prominent law firm that is experienced in complex securities class action litigation. Notwithstanding this

opposition, Lead Counsel was able to develop a case that was sufficiently strong to persuade Defendants to settle it on terms that are favorable to the Class.

42.    The Settlement avoids the hurdles Lead Plaintiff would have to clear in proving liability and damages if the Action continued, and avoids the significant costs and risks associated with further litigation and the very real risk of no recovery at all.

43.    As a result of Lead Counsel's litigation efforts and the discussions during the Settling Parties' settlement negotiations, Lead Counsel was able to identify issues that were critical to the outcome of this case.  Lead Counsel has considered the risks of continued litigation, the likelihood of defeating Defendants' motion to dismiss, the likelihood of obtaining class certification, the likelihood of defeating *Daubert* and summary judgment motions after completion of fact and expert discovery and, if successful, the risk, expense, and length of time to prosecute the Action through trial and the inevitable subsequent appeals.

**B.    Defendants Raised Arguments that Posed Risk to the Action**

44.    At the time the Settlement was reached, Defendants' motion to dismiss the Amended Complaint was fully briefed.  Although Lead Plaintiff believes that the claims asserted in the Amended Complaint are meritorious, Defendants' motion to dismiss posed risks.

15

45. Defendants argued, and would continue to argue, that their challenged statements were not materially false and misleading when made because, inter alia: (i) evidence concerning Braskem's role in the mine collapse was a matter of public record; (ii) many of Defendants' alleged misstatements were forward-looking and, thus, protected by the PSLRA's safe harbor; and (iii) Braskem's reserve statements were explicitly phrased as estimates.

46. Defendants also argued and would continue to argue that even if Lead Plaintiff could establish a material misstatement or omission, there was no evidence upon which Lead Plaintiff could prove the requisite mental state of scienter – i.e., that Defendants misled investors intentionally or with extreme recklessness. Lead Counsel believe they could have prevailed on all these issues, but every motion to dismiss is uncertain, and the risks to Lead Plaintiff were real.

47. Although Lead Plaintiff and Lead Counsel believe that they effectively countered Defendants' arguments in the opposition to Defendants' motion to dismiss, and could have effectively countered arguments Defendants may have raised later, it is uncertain how the Court would have ruled. In addition, Defendants' arguments at class certification and summary judgment would have been just as hard-fought and extensive, and Lead Plaintiff had no guarantee of success.

48. The risks of establishing liability and damages at trial were also significant. Lead Plaintiff could not predict what evidence would be gleaned

through discovery and would face the unpredictability of a lengthy and complex trial, the risk that the jury would react to evidence in unforeseen ways, and the risk that the jury would find that the challenged statements were not materially false or misleading and that no damages were caused by Defendants' actions. Accordingly, Lead Plaintiff faced the risk that the Defendants' arguments would find favor with a jury and result in the Class losing at trial and receiving no recovery.

## C. The Judgement of the Parties and Reaction of the Class Provide Additional Support for Approval of the Settlement

49.    As set forth above, the Settlement is the product of substantial arm's-length negotiations between opposing counsel with significant experience in securities class action litigation. In sum, Lead Counsel believes that the Settlement represents a favorable resolution for the Class under the circumstances.

50.    As noted, 5,043 Individual Notices have been mailed to potential Class Members and nominees. *See* Exhibit G (Bravata Decl.) ¶ 9. As of the date of this Declaration, Lead Counsel and SCS have received no objections to the Settlement, the Plan of Allocation, or the fee, expense and lead plaintiff reimbursement request have been submitted. There have also been no exclusions. *See* Bravata Decl. ¶¶ 13-14.

17

**D.      The Settlement is a Good Result Considering the Risks of Continued Litigation**

51.    The Settlement is a fair and reasonable result, particularly when considered in view of the substantial risks and obstacles to recovery if the Action were to continue through summary judgment, to trial, and through likely post-trial motions and appeals.

52.    Plaintiffs' maximum estimated damages here are $17.7 million. However, this optimistic figure does not account for the numerous arguments Defendants made and likely would have made to reduce damages, including, but not limited to, that (1) there was no fraud here and thus no damages; (2) the market was aware of the truth because Braskem's role in the collapse had been revealed through Portuguese media; and (3) Braskem ADSs fell, in part, for reasons unrelated to the alleged fraud.

53.    Lead Counsel does not agree with any of these arguments. Nevertheless, if Defendants were successful in making any one of them, damages could be reduced to $0 in the worst-case scenario or, based on expert analysis, be reduced well below $17.7 million.  The $3 million Settlement comprises 16% of the $17.7 million figure.  The 16% percentage recovery here is above the percentage of damages recovered in many other securities class action settlements, including in courts in this District and Circuit.

54.     The amount and percentages of the Settlement are reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements.  According to Cornerstone's most recent report (issued in March 2023), the median settlement in a securities class action from 2018 to 2022 recovered 3.8% of damages in analogous cases, i.e., with under $25 million in damages and a pending motion to dismiss. *See* Exhibit H at 6, 14 (Laarni T. Bulan and Laura E. Simons, Securities Class Action Settlements – 2022 Review and Analysis, Cornerstone Research).   Thus, the recovery here is well within the range of reasonableness for securities class action settlements. *See* Settlement Memorandum at 11, n.5.

55.     Accordingly, the Settlement is a favorable and good result for the Class.

## VII.   THE PLAN OF ALLOCATION

56.     Pursuant to the Notice Order and as set forth in the Individual Notice, Summary Notice, and Notice, all Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a timely and proper Proof of Claim form.  As provided in the Stipulation, after deducting all appropriate taxes, administrative costs, and attorneys' fees and expenses (as well as reimbursement of Lead Plaintiff's time), the remainder of the Settlement Fund (the "Net Settlement

19

Fund") shall be distributed among Class Members who submit valid Proof of Claim forms according to the Plan of Allocation.

57.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed.  The proposed Plan of Allocation provides that, to qualify for payment, a claimant must be, among other things, an eligible Member of the Class and must submit a valid Proof of Claim form that provides all of the requested information.  The Settlement Fund will be distributed on a pro rata basis depending on the Class Member's recognized losses.  The Plan of Allocation is set forth in the Notice.

58.    The proposed Plan of Allocation was formulated after consultation with Lead Counsel's damages consultant in order to calculate an equitable method to divide the Net Settlement Fund for distribution among Class Members who submit valid claims.  The proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Class.

59.    The Plan of Allocation recognizes differences in damages incurred by those who bought and, if applicable, sold their shares at different prices and times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid and the amount of alleged artificial inflation in Braskem ADSs at the time of their purchases.  The Plan of Allocation also rationally allots different damages depending on whether Class Members held Braskem ADSs (that

20

they purchased during the Class Period) at the time of one, two, or all three of the alleged corrective disclosures.  The Settlement Fund will be distributed on a *pro rata* basis depending on the Class Member's recognized losses.

## VIII. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE

60.    Lead Counsel and additional Plaintiffs' Counsel have not received any payment for their services in prosecuting this litigation to date, nor have they been paid for expenses incurred in the prosecution of this Action.  The Notice provides that Lead Counsel may apply for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Fund, plus expenses of up to $55,000.

61.    As set forth in the Fee Brief, Lead Counsel is requesting attorneys' fees of 33 1/3% of the Settlement Fund, plus expenses.  The requested fee was approved by Lead Plaintiff in its retainer.  *See* Matsukawa Co., LTD, Decl. ¶ 14 (Exhibit G hereto).  The requested fee is also well within the range of fees awarded by courts in this Circuit and courts throughout the country in cases of this size and at this procedural stage.  *See* Fee Brief at 18-20.

62.    Lead Counsel achieved this Settlement at significant risk and expense. Lead Counsel undertook this litigation on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute a risky action with no guarantee of compensation for the substantial investment of time and money the case would

21

require, or even the recovery of expenses.  The requested fee is reasonable based on the quality of Lead Counsel's work and the substantial benefit obtained for the Class.

63.    The requested fee is also warranted in light of the result obtained for the Class and the obstacles that existed to obtaining any recovery.  Defendants have maintained throughout the litigation that they had no liability.  If the case survived Defendants' motion to dismiss, of which there was no guarantee, it would have proceeded to discovery, class certification, *Daubert* motions, summary judgment and possibly trial, each posing further risks and protracted litigation.

**A.    The Fee Request is Justified Under the Percentage of Recovery Method**

64.    For Lead Counsel's efforts on behalf of the Class, it is applying for compensation from the Settlement Fund on a percentage basis.  The percentage method is an appropriate method of compensating counsel because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum recovery in the shortest amount of time required under the circumstances.  In addition, the percentage method is particularly appropriate here, given the favorable result that Lead Counsel achieved.

65.    A lodestar crosscheck confirms the reasonableness of Lead Counsel's fee request, Lead Counsel is applying for attorneys' fees on behalf of all Plaintiffs' Counsel.  Plaintiffs' Counsel's compensation for the services rendered was wholly contingent on success.  Lead Counsel staffed the matter efficiently and avoided any

unnecessary duplication of effort.  Plaintiffs' Counsel dedicated 1,413.5 hours to prosecuting this Action resulting in a lodestar of $1,030,414.50.  Lead Counsel spent 1,379.3 hours, resulting in a lodestar of $996,556.50; local counsel Schnader Harrison spent 34.4 hours, resulting in a lodestar of $33,858.  *See* Exs. A, C, & D hereto.  For ease of reference, the information detailed above is also included in the table below:

**Table A:**

|  | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|
| **WOLF HALDENSTEIN** | 521.8 | $288,294.00 | $20,613.52 |
| **BERNSTEIN LIEBHARD** | 857.5 | $708,262.50 | $18,747.86 |
| **SCHNADER** | 34.2 | $33,858.00 | $72.98 |
| **TOTAL** | 1413.5 | $1,030,414.50 | $44,434.36 |
| **Multiplier** | 0.970483238 | -- | -- |
| **LEAD PLAINTIFF** | 20 | -- | $5,000 |

66.    Lead Counsel's 33 1/3% fee request represents a negative multiplier of 0.97 to the total lodestar, well within – and in fact at the lower end – of the range of multipliers awarded by courts in this District and in courts throughout the country. *See* Fee Brief at 23-25.

67.    Lead Counsel's expenses incurred in prosecuting this Action are set forth in the Exs. A, C, & D. *See id*.  Lead Counsel's expenses are reflected in the books and records maintained by the firm, and are an accurate recordation of the expenses incurred.  In total, Lead Counsel incurred expenses in the amount of $39,434.36 to successfully prosecute the Action.

68.    Lead Counsel incurred expenses on, among other things, a Brazilian investigator to identify and interview witnesses in connection with drafting the Amended Complaint, electronic legal research fees relating to Lead Plaintiff's detailed opposition to Defendants' motion to dismiss, a damages consultant to calculate damages and develop the Plan of Allocation, translators, and filing fees, all of which are properly recoverable.

69.    Local Counsel's expenses incurred in prosecuting this Action are set forth in the Schnader Harrison Fee Declaration.  Ex. D hereto.  Local Counsel's expenses are reflected in the books and records maintained by the firm, and are an accurate recordation of the expenses incurred.  In total, Local Counsel incurred expenses in the amount of $72.98 to successfully prosecute the Action.

70.    There have been no objections to Lead Counsel's expense request – which is well below the $55,000 limit provided in the notice.

71.    Lead Counsel respectfully submits that its fees and expenses are reasonable and should be approved by the Court.

24

B.    **Standing and Expertise of Counsel**

72.    The expertise and experience of Lead Counsel is described in Exhibits B and C to the Guiney Decl.  Lead Counsel are experienced securities class action litigators and have years of experience litigating these types of cases, having served as lead or co-lead in some of the largest securities litigations in recent history and recovering billions of dollars for shareholders.  Local counsel Schnader Harrison are also well-experienced in securities class actions.  *See* Guiney Decl. Ex. E.

73.    Defendants are represented by very experienced counsel – the law firm of Covington & Burling LLP – who spared no effort in the defense of their clients. Defendants' counsel vigorously defended their clients, insisted they had no liability, and gave every indication that they were prepared to proceed with the litigation to trial, if necessary, if a settlement was not reached.  In the face of this opposition, Lead Counsel developed its case so as to persuade Defendants to settle the case on a basis favorable to the Class under the circumstances.

C.    **The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases**

74.    This litigation was undertaken by Lead Counsel on a wholly contingent basis.  From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require.  In undertaking this responsibility, Lead Counsel was obligated to ensure

25

that sufficient attorney and paraprofessional resources were dedicated to the prosecution of this Action and that funds were available to compensate staff and the considerable costs which a case such as this requires.

75.    Because of the nature of a securities litigation contingent practice, where cases are predominantly large and last several years, contingent litigation firms have to pay regular overhead, in addition to advancing the expenses of the litigation, all while no recovery is assured.  This Action is no different.  From the outset, this Action presented a number of risks and challenges that could have prevented the Class from obtaining any recovery at all.  Further, law firms handling complex contingent litigation do not always win. Tens of thousands of hours have been expended on losing efforts.

76.    Lead Counsel has not been compensated for any time or expenses since it started litigating the case.  Lead Counsel would have received no compensation or payment of its expenses had Lead Counsel not resolved the case successfully. Nevertheless, Lead Counsel ensured from the outset that sufficient resources were dedicated to the Action and that funds were available to compensate staff and cover any necessary expenses.  With an average time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than on defense firms that are paid on an ongoing basis.  In addition to advancing all costs and litigation expenses, Lead Counsel faced the possibility that they would receive no attorneys'

fees at all. Indeed, it is possible that, if not for this Settlement, the entire case would have been dismissed in response to Defendants' motion to dismiss. In light of the difficulty of undertaking such a lawsuit, Lead Counsel should be reimbursed for its time and expenses. Indeed, Defendants mounted a strong defense and there were many significant obstacles to obtaining a larger recovery than the $3 million Settlement if Lead Plaintiff kept litigating.

## IX.    LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT FOR THE TIME IT SPENT LITIGATING THIS CASE AND ACHIEVING THE SETTLEMENT SHOULD BE APPROVED

77.    Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), Lead Plaintiff is seeking reimbursement related directly to its representation of the Class, including time reviewing pleadings and court filings, communicating with Lead Counsel, and participating in settlement discussions. Such payments are expressly authorized by the PSLRA.

78.    As set forth in the accompanying Declaration of Matsukawa Co., LLC (Exhibit F hereto), Lead Plaintiff seeks a modest reimbursement of $5,000 for the time it dedicated to the Action. *See generally id*. This request is reasonable and justified, and similar reimbursements are routinely made to lead plaintiffs in these types of cases.

79.    The Individual Notice, Summary Notice and Notice each informed potential Class Members that Lead Counsel would be seeking payment of expenses

in an amount not to exceed $55,000, including reimbursement to the Lead Plaintiff directly related to his representation of the Class in an amount not to exceed $5,000, as authorized by the PSLRA.  The aggregate amount requested, $44,434.36 (which includes $39,434.36 in litigation expenses incurred by Lead Counsel and $5,000 in PSLRA reimbursement to Lead Plaintiff) is below the $55,000 estimate given to the Class in the notices.

80.     As of the date of this Declaration, there have been no objections to either the requested attorney fees, the requested reimbursement of expenses, or the requested reimbursement to Lead Plaintiff.

## X.     CONCLUSION

81.     In view of the recovery to the Class, the substantial risks of this litigation, the substantial efforts of Lead Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel, Lead Plaintiff and Lead Counsel respectfully submit that: (a) the Settlement is fair, reasonable and adequate, and should be finally approved; (b) the Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Class Members and should be approved; (c) the application for attorneys' fees of 33 1/3% of the Settlement Fund, plus interest, and litigation expenses in the amount of $44,434.36 should be approved; (d) the Class should be finally approved for

purposes of the Settlement; and (e) Lead Plaintiff should be awarded $5,000, pursuant to the PSLRA.

## XI.   TABLE OF EXHIBITS

82.   The following documents are true and correct copies:

**Table B:**

| Exhibits to Guiney Decl. | Title |
|---|---|
| A | Wolf Haldenstein Adler Freeman & Herz LLP Time and Expense Summary Sheet |
| B | Wolf Haldenstein Adler Freeman & Herz LLP Firm Resume |
| C | Declaration of Michael S. Bigin in Support of Lead Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses |
| D | Schnader Harrison Segal & Lewis LLP Time and Expense Summary Sheet |
| E | Declaration of Lisa J. Rodriguez in Support of Motion for an Award of Attorneys' Fees and Reimbursement of Expenses |
| F | Declaration of Lead Plaintiff Matsukawa Co., LLC in Support of Motion for Final Approval of the Settlement, an Award of Attorneys' Fees and Litigation Expenses, and Reimbursement of Time for Lead Plaintiff |
| G | Declaration Of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| H | Securities Class Action Settlements – 2022 Review and Analysis, Cornerstone Research |
| I | Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review, NERA Economic Consulting |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 5, 2023.

By:  */s/ Matthew M. Guiney*

MATTHEW M. GUINEY