UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MATSUKAWA CO., LLC (n/k/a MATSUKAWA CO., LTD), individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BRASKEM S.A., ROBERTO LOPES PONTES SIMÕES, FERNANDO MUSA, and PEDRO VAN LANGENDONCK TEIXEIRA DE FREITAS,

Defendants.

Case No. 2:20-cv-11366-CCC-ESK

Hon. Claire C. Cecchi, U.S.D.J.
Hon. Edward S. Kiel, U.S.M.J.

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND CERTIFICATION OF CLASS**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 4

I.      STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT ............. 4

II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .......... 5

    A.    Lead Plaintiff and Lead Counsel Adequately Represented the Class ..... 5

    B.    The Settlement Was Negotiated at Arm's Length ................................... 7

    C.    The Relief Provided by the Settlement is More Than Adequate ............. 9

        1.    The Risks of Establishing Liability at Trial ............................... 12

        2.    The Risks of Establishing Loss Causation and
            Damages at Trial ....................................................................... 15

        3.    The Settlement Eliminates the Additional Costs and Delay of
            Continued Litigation ................................................................. 17

        4.    The Proposed Method for Distributing Relief Is Effective .......... 19

        5.    Lead Counsel's Request for Attorneys' Fees Is Reasonable ........ 20

        6.    Other Agreements Have Been Identified ..................................... 21

    D.    The Settlement Ensures Class Members Are Treated Equitably ........... 22

III.    THE PLAN OF ALLOCATION IS REASONABLE AND FAIR ............... 22

IV.     FINAL CERTIFICATION OF THE CLASS ............................................. 24

    A.    The Class Meets the Requirements of Rule 23(a) ............................... 25

        1.    Rule 23(a)(1): Numerosity ......................................................... 25

        2.    Rule 23(a)(2): Questions of Law or Fact Are Common .............. 26

        3.    Rule 23(a)(3): Lead Plaintiff's Claims are Typical ..................... 27

        4.    Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative ...... 28

i

B.    The Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority ...............................................................................29

V.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS .30

CONCLUSION ..................................................................................................32

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)...................................................................................29

*Amchem Prods., Inc.v. Windsor*,
  521 U.S. 591 (1997)...................................................................................29

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
  No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008)...................................11

*Basic v. Levinson*,
  485 U.S. 224 (1988)...................................................................................29

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014)......................................................................22

*Burns v. FalconStor Software, Inc.*,
  No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014)............22

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016),
  *amended in part sub. nom. In re Carrier Iq, Inc.*,
  No. 12-MD-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016)............21

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000),
  *aff'd*, 264 F.3d 201 (3d Cir. 2001).............................................................5, 7, 11

*Christine Asia Co. v. Yun Ma*,
  No. 1:15-md-02631(CM)(SDA),
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).................................................21

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg.,*
*Sales Practices & Prods. Liab. Litig.*,
  No 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019)................25

*In re Citigroup Inc. Sec. Litig.*,
  No. 09 Civ. 7359 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ............11

*In re Citigroup Inc. Sec. Litig.*,
　　No. 07 Civ. 9901(SHS), 2014 WL 2445714 (S.D.N.Y. May 30, 2014) ..............18

*Dartell v. Tibet Pharms., Inc.*,
　　No. CV 14-3620, 2017 WL 2815073 (D.N.J. June 29, 2017) ............................19

*In re Datatec Sys., Inc. Sec. Litig.*,
　　No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............13, 23

*Dura Pharmaceuticals, Inc. v. Broudo*,
　　544 U.S. 336 (2005)................................................................................15

*Ehrheart v. Verizon Wireless*,
　　609 F.3d 590 (3d Cir. 2010)....................................................................4

*Eisen v. Carlisle & Jacquelin*,
　　417 U.S. 156 (1974)................................................................................30

*In re Gen. Instrument Sec. Litig.*,
　　209 F. Supp. 2d 423 (E.D. Pa. 2001) .....................................................23

*In re Gen. Motors Corp. Pick-Up Truck Fuel*
*Tank Prod. Liab. Litig. (“GMC Trucks”)*,
　　55 F.3d 768 (3d Cir. 1995)..............................................................10, 24

*In re Genta Securities Litigation*,
　　No. CIV.A. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008)...............8

*Girsh v. Jepson*,
　　521 F.2d 153 (3d Cir. 1975)....................................................................4

*In re Heckmann Corp. Sec. Litig.*,
　　No. C.A. 10-378-LPS-MPT, 2013 WL 2456104 (D. Del. June 6, 2013).............29

*In re Ikon Office Sols., Inc. Sec. Litig.*,
　　277 F.3d 658 (3d Cir. 2002)....................................................................13

*Lazy Oil Co. v. Witco Corp.*,
　　95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999). .....11, 17

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
    641 F. App'x 146 (3d Cir. 2015) ...........................................................................4

*In re Merck & Co. Vytorin ERISA Litig.*,
    No. 08-CV-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) ........................22

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015), *amended*,
    No. 2:12-MD-02323-AB, 2015 WL 12827803
    (E.D. Pa. May 8, 2015), *and aff'd,* 821 F.3d 410 (3d Cir. 2016) ..................*passim*

*In re Ocean Power Techs., Inc. Sec. Litig.*,
    No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)....................15, 23

*In re Par Pharm. Sec. Litig.*,
    No. CIV.A. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013)..........10, 12

*Pepe v. Cocrystal Pharma, Inc.*,
    No. 2:18-cv-14091-KM-JBC, slip op. (D.N.J. Dec. 16, 2020)............................20

*Pollak v. Portfolio Recovery Assocs., LLC*,
    285 F. Supp. 3d 812 (D.N.J. 2018) .......................................................................6

*Pro v. Hertz Equip. Rental Corp.*,
    No. CIV.A. 06-3830(DMC), 2013 WL 3167736 (D.N.J. June 20, 2013)............12

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
    962 F. Supp. 450, 508 (D.N.J. 1997), *aff'd,*
    148 F.3d 283 (3d Cir. 1998)....................................................................4, 6, 9, 24

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. Civ.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005)........................9

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009).................................................................................26

*Schuler v. Medicines Co.*,
    No. CV 14-1149 (CCC),
    2016 WL 3457218 (D.N.J. June 24, 2016).......................................6, 11, 24, 28

*Shapiro v. All. MMA, Inc.*,
   No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) .......26

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) .............................25

*Somogyi v. Freedom Mortg. Corp.*,
   495 F. Supp. 3d 337 (D.N.J. 2020) ...................................................................17

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011).........................................................................22, 23

*In re Suprema Specialties, Inc. Sec. Litig.*,
   No. 02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ..........................12

*Talone v. Am. Osteopathic Ass'n*,
   No. 1:16-cv-04644-NLH-JS, 2018 WL 6318371 (D.N.J. Dec. 3, 2018) .............18

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)............................................................................7

*Vataj v. Johnson*,
   No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021)...............11

*In re Veritas Software Corp. Sec. Litig.*,
   396 F. App'x 815 (3d Cir. 2010) .......................................................................31

*In re ViroPharma Inc. Sec. Litig.*,
   No. CIV.A. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)........9, 13, 15, 16

*Wallace v. Powell*,
   288 F.R.D. 347 (M.D. Pa. 2012).........................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................31

*Walsh v. Great Atl. & Pac. Tea Co.*,
   96 F.R.D. 632 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983).................. 4-5, 9

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.,*
  758 F.2d 86 (3d Cir. 1985).................................................................................31

## STATUTES & RULES

Fed. R. Civ. P.
  23................................................................................................................*passim*
  23(a) ...........................................................................................................24
  23(a)(1).......................................................................................................25
  23(a)(2).......................................................................................................26
  23(a)(3).......................................................................................................27
  23(a)(4).......................................................................................................28
  23(b)(3) ..................................................................................................24, 28
  23(c)(2).......................................................................................................30
  23(c)(2)(B) .............................................................................................30, 31
  23(e) .............................................................................................................1
  23(e)(1)......................................................................................................3, 31
  23(e)(2)........................................................................................................1, 5
  23(e)(2)(C)(i) ..............................................................................................18
  23(e)(2)(C)(iii) ...........................................................................................19
  23(e)(2)(C)(iv) ...........................................................................................20
  23(e)(3).......................................................................................................20
  23(g) ...........................................................................................................28

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
15 U.S.C. § 78u-4(a), *et seq.*..........................................................................14, 30
  15 U.S.C. § 78u-4(a)(3)(B)(v) .......................................................................28

Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*
  15 U.S.C. § 78j(b) ("Section 10(b)") ...........................................................13, 29

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff

Matsukawa Co. Ltd. ("Lead Plaintiff"), on behalf of itself and the Class, respectfully

submits this memorandum in support of its motion for final approval of the proposed

settlement ("Settlement"), plan of allocation, and certification of the Class as set

forth in the Stipulation of Settlement dated December 15, 2022 (the "Stipulation").[1]

## INTRODUCTION

The Settlement provides a recovery of $3 million in cash to the Class to

resolve all claims in this Action.  This is a good result for the Class given the risks

inherent in this litigation.  The Settlement satisfies the factors delineated in Rule

23(e)(2).  The $3 million recovery is well within the range of reasonableness for

securities class action settlements at this stage of the litigation.  For example,

Cornerstone reported that the median settlement in a securities class action from

2018 to 2022 had a 3.8% damages recovery rate damages in cases analogous to this

one, *i.e.*, with under $25 million in damages and a pending motion to dismiss.  *See*

Guiney Decl., Ex. H at 6, 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class*

*Action Settlements – 2022 Review and Analysis*, Cornerstone Research).  Here, the

---

[1] "Rule" refers to the Federal Rules of Civil Procedure.  All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation. All exhibits referenced herein are attached to the Declaration of Matthew Guiney in Support of (I) Motion for Final Approval of Settlement, Plan of Allocation and Certification of Class; And (II) Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement of Time to Lead Plaintiff (the "Guiney Decl."), filed concurrently with this motion.

1

$3 million Settlement comprises approximately 16% of the $17.7 million in maximum damages potentially available in this case.  Moreover, $17.7 million was Plaintiff's best-case scenario for damages.  Thus, the Settlement is an excellent result.  For these reasons and those discussed below, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

The Settlement of this Action was the product of hard work and diligence.  By the time the Settlement was reached, Lead Counsel had, among other things, (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, *inter alia*, a review and analysis of Braskem, S.A.'s ("Braskem") filings with the SEC, public reports and news articles concerning Braskem, Braskem's Brazilian filings and hearing transcripts with Brazilian governmental agencies, all of which were in Portuguese; (ii) retained a Brazilian private investigator; (iii) drafted the Amended Class Action Complaint (the "Amended Complaint"); (iv) opposed Defendants' motion to dismiss the Amended Complaint; (iv) hired an economics expert to assess and analyze damages; (v) engaged in extensive negotiations leading to the Settlement; and (vi) prepared the settlement papers for the Court.  Before reaching the Settlement, Lead Plaintiff and Lead Counsel had a thorough understanding of the claims and defenses in the Action as well as the risks of establishing liability and damages.

2

On January 18, 2023, Magistrate Judge Edward S. Kiel preliminarily approved the Settlement pursuant to Rule 23(e)(1) and authorized notice of the Settlement to the Class. *See* ECF No. 63.[2]

As more fully set forth by the Claims Administrator in the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl."), notice has been given to the Class as required by the Preliminary Approval Order. *See* Bravata Decl. (Ex. G to Guiney Decl.) ¶¶ 2-12. To date, no Class Member has objected to the Settlement and none have opted out. Guiney Decl. ¶ 15, 38, 50, 70, & 80; Bravata Decl. ¶¶ 13-14. Lead Counsel will update the Court as to any objections or exclusions in Lead Plaintiff's reply memorandum, which is to be filed prior to the settlement hearing.

For the reasons discussed herein and in the Guiney Declaration, the Settlement is a favorable result for the Class, presumptively fair, and readily fulfills the criteria set forth in Rule 23 and applicable case law. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

---

[2] The Settling Parties consented to Magistrate Judge Kiel's jurisdiction over this motion for final approval. *See* ECF Nos. 62, 65. References to the "Court" include Magistrate Judge Kiel.

3

## **ARGUMENT**

### I.    **STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT**

As a matter of public policy, settlement is strongly favored. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation"). The Third Circuit has noted that this is especially so in class actions, "where substantial judicial resources can be conserved by avoiding formal litigation." *Id.* at 595; *see also McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x. 146, 150 (3d Cir. 2015) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

While approval of the Settlement is within the Court's discretion (*see In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)), the Third Circuit has instructed that a district court should not substitute its own judgment for that of the parties who negotiated a settlement. *See Girsh*, 521 F.2d at 160 ("the task of the district court is to determine whether the proposed settlement should be accepted and approved – a determination substantially different than a decision on the merits"); *see also Ehrheart*, 609 F.3d at 595 ("The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings"); *Walsh v.*

4

*Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J. 1983), *aff'd*, 726 F.2d 956

(3d Cir. 1983).

For a proposed class action settlement to be approved as "fair, reasonable, and

adequate", the following four factors must be considered:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:
   i.   the costs, risks, and delay of trial and appeal;
   ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   iii. the terms of any proposed award of attorneys' fees, including timing of payment; and
   iv.  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P 23(e)(2).

As discussed below, the Settlement readily satisfies Rule 23.[3]

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   Lead Plaintiff and Lead Counsel Adequately Represented the Class

"[W]hen making an adequacy determination, the Court must consider (l) the

qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct

---

[3] For a settlement to be deemed "fair, reasonable and adequate", every possible factor need not be satisfied. *See Wallace v. Powell*, 288 F.R.D. 347, 371 (M.D. Pa. 2012) ("Not every factor need weigh in favor of settlement… in order for the Settlement to be approved") (citing *Cendant,* 264 F.3d at 242–43).

the litigation; and (2) whether the interests of the lead plaintiffs are sufficiently aligned with the interests of the absentees." *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *4 (D.N.J. June 24, 2016). "A named plaintiff is 'adequate' if his interests do not conflict with those of the class." *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 844 (D.N.J. 2018) (citing *Prudential*, 148 F.3d at 312).

Here, Lead Plaintiff adequately represented the Class. Lead Plaintiff has communicated regularly with Lead Counsel, overseen the litigation, reviewed drafts of the pleadings and motions, participated in the settlement discussions with Lead Counsel, and approved the Settlement. *See* Declaration of Lead Plaintiff Matsukawa Co., LTD in Support of Motion for Final Approval of the Settlement, an Award of Attorneys' Fees and Litigation Expenses, and Reimbursement of Time for Lead Plaintiff (attached to Guiney Decl. as Ex. F) ¶ 7.

In addition, throughout the Action, Lead Plaintiff benefited from the advice of knowledgeable counsel well-versed in securities class actions. Wolf Haldenstein Freeman Adler & Herz LLP and Bernstein Liebhard LLP are among the most experienced and skilled firms in the securities litigation field and have a long and successful track record, serving as lead counsel in many high profile and influential cases. *See* Guiney Decl., Exs. B and C-C.

6

Lead Counsel assiduously litigated the Action since its inception. *See supra* at 3; Guiney Decl. ¶¶ 23-31. Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims as well as the risks of continuing litigation. Lead Counsel hired a Brazilian investigator and reviewed extensive documents in Portuguese about Braskem, including Brazilian news articles and transcripts of regulatory meetings, which Lead Counsel had translated and were also reviewed by an attorney fluent in Portuguese. *See* Guiney Decl. ¶ 68.

In sum, Lead Plaintiff and Lead Counsel adequately represented the Class.

### B.     The Settlement Was Negotiated at Arm's Length

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when "the negotiations occurred at arms length [sic]." *NFL*, 821 F.3d at 436 (quoting *Cendant,* 264 F.3d at 232 n.18). Likewise, it is appropriate for this Court to give "substantial weight to the recommendations of experienced attorneys" who engaged in arm's-length negotiations. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness"); *see also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) (affording "significant weight" to counsel's recommendation), *aff'd*, 264 F.3d 201 (3d Cir. 2001).

Here, the Settlement was achieved only after thorough and protracted arm's-length negotiations between well-informed and experienced counsel. Guiney Decl., ¶ 39. Lead Counsel conducted an exhaustive factual investigation into the alleged wrongdoing and performed a detailed review of the relevant caselaw. *Id*. Lead Counsel was well aware of the strengths and weaknesses of the case at the time of Settlement. While drafting the Amended Complaint, Lead Counsel hired a Brazilian investigator, reviewed Braskem's press releases, conference calls, and Brazilian public filings and governmental hearings, including documents and transcripts in Portuguese. *See* Guiney Decl., ¶ 68. Lead Counsel was, thus, well-equipped to judge the strength of Plaintiffs' claims that Defendants misled investors about Braskem's role in the mine disaster, and about the level of liability to which Braskem was subject. In addition, briefing the opposition to Defendants' motion to dismiss provided Lead Counsel with an awareness of the defenses that the Class would have faced had the Parties continued on to summary judgment and trial.[4] Thus, Lead Counsel and Lead Plaintiff were in a position to make a rational assessment of the case when deciding to settle.

---

[4] *See, e.g.*, *In re Genta Secs. Litig.*, No. CIV.A. 04-2123 (JAG), 2008 WL 2229843, at *2 ("The motion to dismiss resolved many of the issues raised in the [complaint], leaving Lead Plaintiff and Defendants ... with a solid understanding of the strengths and weaknesses of their respective positions").

8

In sum, this Settlement was negotiated at arm's length, weighing in favor of final approval.

### C.    The Relief Provided by the Settlement is More Than Adequate

The relief provided by the Settlement here is more than adequate – it is a good result.  The adequacy of a proposed settlement depends on "whether the settlement is within a range of reasonableness that responsible and experienced attorneys could accept, considering all relevant risks." *See In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ.03-0085 FSH, 2005 WL 3008808, at *4 (D.N.J. Nov. 9, 2005) (citing *Walsh*, 96 F.R.D. at 642).  That analysis recognizes the "uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id*.  "However, there is no specific formula, threshold, or equation that a Court must use to determine whether a settlement amount is reasonable.  Even a settlement that is only a 'fraction of the potential recovery' can be deemed appropriate." *In re ViroPharma Inc. Sec. Litig.*, No. CIV.A. 12-2714, 2016 WL 312108, at *13 (E.D. Pa. Jan. 25, 2016).

As described further below, proving falsity, scienter, and damages posed serious risks to recovery.  Thus, the adequacy of the Settlement should be judged on "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322.  "In making this assessment, the Court compares the present value of the damages

plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 (ES), 2013 WL 3930091, at \*7 (D.N.J. July 29, 2013) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig. ("GMC Trucks")*, 55 F.3d 768, 806 (3d Cir. 1995)).

The $3 million recovery is above the range of reasonableness for securities class action settlements at this stage of the litigation. The Settlement recovers approximately 16% of the $17.7 million in maximum damages potentially available in this case. As noted above, Cornerstone's most recent report (issued in March 2023) reported that the median settlement in a securities class action from 2018 to 2022 recovered 3.8% of damages in analogous cases, i.e., with under $25 million in damages and a pending motion to dismiss. *See* Guiney Decl., Ex. H at 6, 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2022 Review and Analysis*, Cornerstone Research). Moreover, $17.7 million was Plaintiff's best-case scenario for damages – it did not account for the numerous arguments Defendants made and likely would have made to reduce damages, including, but not limited to, that (1) there was no fraud here and thus no damages; (2) the market was aware of the truth because Braskem's role in the collapse had been revealed through Portuguese media; and (3) Braskem ADSs fell, in part, for reasons unrelated to the

10

alleged fraud.  Thus, the recovery here is well within the range of reasonableness for securities class action settlements.

Lead Counsel does not agree with any of the arguments Defendants made or would likely have made should the Action continue in litigation.  Nevertheless, if Defendants were successful in making any one of them, damages could be reduced to $0 in the worst-case scenario or, based on expert analysis, be reduced well below $17.7 million.  The $3 million Settlement comprises 16% of the $17.7 million figure. The 16% percentage recovery here is above the percentage of damages recovered in many other securities class action settlements, including in courts in this District and Circuit.[5]

---

[5] *See*, *e.g.*, *Schuler*, 2016 WL 3457218, at *8 (approving $4.25 million settlement reflecting approximately 4% of the estimated recoverable damages; noting percentage "falls squarely within the range of previous settlement approvals"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving settlement representing 2.5% of damages); Cendant, 264 F.3d at 241 (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *see also Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement  representing slightly more than 2% of estimated damages and stating, "2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements"); *In re Citigroup Inc. Sec. Litig.*, No. 09 Civ. 7359 (SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (approving settlement representing 2% of damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"), aff'd, 166 F.3d 581 (3d Cir. 1999).

As discussed, had Lead Plaintiff continued litigating the Action, it would have had to overcome many difficult challenges. Given this uncertainty, settling the Action at this juncture will provide the Class with a very good and certain result. Accordingly, this factor militates in favor of the Settlement.

### 1.    The Risks of Establishing Liability at Trial

The risks of establishing liability at trial weigh in favor of granting approval of the Settlement. Courts have recognized that "[a] trial on the merits always entails considerable risks." *See, e.g.*, *Pro v. Hertz Equip. Rental Corp.*, No. CIV.A. 06-3830(DMC), 2013 WL 3167736, at *4 (D.N.J. June 20, 2013). Moreover, the significant unpredictability and complexity posed by securities class actions in particular generally weigh in favor of final approval. *See In re Par Pharm.*, 2013 WL 3930091, at *4 ("[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate"); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 WL 906254, at *4-5 (D.N.J. Mar. 31, 2008) (complexity of securities class actions supports final approval).

But before Lead Plaintiff could even get to trial, it would need to clear other significant hurdles, including winning the pending motion to dismiss, successfully moving for class certification, and surviving any *Daubert* and summary judgment challenges. To place this risk in perspective, almost 61 % of securities class actions

12

are dismissed at the pleading stage and another 19% of securities class actions were at least partially dismissed. *See* 2023 NERA Report at 11 (Guiney Decl., Ex. I).

To establish its § 10(b) claim, Lead Plaintiff would have to prove that Defendants: "(1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiff reasonably relied; and (5) that proximately caused the injuries." *In re Ikon Office Sols., Inc. Sec. Litig.*, 277 F.3d 658, 666-67 (3d Cir. 2002). The scienter requirement poses a particular challenge and is considered one of the most difficult elements to prove in a securities fraud case. *See, e.g., Viropharma*, 2016 WL 312108, at *12 ("[s]ince stockholders normally have little more than circumstantial and accretive evidence to establish the requisite scienter, proving scienter is an uncertain and difficult necessity for plaintiffs"); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) ("[I]f this case were to go forward, Lead Plaintiff would face the formidable task of proving scienter and loss causation").

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation poses a real risk that substantially less or no recovery at all might be achieved. At the time of the Settlement, Defendants' motion to dismiss was fully briefed. Defendants argued, and would continue to argue, that their challenged statements were not

13

materially false and misleading when made because, *inter alia*: (i) evidence concerning Braskem's role in the mine collapse was a matter of public record; (ii) many of Defendants' alleged misstatements were forward-looking and, thus, protected by the PSLRA's safe harbor; and (iii) Braskem's reserve statements were explicitly phrased as estimates.

Defendants also argued and would continue to argue that even if Lead Plaintiff could establish a material misstatement or omission, there was no evidence upon which Lead Plaintiff could prove the requisite mental state of scienter – *i.e.*, that Defendants misled investors intentionally or with extreme recklessness. Lead Counsel believe they could have prevailed on all these issues, but every motion to dismiss is uncertain, and the risks to Lead Plaintiff were real.[6]

Even if the Amended Complaint was sustained in full (or in part), there would still be a risk that a Class would not be certified for all potential Class Members. Defendants would also likely have made a *Daubert* challenge and sought summary judgment, and there is no guarantee that Lead Plaintiff would have prevailed against all of Defendants' challenges. And even if Lead Plaintiff did prevail, there were

---

[6] There are a number of other factors posing significant risks to continuing to litigate this Action, including establishing loss causation and damages as discussed *infra* at 15-17.

risks regarding how the Court's rulings would affect the Class, damages, or how the case would be presented to the jury.

These risks aside, discovery also would have been protracted and may not have produced evidence supporting Lead Plaintiff's case.  Furthermore, the trial of Lead Plaintiff's claims would inevitably have been long and complex, involved testimony of Portuguese-speaking Brazilian nationals, and even a favorable verdict would undoubtedly have spurred a lengthy post-trial and appellate process.

Accordingly, the pre-trial risks and risk of establishing liability at trial further support the reasonableness of the Settlement.

### 2.    The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing loss causation and damages at trial also weigh in favor of approving the Settlement.  If this litigation were to continue, Lead Plaintiff would inevitably encounter loss causation and damages defenses at the summary judgment phase and at trial.  Pursuant to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-47 (2005), Lead Plaintiff would need to show that the disclosure of the alleged securities violations caused investors' losses, as opposed to other unrelated matters.  *See, e.g.*, *ViroPharma*, 2016 WL 312108, at \*12 ("Lead Plaintiff would need to show that Defendants' omissions caused the drop in the ViroPharma Securities' prices following the corrective disclosure").

15

The Supreme Court's decision in *Dura*, and subsequent cases interpreting it, have made proving loss causation even more difficult and uncertain than in the past. *See In re Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *19 (D.N.J. Nov. 15, 2016) ("proving loss causation would be a major risk faced by Plaintiff"); *see also ViroPharma*, 2016 WL 312108, at *12 ("proof [of loss causation] would necessitate a battle of the experts.  Lead Plaintiff would be permitted to present expert testimony on their theory of loss causation, and Defendants would be permitted to submit a rebuttal expert report arguing that the omissions had no impact on the value of ViroPharma Securities").

Lead Plaintiff alleged losses corresponding with Braskem's disclosures on April 3, 2019, May 9, 2019, and July 9, 2020.  It is uncertain if Lead Plaintiff would have prevailed in proving loss causation relating to any of these disclosures.  Indeed, there is the risk that the Court could have found that none of these stock drops related to Lead Plaintiff's allegations of misrepresentations and omissions.

Adding to the complexity and expense of this case is that Lead Plaintiff must prove damages.  Lead Plaintiff's expert – who would be subject to an inevitable *Daubert* challenge – must show that the corrective disclosures revealed new market-moving news, and determine whether any confounding news (*i.e.*, news not related to the alleged fraud) released the same day had an impact on stock price and if so, the amount of recoverable damages.  The Parties' experts would inevitably express

16

diverging views on the range of recoverable damages at trial. Indeed, Defendants would likely have raised numerous arguments about damages that could have potentially reduced recoverable damages significantly. Because it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise.[7]

Even if Lead Plaintiff overcame the risks relating to loss causation and damages and prevailed at trial, such a victory would not guarantee the Class a better recovery than the $3 million Settlement. These uncertainties thus further weigh in favor of final approval.

### 3. The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The Settlement provides the Class with a prompt and tangible recovery, without the additional risk and delay of litigating the Action to completion, which further supports approval of the Settlement. *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 350 (D.N.J. 2020) ("The parties are better off with the certainty

---

[7] *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 393 (E.D. Pa. 2015) ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials [and] divergent expert testimony leads inevitably to a battle of the experts") *amended*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd,* 821 F.3d 410 (3d Cir. 2016); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) ("[C]ourts have recognized the need for compromise where divergent testimony would render the litigation an expensive and complicated 'battle of experts'"), *aff'd*, 166 F.3d 581 (3d Cir. 1999).

of a prompt settlement and payment rather than the uncertainty of whether they will get any recovery at some future unknown date"); *cf. Talone v. Am. Osteopathic Ass'n*, No. 1:16-cv-04644-NLH-JS, 2018 WL 6318371, at *14 (D.N.J. Dec. 3, 2018) (settlement favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial").

As noted, Defendants' motion to dismiss had been fully briefed at the time the Settlement was reached. Even if the Amended Complaint would have been sustained (in whole or in part), discovery would have been protracted, Lead Plaintiff would have had to successfully move for class certification and then survive *Daubert* motions and summary judgment, and the subsequent trial would inevitably have been long and complex.

The continued litigation of this Action would certainly have been lengthy and costly, with no guarantee of any return for investors. This Settlement allows the Class to recover cash promptly without incurring additional risk. Indeed, "much of the value of a settlement lies in the ability to make funds available promptly." *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901(SHS), 2014 WL 2445714, at *2 (S.D.N.Y. May 30, 2014).

Accordingly, Fed. R. Civ. P. 23(e)(2)(C)(i) supports final approval.

18

### 4.    The Proposed Method for Distributing Relief Is Effective

The proposed method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  Strategic Claims Services ("SCS") is an experienced claims administrator and is processing claims under the guidance of Lead Counsel, as authorized in the Preliminary Approval Order.  *See* Guiney Decl. ¶ 34.

Based upon the trading information provided by claimants,[8] SCS is determining each claimant's eligibility to participate in the Settlement and calculating each claimant's respective "Recognized Claim" based on the Plan of Allocation.  *See id*.  Lead Plaintiff's claim will be reviewed in the same manner. Claimants are notified of any defects or conditions of ineligibility and are given the chance to contest rejection and cure deficiencies.  Any claim disputes that cannot be resolved will be presented to the Court for determination.  This claims process is similar to that typically accepted and used in securities class action settlements of this kind.  *See Dartell v. Tibet Pharms., Inc.*, No. CV 14-3620, 2017 WL 2815073, at *7 (D.N.J. June 29, 2017) ("The claims process is standardized").

---

[8] The deadline to submit a Proof of Claim is April 19, 2023.

In sum, the claim-processing program for the Settlement is the type regularly used in securities class actions.  As such, it militates in favor of approving the Settlement.

### 5.    Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in Lead Counsel's memorandum of law in support of the motion for an award of attorneys' fees and expenses and reimbursement of time to Lead Plaintiff, filed concurrently herewith (the "Fee Brief"), Lead Counsel is seeking attorneys' fees of 33 1/3% of the Settlement Fund ($1,000,000), and litigation expenses of $44,415.86, which includes a $5,000 reimbursement to Lead Plaintiff for the time it spent litigating this action and achieving the Settlement.  Guiney Decl. ¶ 79.

As set forth in the Fee Brief, this request is in line with fee awards within the Third Circuit in similar common-fund cases.  *See* Fee Brief, pp. 18-20.[9]  Lead Counsel's fee request is reasonable, and Lead Counsel has ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, expenses, and

---

[9] With respect to the timing of an award of fees and expenses, it is common for such fees to be paid, as provided by the Stipulation here at the time the court makes its award.  *See, e.g.*, *Pepe v. Cocrystal Pharma, Inc.*, No. 2:18-cv-14091-KM-JBC (D.N.J. Dec. 16, 2020), slip op. at 3 (ECF No. 86) (approving timing of payment of attorneys' fees as agreed in stipulation, within three days after court's entry of order awarding fees).

20

reimbursement of time for Lead Plaintiff. Accordingly, this factor also supports final approval.

### 6.   Other Agreements Have Been Identified

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3).

As previously disclosed in connection with Lead Plaintiff's motion for preliminary approval (*see* ECF No. 66-1 at 15-16), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively purchased a specific number of shares of Braskem ADSs request exclusion (or "opt out") from the Settlement. This type of agreement is "standard in securities class action settlements and has no negative impact on the fairness of the Settlement."[10]

In addition, Lead Counsel has fee agreements with local counsel. Local counsel was previously disclosed to the Court, and Lead Counsel ensured that there was no duplication of effort among Plaintiffs' Counsel. Guiney Decl. ¶ 65.

---

[10] *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also*, *e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (noting that "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack the settlement in his or her own self-interest"), *amended in part sub. nom. In re Carrier Iq, Inc.*, No. 12-MD-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

**D.**    **The Settlement Ensures Class Members Are Treated Equitably**

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably.    Each Authorized Claimant, including Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation, and each will be subject to the same formula for distribution of the Settlement on a *pro rata* basis.    Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).    The proposed Plan of Allocation is fair and reimburses Class Members based on the type and extent of their injuries.    The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss attributable to the alleged fraud.    Accordingly, the Plan of Allocation treats all Class Members equitably and should be approved.

**III.    THE PLAN OF ALLOCATION IS REASONABLE AND FAIR**

A Plan of Allocation "need only have a reasonable, rational basis when created by competent and experienced counsel." *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *6 (E.D.N.Y. Apr. 11, 2014); *see also Boyd v. Coventry Health Care Inc*., 299 F.R.D. 451, 461 (D. Md. 2014) ("In

22

evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect[.]    [G]iven that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis"). The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (citing *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)).

Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan*, 667 F.3d at 328. Here, Lead Counsel formulated the Plan of Allocation to be consistent with the securities laws and to reflect the three alleged corrective disclosures. *See In re Datatec*, 2007 WL 4225828, at *5 (approving plan because it was "rational and consistent with Lead Plaintiffs' theory of the case").[11]

---

[11] *See also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a pro rata basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"); *see also Ocean Power*, 2016 WL 6778218, at *23 ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan*, 667 F.3d at 328.)

The Plan of Allocation here is reasonable and fair. Lead Counsel formulated the Plan of Allocation with the help of a damages expert, consistent with the principles of loss causation. Guiney Decl. ¶ 58. The Plan of Allocation recognizes differences in damages incurred by those who bought and, if applicable, sold their shares at different prices and times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid and the amount of alleged artificial inflation in Braskem ADSs at the time of their purchases. *Id.* ¶ 59. The Plan of Allocation also rationally allots different damages depending on whether Class Members held Braskem ADSs (that they purchased during the Class Period) at the time of one, two, or all three of the alleged corrective disclosures. *Id*. The Settlement Fund will be distributed on a *pro rata* basis depending on the Class Member's recognized losses. *Id*.

In sum, Lead Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members with losses suffered due to the conduct alleged in the Amended Complaint and, thus, should be approved.

## IV.    FINAL CERTIFICATION OF THE CLASS

The Third Circuit has long acknowledged that certifying a class for settlement is proper. *See, e.g.*, *Schuler*, 2016 WL 3457218, at *6, 12 (granting final class certification in connection with motion for final approval of settlement); *In re*

24

*Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 508 (D.N.J. 1997), (citing *GMC Trucks*, 55 F.3d at 778) ("Federal Rule of Civil Procedure 23 allows the Court to certify a class for settlement purposes only"), *aff'd,*148 F.3d 283.

In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and certified the Class for purposes of this Settlement.  *See* ECF No. 63, ¶ 3.  Specifically, the Court found that each requirement for certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met or will likely be met for purposes of the proposed Settlement.  *Id.* at 5.  The fact that nothing has changed since the entry of the Preliminary Order to alter the propriety of the Court's preliminary certification of the Class further supports final approval.[12]

### A.    The Class Meets the Requirements of Rule 23(a)

#### 1.    Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  In the Third Circuit, numerosity is presumed when a class consists of 40 or more members.  *See, e.g., NFL*, 821 F.3d at 426 ("There is no magic number

---

[12] *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, No 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (granting final approval and noting that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

of class members needed for a suit to proceed as a class action.  We have set a rough guidepost in our precedents, however, and stated that numerosity is generally satisfied if there are more than 40 class members").  Throughout the Class Period, Braskem ADSs traded actively on the NASDAQ and NYSE exchanges.  These ADSs were purchased by thousands of investors, making joinder impracticable.

### 2.	Rule 23(a)(2): Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In securities fraud cases, the commonality requirement is satisfied where it is alleged that named plaintiff "share[s] at least one question of fact or law with the grievances of the prospective class."  *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *4 (D.N.J. June 28, 2018); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n.10 (3d Cir. 2009) ("only one question of law or fact in common is necessary").

Meeting the commonality requirement is not a high threshold, and the Third Circuit has "acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable."  *NFL*, 821 F.3d at 427; *see also Shapiro*, 2018 WL 3158812, at *4 (The commonality "requirement may be satisfied by a single common issue and is easily met").

26

Here, all members of the Class purchased Braskem ADSs during the Class Period, and the central questions of whether Defendants issued actionable misstatements and omissions, and whether Defendants acted with the requisite mental state, are the same for all members of the Class.

Accordingly, there are common questions of law and fact warranting class treatment for settlement purposes.

### 3.    Rule 23(a)(3): Lead Plaintiff's Claims are Typical

Rule 23(a)(3) is satisfied "when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues." *Shapiro*, 2018 WL 3158812, at *5 (internal citations omitted). "Typical" does not mean "identical." *See, e.g., Schuler*, 2016 WL 3457218, at *3 ("The typicality requirement does not mandate that all putative Class Members share identical claims"). The Third Circuit has "set a low threshold for typicality," and "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *NFL*, 821 F.3d at 428 (internal citations and quotation marks omitted).

Here, Lead Plaintiff's claims are typical of those of the Class for settlement purposes.  Like other Class Members, Lead Plaintiff purchased publicly traded

Braskem ADSs during the Class Period and suffered damages based on the alleged misrepresentations and omissions that Defendants made to the investing public.

**4.      Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative**

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by: "(l) the qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct the litigation; and (2) whether the interests of the lead plaintiffs are sufficiently aligned with the interests of the absentees." *Schuler*, 2016 WL 3457218, at \*4. Both prongs are met here.

Lead Plaintiff has represented and will continue to represent the interests of the Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Class. Likewise, Lead Counsel has extensive experience in complex securities litigation and class action proceedings, is well qualified and able to conduct the Action, and has ably and effectively represented Lead Plaintiff and the proposed Class throughout the Action.[13]

---

[13] Accordingly, Lead Counsel satisfies the Class Counsel requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See* ECF No. 78.

28

### B.    The Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "readily met" in securities class action claims. *Amchem Prods., Inc.v. Windsor*, 521 U.S. 591, 625 (1997). Here, common questions of law and fact predominate over individual questions for settlement purposes because the alleged fraudulent statements and omissions affected all Class Members in the same manner.

In addition, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims are predicated, in part, upon omissions of material fact, or alternatively based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Applying either presumption dispenses with the requirement that each Class Member prove individual reliance on the alleged misstatements or omissions. *See id*.

Further, resolving this case as a class action is far superior to litigating thousands of individual cases where the expense for a single investor would likely exceed its losses. *See, e.g., In re Heckmann Corp. Sec. Litig.*, No. C.A. 10-378-LPS-MPT, 2013 WL 2456104, at *8, 14 (D. Del. June 6, 2013) (superiority requirement "easily satisfied" in 10(b) cases where individual investors suffer damages "too small to justify a suit against a large corporate defendant").

29

Accordingly, common questions predominate for settlement purposes, further supporting final certification of the Class for settlement purposes.

## V.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS

Notice of the proposed Settlement to the Class, as approved by the Court in the Preliminary Approval Order (ECF No. 63), satisfied Rule 23's requirement of "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

The Claims Administrator mailed 5,043 Notices to potential Class Members, posted the Internet Notice and Proof of Claim form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published the Summary Notice in *Investor's Business Daily* as well as on *PR Newswire*.  *See* Guiney Decl. Ex. G (Bravata Decl.) ¶¶ 6-10.  Thus, notice has been given to the Class as required by the Preliminary Approval Order.

Both the substance of the Internet Notice and the means of dissemination satisfied these standards.  The Court-approved notice included all the information required by Rule 23(c)(2)(B) and the PSLRA, including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Settling Parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs

30

sought, including the requested reimbursement of time to Lead Plaintiff; (vii) how to opt out of the Class; (viii) how to object to the Settlement, Plan of Allocation, requested attorneys' fees or expenses, or the proposed Lead Plaintiff reimbursement; and (ix) the binding effect of a judgment on Class members.  *See* ECF No. 63.

This combination of individual first-class mail to all Class members who could be identified with reasonable effort, supplemented by notice in appropriate, widely circulated publications, transmitted over the newswire, and posted on the internet, was "the best notice practicable under the circumstances."  Fed. R. Civ. P. 23 (c)(2)(B); *see In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x. 815, 816 (3d Cir. 2010) (describing notice combining mail to known class members and publication in *Investor's Business Daily* and over newswire); *Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause").

The notice program here readily satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable" as it "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).  Clearly, the notice program was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

31

Accordingly, the notice given to the Class satisfies due process and Rule 23.

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement; (ii) approve the Plan of Allocation; (iii) grant final certification of the Class for settlement purposes; and (iv) enter the Judgment in the form attached as Exhibit C to the Stipulation (ECF No. 66-6).

Dated: April 5, 2023

Respectfully submitted,

SCHNADER HARRISON
SEGAL & LEWIS, LLP

By:_____ s/ Lisa J. Rodriguez_____
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Telephone: (856) 482-5222
Email: lrodriguez@schnader.com

*Local Counsel for Plaintiff and the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Michael S. Bigin (pro hac vice)
Joseph R. Seidman, Jr.
10 East 40th Street
New York, New York 10016
Tel.: (212) 779-1414
Fax: (212) 779-3218
bigin@bernlieb.com
seidman@bernlieb.com

**WOLF HALDENSTEIN
ADLER FREEMAN & HERZ
LLP**
Matthew M. Guiney (pro hac vice)

32

270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com

*Co-Lead Counsel for Plaintiff and the Proposed Class*

33

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Lisa J. Rodriguez